**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Blvd., Ste. 960
Los Angeles, CA 90028
T: (323) 940-1700
F: (323) 238-8095
Tom@mblawapc.com
Nick@mblawapc.com

*Attorneys for Plaintiffs*

[additional counsel appears on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISON**

| | |
|---|---|
| **SANDRA WEST AND HECTOR MEMBRENO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**Plaintiffs,**<br><br>   vs.<br><br>**CALIFORNIA SERVICE BUREAU, INC.**<br><br>**Defendant.** | Case No. 4:16-cv-03124-YGR<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

---

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
-1-

Plaintiffs SANDRA WEST and HECTOR MEMBRENO (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1. The Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227, is a remedial statute enacted by Congress to protect consumers from unwanted autodialed/pre-recorded voice calls and faxes. As is applicable here, Congress specifically recognized that the use of automated technology in calls to consumers was more intrusive and raised greater privacy concerns than calls using live representatives:

> It is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape or a voice recording service, and do not disconnect the line even after the customer hangs up the telephone. For all these reasons, it is legitimate and consistent with the Constitution to impose greater restriction on automated calls than on calls placed by "live" persons.

S. Rep. No. 102-178 (Oct. 8, 1991); *see also* Pub. L. No. 102-243, § 2(12) (1991), *codified at* 47 U.S.C. § 227 ("Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."). Such calls to cell phones were seen as particularly problematic. *See* S. Rep. No. 102-178 (Oct. 8, 1991) (noting that "unsolicited calls placed to … cellular … telephone numbers often impose a cost on the called party).

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
-2-

2.      Accordingly, the TCPA explicitly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  The statute provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3).

3.      The TCPA also ensures that parties involved in causing illegal calls to be made are appropriately held accountable, whether they physically made the calls or not.  *See generally In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574 (2013) (finding that vicarious liability under federal common law agency principles is available for violations of the TCPA, including not only based on classical agency, but on other theories, as well, such as apparent authority or ratification); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565, para. 10 (2008) ("Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.").

4.      In this case, Defendant California Service Bureau, Inc. (hereinafter, "Defendant")—an account receivable management company—has engaged in illegally calling consumers' cellular telephone numbers using an automatic telephone dialing system ("autodialer" or "ATDS") and/or artificial or prerecorded voice.  More simply put, without first obtaining prior express consent of the called party, Defendant has illegally called the cellular telephones of hundreds if not more individuals utilizing an ATDS and/or artificial or prerecorded voice.

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
-3-

5. Consequently, Plaintiffs bring this action for themselves and others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant in negligently, knowingly, and/or willfully contacting them on their telephones in violation of the TCPA.

## JURISDICTION & VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiffs and the putative class seek relief under a Federal statute, the TCPA, 47 U.S.C. § 227, et seq. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012).

7. Venue is proper in the United States District Court for the Northern District of California pursuant to 18 U.S.C. § 1391(b) and 18 U.S.C. § 1441(a) because Defendant does business within the state of California and maintains its corporate headquarters in the City of Novato, County of Marin, California which is within this judicial district.

## PARTIES

8. Plaintiff Sandra West is a natural person residing in Mississippi, and is a "person" as defined by 47 U.S.C. § 153(10).

9. Plaintiff Hector Membreno is a natural person residing in California, and is a "person" as defined by 47 U.S.C. § 153(10).

10. Defendant California Service Bureau, Inc. ("Defendant") is a business headquartered at 100 Wood Hollow Drive, Suite 200, Novato, CA 94945, constituting a "person" as defined by 47 U.S.C. § 153(10). Defendant is an accounts receivable management company for various consumer debts

## FACTUAL ALLEGATIONS

11. Defendant is an accounts receivable management company.

12. Defendant's regular business practices include contacting alleged debtors and third parties by telephone in connection with collecting alleged debts.

13. Within the four years prior to the filing of this action, Defendant initiated autodialed telephone calls to cellular telephones while at times also an artificial or pre-recorded voice to deliver a message. On information and belief, Defendant caused dialing equipment to be used to dial the cellular telephone numbers of alleged debtors and others, including Plaintiffs.

14. Such dialing equipment had the capacity to dial numbers without human intervention, and constituted an "automatic telephone dialing system" within the meaning of the TCPA. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14092, para. 132 (2003) ("*2003 FCC Ruling*") (acknowledging that an ATDS constitutes equipment with "the *capacity* to dial numbers without human intervention") (emphasis in original); *accord Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013).

15. Unfortunately, many of the people whose cellular telephones were called as a result of Defendant's autodialing and artificial/prerecorded voice practices never actually consented to receive such calls, whether because Defendant acquired the individual's number through skip tracing or another indirect method, or is listed as a reference or emergency contact on an application or intake form, the number in Defendant's database attributable to the alleged debtor was incorrect, or any other number of reasons.

16. On information and belief, including considering the experience of Plaintiffs described below, many of these individuals were called more than once, and Defendant lacked a sufficiently adequate system for preventing autodialed and/or artificial or prerecorded voice calls to telephones for which they did not have prior express permission to call.

## FACTS RELATING TO SANDRA WEST

17. Beginning in or around October of 2015, Defendant contacted Ms. West on her cellular telephone number ending in 6314, in an attempt to collect an outstanding debt allegedly owed by another person and not by Ms. West.

18. Defendant placed several collection calls a week to Ms. West's cellular telephone seeking to collect an outstanding debt allegedly owed by a person other than Ms. West. In sum, Defendant placed approximately twenty (20) such autodialed collection calls to Ms. West's cellular telephone.

19. On information and belief, Defendant used an ATDS to place these calls to Ms. West, seeking to collect a debt allegedly owed by a third party, not Ms. West.

20. Defendant's use of an ATDS is evidenced by Defendant's use of artificial or prerecorded voices in some of the calls placed to Ms. West's cellular telephone. It is highly unlikely that Defendant instructs human employees to manually dial consumers but instead of speaking with consumers themselves or leaving messages while on the phone, instead directs their employees to then launch an artificial or prerecorded voice or dial prompt system. Further, Defendant would often place calls at nearly the exact same time and on a somewhat routine amount of days of a week, thus evidencing that the calls at issue were pre-planned or programmed to be placed at particular dates and times and/or at a particular frequency. This ATDS has the capacity to store or produce telephone numbers, which, if utilized in such a fashion, can be used to dial numbers in a random or sequential fashion and be used in connection with a number generator.

21. Defendant has left voicemail messages on Ms. West's cellular telephone if Ms. West did not answer Defendant's calls. In these messages, Defendant utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

22. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

23. Defendant's calls were placed to a telephone number assigned to a cellular telephone service for which Ms. West incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

24. On numerous occasions Defendant contacted Ms. West from telephone number (888) 224-5557.

25. On several occasions, Ms. West answered Defendant's telephone calls. When a live person was reached, often after a pause or "dead air" (thus further evidencing Defendant's use of an ATDS), Ms. West informed Defendant that it was contacting the incorrect person for the alleged debt and instructed Defendant to stop contacting her. Nonetheless, Defendant continued to place regular collection calls to Ms. West's cellular telephone via Defendant's "automatic telephone dialing system" in an attempt to collect an outstanding debt allegedly owed by a third party.

26. Ms. West does not owe the debt Defendant sought to collect, nor is Ms. West the debtor of the alleged debt. Further, Ms. West has had no business relationship with Defendant nor did Ms. West ever provide Defendant with her cellular telephone number. Thus, Defendant did not have Ms. West's "prior express consent" to make calls to her cellular telephone using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A). Even assuming arguendo that Defendant did have Ms. West's "prior express consent", which it did not, Ms. West subsequently revoked said consent by instructing Defendant to cease calling her.

# FACTS RELATING HECTOR MEMBRENO

27.   For over seven months, California Service Bureau, Inc. ("CSB" or "Defendant") repeatedly called Mr. Membreno on his cellular telephone using an autodialer and/or an artificial or prerecorded voice. Mr. Membreno did not give Defendant prior express written consent to make these calls.

28.   The following chart details 20 of Defendant's calls to Mr. Membreno:

| Date | Time | Number Calling |
|---|---|---|
| 8/18/15 | 2:32 PM | (888) 224-5557 |
| 8/26/15 | 10:10 AM | (888) 224-5557 |
| 9/16/15 | 1:30 PM | (888) 224-5557 |
| 9/30/15 | 2:36 PM | (888) 224-5557 |
| 10/5/15 | 11:00 AM | (888) 224-5557 |
| 11/11/15 | 12:25 PM | (888) 224-5557 |
| 11/22/15 | 2:11 PM | (888) 224-5557 |
| 12/07/15 | 1:26 PM | (888) 224-5557 |
| 12/11/15 | 11:48 AM | (888) 224-5557 |
| 12/28/15 | 9:17 AM | (888) 224-5557 |
| 1/3/16 | 10:21 AM | (888) 224-5557 |
| 2/3/16 | 12:16 PM | (888) 224-5557 |
| 2/16/16 | 7:51 AM | (888) 224-5557 |
| 2/18/16 | 9:00 AM | (888) 224-5557 |
| 2/18/16 | 3:43 PM | (888) 224-5557 |
| 2/20/16 | 8:28 AM | (888) 224-5557 |
| 2/23/16 | 4:16 PM | (888) 224-5557 |
| 2/25/16 | 12:17 PM | (888) 224-5557 |
| 3/10/16 | 12:25 PM | (888) 224-5557 |

| 3/14/16 | 9:44 AM | (888) 224-5557 |

29.  Prior to the calls at issue in this action, Mr. Membreno never had any contact with Defendant.  Mr. Membreno has never consented to receive autodialed telephone calls from Defendant.  Mr. Membreno has never provided Defendant with his telephone number.

30.  Online consumer complaints regarding Defendant's unsolicited robocalls and autodialed calls are abundant:

- "Received a recorded message asking for someone else that is not here. Cannot seem to talk to a real person and I have no idea where this phone number is coming from. I have read from forums that it is a collection agency but not sure."[1]

- "Happened to me this morning. They are...California Service Bureau collection agency."[2]

- "Got a call from these people staring I have been turned into collections wouldn't provide any informant except to say they were California service Bureau and I was in collections. One guy named Oswald became very rude when I stated I owe no one any money & what are you talking about and then he hung up on me..."[3]

- "Robo-calls from unidentified party asking me to identify myself and to then call 888-224-5557. No file #, no case # mentioned. I am current on all my medical bills and have not called the number back. This is seriously aggravating and sometimes occurs multiple times per day."[4]

- "They keep calling even though I have told them that the person they are looking for no lives at this number and I have no forwarding number"[5]

- "The robot tells me to call..... I have only called to ask that they not call. I do not return robot calls. They call almost every day.[6]

---

[11] http://800notes.com/Phone.aspx/1-888-224-5557
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

- "TAKE ME OFF THIS LIST…THEY CALL EVERYDAY"[7]
- "Calls my phone on an average of 6 times a day"[8]
- "Stop calling w[ith] those automated programs on a loop"[9]
- "We've gotten this message several times a day for at least 6 months…"[10]

## CLASS ALLEGATIONS

30. Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed class (the "Class") defined as follows:

> All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of certification, Defendant or its agent/s or employee/s caused to be made any telephone calls to said person's cellular telephone through the use of any automatic telephone dialing system or an artificial or prerecorded voice, where such person had not previously consented to receiving such call.

31. Plaintiffs represent, and are members of, the Class, having been called by Defendant on their cell phones through the use of an automatic telephone dialing system and/or artificial or prerecorded voice without their prior express consent.

32. Plaintiffs do not know the number of members in the Class, but believe the Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

---

[6] *Id.*
[7] *Id.*
[8] http://whocallsme.com/Phone-Number.aspx/8882245557
[9] *Id.*
[10] *Id.*

33. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe, and hereon allege, that the Class includes hundreds, if not thousands, of members. Plaintiffs allege that the Class members may be ascertained by the records maintained by Defendant.

34. Plaintiffs and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiffs and Class members via their cellular telephones, thereby causing Plaintiffs and Class members to incur certain charges or reduced telephone time for which Plaintiffs and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, occupying Plaintiffs' and the Class members' phone thus precluding Plaintiffs and the Class from otherwise enjoyment and use of their personal cellular telephones, and further invading the privacy of said Plaintiffs and Class members.

35. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

    a. Whether, within the four years prior to the filing of this action, Defendant made any collection call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice

    to any telephone number assigned to a cellular telephone service;

  b. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

  c. Whether Defendant should be enjoined from engaging in such conduct in the future.

36. As persons who received calls from Defendant using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent, Plaintiffs are asserting claims that are typical of the Class.

37. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

38. A class action is superior to other available methods of fair and efficient adjudication of the controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, it would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

39. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the this Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

40. Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

41. As a result of Defendant's alleged violations of law by placing these automated and/or prerecorded voice calls to Plaintiffs' and the putative class' cellular telephones without prior express consent, Defendant caused Plaintiffs and the putative class harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiffs' and the putative class' privacy;

   b. Electronically intruding upon Plaintiffs' and the putative class' seclusion;

   c. Intrusion into Plaintiffs' and the putative class' use and enjoyment of their cellular telephones;

   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiffs and the putative class have as to complete ownership and use of their cellular telephones;

   e. Causing Plaintiffs and the putative class to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

### FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227**
**(Against All Defendants)**

42. Plaintiffs reallege and incorporate the foregoing allegations as if set forth fully herein.

43. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the

called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service….' 47 U.S.C. § 227(b)(1)(A)(iii).

44. "Automatic telephone dialing system" refers to any equipment that has "the *capacity* to dial numbers without human intervention." *See 2003 FCC Ruling*, 18 FCC Rcd. at 14092, para. 132.

45. Defendant caused equipment having the capacity to dial numbers without human intervention to be used to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the Class defined above.

46. Some, if not all, of Defendant's calls also utilized an artificial and/or prerecorded voice.

47. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phone of Plaintiffs and the other members of the Class when the autodialed and/or artificial or prerecorded voice calls were made.

48. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 312(f)(1).

49. Defendant has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by causing an automatic telephone dialing system and/or artificial or prerecorded voice to be used to make non-emergency telephone calls to Plaintiffs and the other members of the Class without their prior express permission.

50. As a result of Defendant's conduct and pursuant to Section 227(b)(3)(B) of the TCPA, Plaintiffs and the other members of the putative Class are each entitled to a minimum of $500.00 in damages for each violation.

51. Because Defendant knew or should have known that Plaintiffs and the other members of the Class had not given prior express consent to receive the

calls to their cell phones and/or willfully used an automatic telephone dialing system and artificial or prerecorded voice to call the cell phones of Plaintiffs and the other members of the Class without prior express permission, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the Class pursuant to 47 U.S.C. § 227(b)(3).

52. Plaintiffs and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of the Class, pray for the following relief against Defendant:

a. An order certifying the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their attorneys as class counsel;

b. An injunction prohibiting Defendant from calling Plaintiffs' and the other Class members' cell phone numbers using an automatic telephone dialing system or artificial or prerecorded voice;

c. An award of statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

RESPECTFULLY SUBMITTED,

Dated: December 13, 2016            **MARTIN & BONTRAGER, APC**

By: /s/ Nicholas J. Bontrager
Nicholas J. Bontrager
G. Thomas Martin, III

| | |
|---|---|
| 1 | **BURSOR & FISHER, P.A.**<br>L. Timothy Fisher (SBN 191626) |
| 2 | Annick M. Persinger (SBN 272996)<br>Yeremey O. Krivoshey (SBN 295032) |
| 3 | 1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596 |
| 4 | Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700 |
| 5 | E-Mail:  ltfisher@bursor.com |
| 6 |        apersinger@bursor.com<br>       ykrivoshey@bursor.com |
| 7 | *Attorneys for Plaintiffs* |

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
-16-

## PROOF OF SERVICE

Filed electronically on this 13th day of December, 2016, with:
United States District Court CM/ECF system with notification sent via CM/ECF to:

Charles R. Messer (SBN 101094)
MesserC@cmtlaw.com
David J. Kaminski (SBN 128509)
kaminskid@cmtlaw.com
Stephen A. Watkins (SBN 205175)
watkinss@cmtlaw.com
CARLSON & MESSER LLP

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
ltfisher@bursor.com
apersinger@bursor.com
ykrivoshey@bursor.com
BURSOR & FISHER, P.A.


This 13th day of December, 2016.


                                                **MARTIN & BONTRAGER, APC**


                                                By: /s/ Nicholas J. Bontrager
                                                     Nicholas J. Bontrager