1  Charles R. Messer (SBN 101094)
   messerc@cmtlaw.com
2  David J. Kaminski (SBN 128509)
   kaminskid@cmtlaw.com
3  Stephen A. Watkins (SBN 205175)
   watkinss@cmtlaw.com
4  CARLSON & MESSER LLP
   5901 W. Century Boulevard, Suite 1200
5  Los Angeles, California 90045
   (310) 242-2200 Telephone
6
   Attorneys for Defendant
7  CALIFORNIA SERVICE BUREAU, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  SANDRA WEST and HECTOR          )  Case no. 4:16-cv-03124-YGR
    MEMBRENO, individually and on behalf of )
13  all others similarly situated,  )
                                    )  **OPPOSITION TO MOTION FOR CLASS**
14              Plaintiffs,         )  **CERTIFICATION**
                                    )
15       vs.                        )  Date: December 5, 2017
                                    )  Time: 2:00 p.m.
16                                  )  Courtroom: 1
    CALIFORNIA SERVICE BUREAU, INC., )  Judge: Hon. Yvonne Gonzalez Rogers
17                                  )
                Defendant.          )
18                                  )
                                    )
19  _____)

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

1.    Introduction ........................................................................................................................1

2.    Background ........................................................................................................................1

    a.    Calls to Plaintiff Sandra West ....................................................................1

    b.    Calls to Plaintiff Hector Membreno .............................................................2

3.    Plaintiffs' new class definition ..........................................................................................2

4.    Plaintiffs' call data analysis should be excluded ...............................................................2

5.    Legal standard ...................................................................................................................4

6.    Plaintiffs fail to show numerosity .....................................................................................5

    a.    CSB calls phone numbers provided to medical providers ...........................5

    b.    The DNC and CDR notations in CUBS do not reflect actual calls made. ..............8

    c.    Plaintiff cannot rely on DNC and CDR notations as evidence of a prior Global

         Connect call ................................................................................................8

    d.    "Wrong Number" Call list of 800-900 numbers ..........................................9

    e.    Any DNC notation in Global Connect records does not reflect

         a wrong number call .....................................................................................9

    f.     Disposition of Plaintiffs West and Membreno ........................................10

7.    Plaintiffs cannot demonstrate commonality.....................................................................11

8.    Plaintiff West cannot demonstrate typicality ...................................................................16

9.    Plaintiffs are inadequate ..................................................................................................17

10.    Plaintiffs cannot establish predominance.........................................................................17

11.    Plaintiffs' class lacks superiority.....................................................................................19

    a.    Plaintiff's claims lack superiority due to difficulty in identifying subscriber .......19

    b.    Plaintiffs' class lacks manageability due to difficulty in determining consent .....22

12.    Plaintiffs cannot establish an injunctive relief class ........................................................22

13.    Conclusion ......................................................................................................................24

1

## TABLE OF AUTHORITIES

2

### CASES

3
*Abdeljalil v. Gen. Elec. Capital Corp.*,
306 F.R.D. 303 (S.D. Cal. 2015) ...............................................................11

4

5
*Ades v. Omni Hotels Mgmt. Corp.*,
No. 2:13–CV–2468 (C.D. Cal. May 18, 2015)................................................21

6

7
*Amchem Products v. Windsor*,
521 U.S. 591 (1997 ..............................................................................19

8

9
*Balschmiter v. TD Auto Fin. LLC*,
303 F.R.D. 508 (E.D. Wis. 2014)...........................................................13,20

10

11
*Briseno v. ConAgra Foods, Inc*.,
844 F.3d 1121 (9th Cir. 2017) ..............................................................15,19

12
*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ................................................................ 17

13

14
*Brown v. Wells Fargo & Co.*,
2013 WL 6851068  (D. Minn. Dec. 30, 2013)...............................................21.

15

16
*Connelly v. Hilton Grand Vacations Co.*,
294 F.R.D. 574, 577 (S.D. Cal. 2013).  ...................................................12,13

17

18
*Chyba v. First Financial Asset Mgmt.*,
2014 WL 1744136 (S.D.Ca. April 30, 2014)  .................................................16

19

20
*Danehy v. Time Warner Cable Enter. LLC*,
No. 5:14-CV-133-FL, 2015 WL 5534285 (E.D.N.C. Sept. 18, 2015) .............................16

21

22
*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir.2003)  ....................................................................3

23
*Davis v. AT&T Corp.*,
No. 15CV2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) 6,12,13 ,17,18

24

25
*Davis v. Astrue*,
250 F.R.D. 476  (N.D. Cal. 2008) ...............................................................6

26

27
*Diacakis v. Comcast Corp*.,
No. C 11-3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2013) .................................8

28

*Gannon v. Network Telephone Services*,
    2013 WL 2450199 (C.D. Cal. June 5, 2013), *aff'd*, 628 F. App'x 551 (9th Cir. 2016)....22

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ...................................................................15

*General Telephone Company of the Southwest v. Falcon*,
    102 S.Ct. 2364 (1982).....................................................................5,6,17

*Gutierrez v. Barclays Group*,
    No. 10cv1012-DMS (BGS), 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ..............13,17,18

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................18

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) .....................................................................7

*In Re American Medical Sys.*,
    75 F.3d 1069 (6th Cir. 1996). ...................................................................17

*In re SFPP Right-of-Way Claims*,
    No. CV1507492JVSDFMX, 2017 WL 2378363 (C.D. Cal. May 23, 2017) ...................22

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ...........................23

*Katz v. Am. Honda Motor Co.*,
    No. 15-CV-4410-CBM-RAOX, 2017 WL 3084272 (C.D. Cal. June 29, 2017) ..............15

*Knutson v. Schwan's Home Serv., Inc.*,
    No. 12-CV-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ........................................23

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................................23

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012).................................................................5,15

*Meyer v. Bebe Stores, Inc.*,
    No. 14-CV-00267-YGR, 2016 WL 8933624, (N.D. Cal. Aug. 22, 2016) ..............13,18,22

*McMillion v. Rash Curtis & Assocs.*,
    No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) .................8,11,16

*Meredith v. United Collection Bureau, Inc.*,
    No. 1:16 CV 1102, 2016 WL 6649279 (N.D. Ohio Nov. 10, 2016). ...........................15,16

*Miller v. Directv LLC*,
    No. CV 14-07579 DMG (EX), 2015 WL 12656912  (C.D. Cal. Jan. 8, 2015)  ...............16

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ...........................................................................................23

*Narouz v. Charter Communications*,
    591 F.3d 1261 (9th Cir. 2010) .........................................................................................23

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) .......................................................................................17

*Pritikin v. Dep't of Energy*,
    254 F.3d 791  (9th Cir. 2001) ..........................................................................................17

*Rainbow Bus. Sols. v. Merch. Servs., Inc.*,
    No. C 10-1993 CW, 2013 WL 6734086 (N.D. Cal. Dec. 20, 2013) ..................................4

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978(N.D. Cal. 2009) ..............................................................................9

*Selby v. LVNV Funding, LLC*,
    No. 13-CV-01383-BAS(BLM), 2016 WL 6677928 (S.D. Cal. June 22, 2016)................18

*Sherman v. Yahoo! Inc.*,
    No. 13CV0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) .................20.

*Shields v. Sonora Quest Laboratories, LLC*,
    Case No. 2:15-cv-00723-SPL (D. Ariz. Mar. 29, 2017) ....................................................6

*Siles v. ILGWU Nat'l Ret. Fund*,
    783 F.2d 923 (9th Cir. 1986).............................................................................................7

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464 (S.D. Cal. 2014)  ...............................................................................20,21

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) .........................................................................................16

*Sitrick v. Dreamworks, LLC*,
    No. CV 03-4265-SVW(AJWX), 2006 WL 6116641, (C.D. Cal. July 20, 2006) ...............4

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-CV-04984-JST, 2017 WL 2833997 (N.D. Cal. June 30, 2017) ...........................15

*Torres v. Nutrisystem, Inc.*,
    289 F.R.D. 587, 595 (C.D. Cal. 2013) ...............................................................5

*True Health Chiropractic Inc. v. McKesson Corp.*,
    No. 13-CV-02219-HSG, 2016 WL 8925144 (N.D. Cal. Aug. 22, 2016) ...................1823

*United Steel v. ConocoPhillips Co.*,
    593 F.3d 802, 806 (9th Cir. 2010) .............................................................

*United States v. Matlock*,
    415 U.S. 164 (1974)...............................................................................5,13

*Vinole v. Countrywide*,
    571 F.3d 935 (9th Cir. 2009) ...............................................................12, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011). ......................................................................5,6,10

*Warnick v. DISH Network LLC*,
    301 F.R.D. 551 (D. Colo. 2014)................................................................13,22

*Wixon v. Wyndham Resort Dev. Corp.*,
    No. C 07-02361 JSW, 2009 WL 3075649 (N.D. Cal. Sept. 21, 2009)...............................3

*Wong v. Regents of University of California*,
    410 F.3d 1052 (9th Cir. 2005) ...............................................................3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ...............................................................3

*Zulewski v. Hershey Co.*,
    2013 WL 1748054 1 (N.D. Cal. 2013)...............................................................23

**OTHER AUTHORITIES**

47 U.S.C. § 227(b)(1)(A) ..................................................................................9

Fed. R. Civ. P. 23(a)(1) ....................................................................................6

Fed. R. Civ. P. 23(b) .........................................................................................5

Fed. R. Civ. P. 23(b)(2) .....................................................................................5

Fed. R. Civ. P. 23(b)(3) .............................................................................17,19

Fed. R. Civ. P. 37(c)(1) ....................................................................................2

Fed. R. Evid. 702 ..............................................................................................4.

47 U.S.C. § 227(b)(1)(A) ..................................................................................9

Civ. L.R. 7–3(a) ................................................................................................2

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., &amp; the States of California, Illinois. N. Carolina, &amp; Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6584 (2013) .........................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   Introduction

Defendant California Service Bureau, Inc. ("CSB") collects unpaid medical bills. Plaintiffs' putative TCPA class action founders for several reasons, the first of which is that CSB calls only telephone numbers which patients provide to their medical providers.

Plaintiff Sandra West's -6314 telephone number was provided to a hospital by a patient (her son Eddie H), who told the hospital that -6314 was his home telephone number.   Plaintiff Hector Membreno's -6213 number was provided by a patient (Marcela R.) to her medical provider as her personal telephone number.   Even if the trier of fact concludes that Eddie H. and Marcela R. were not authorized to tell their medical providers that they could be contacted at -6314 or -6213, respectively, there is no evidence that such unauthorized statements are wide-spread or that such persons can be identified without individual inquiries.

The motion for class certification should be denied for lack of numerosity, predominance, adequacy, and superiority.

### 2.   Background

CSB is a debt collection agency.   (Declaration of Brandon Amyot, ¶ 3 ("Amyot Decl.") At least 94 percent of its collections are medical debt.   (Amyot Decl. ¶ 8)   CSB dials collection calls both manually and using the Global Connect dialing solutions.   (Amyot Decl. ¶ 19)   CSB does not call skip traced numbers using Global Connect.   (Amyot Decl. ¶ 9)   CSB calls all primary telephone numbers directly from its clients, primarily medical providers. (Amyot Decl. ¶¶ 8, 10)   Both Plaintiffs were called on phone numbers using the Global Connect system. (Amyot Decl. ¶¶ 19-20)   Those phone numbers were provided by medical providers, as shown below.

#### a.   Calls to Plaintiff Sandra West

CSB's client (Mississippi Physicians) provided the -6314 number as the home telephone number of its patient Eddie H., who is the son of the Plaintiff Sandra West.   (Declaration of Stephen A. Watkins, ¶ 3, & Ex. 1 thereto)   The 6314 number appears on the Face Sheet.

1   (Amyot Decl. ¶ 13, Ex. 1)

2   **b.     Calls to Plaintiff Hector Membreno:**

3   The 6213 number was provided by CSB's client (John Muir Health) for debtor M.R.

4   The intake form for M.R. states that "The Undersigned acknowledges that he/she has received a

5   copy of the Joint Notice of Privacy Practices."  (Amyot Decl. ¶ 14, Ex. 2)  This document is

6   signed.  (*Ibid.*)  Typically, the Joint Notice of Privacy Practices provides for the disclosure of

7   protected health information ("PHI"), including telephone numbers, to third parties for billing

8   and collection.   (Amyot Decl. ¶ 16)

9   **3.     Plaintiffs' new class definition**

10   In their Motion, Plaintiffs seek to certify a class definition that is different that the class

11   asserted in their Consolidated Complaint.  Plaintiffs currently seek to certify the following class:

12   "All persons within the United States who, within the four years prior to the filing
13   of the complaint in this action, through the date of class notice (the "Class
     period"), Defendant or its agents or employees caused to be made at least 2
14   telephone calls using its Global Connect dialer to said person's cellular telephone
     through the use of any automatic telephone dialing system or an artificial or
15   prerecorded voice, where such person was not listed in Defendant's records as the
16   intended recipient of the calls."

17   Motion at 2:8-12.

18   
19   **4.     Plaintiffs' call data analysis should be excluded**

20   Plaintiffs' motion relies on call data analysis that was not properly disclosed in discovery.

21   Therefore it should be excluded[1].

22   Rule 37 provides in pertinent part as follows:

23   If a party fails to provide information or identify a witness as required by Rule
     26(a) or (e), the party is not allowed to use that information or witness to supply
24   evidence on a motion, at a hearing, or at a trial, unless the failure was
     substantially justified or is harmless.
25   
26   Fed. R. Civ. P. 37(c)(1).

27   ---

[1] "[a]ny evidentiary or procedural objections to the motion must be contained within the brief or
28   memorandum" unless the objection is to reply evidence.  Civ. L.R. 7–3(a).

Plaintiffs failed to produce documents as required by Rule 26(e), which requires timely supplementation of discovery responses.  Rule 37 sanctions are self-executing and automatic. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001). Exclusion is appropriate even in the absence of "bad faith or willfulness." *Id.* The Ninth Circuit has acknowledged the severity of this rule but points out that two exceptions "ameliorate the harshness"—sanctions do not attach where the failure to disclose was either "substantially justified" or "harmless." *Id.*  The party facing sanctions bears the burden of proving the violation was justified or harmless.  *Id.* at 1107.

While Rule 37 sanctions are self-executing, the determination whether the underlying discovery violation was harmless or justified "is entrusted to the broad discretion of the district court."  *David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir.2003) (citation omitted). The Ninth Circuit has not established explicit factors, but the Seventh Circuit has identified the following relevant factors:

(1) the prejudice or surprise to the party against whom the evidence is offered;

(2) the ability of the party to cure the prejudice;

(3) the likelihood of disruption to the trial; and

(4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Id.* at 857 (citations omitted); *see also Wong v. Regents of University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) (considering "[d]isruption to the schedule of the court and other parties" in ruling that failure to disclose expert witness prior to discovery cut-off was not "harmless" under Rule 37(c)(1)); *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2009 WL 3075649 (N.D. Cal. Sept. 21, 2009).

CSB has been surprised by the "wrong number" call analysis as it was nowhere to be found in the July 19, 2017 Expert Report of Jeff Hansen.  As discussed during the September 11, 2017 Case Management Conference, CSB contended that the Mr. Hansen's opinion that CSB auto-dialed about 230,000 cell phone numbers was erroneous, and that the true number was zero. After CSB deposed Mr. Hansen, the Plaintiffs voluntarily served a Notice of Withdrawal of his numerical estimates of the class size (which explains why the *Daubert* motion which defense

1   counsel threatened to file during the September 11, 2017 Case Management Conference was

2   never filed).

3        Now, instead of relying on the discredited Jeff Hansen, Plaintiffs rely on their lawyer's

4   declaration to estimate the class size.  But attorney Kopel is an advocate, not a witness, and for

5   that reason alone his testimony should be inadmissible.  *See, e.g, Rainbow Bus. Sols. v. Merch.*

6   *Servs., Inc.*, No. C 10-1993 CW, 2013 WL 6734086, at *14 (N.D. Cal. Dec. 20, 2013) (noting

7   "Leasing Defendants improperly use attorney declarations to summarize deposition testimony

8   and make factual and legal argument.").  Nor is attorney Kopel an expert witness  with

9   "specialized knowledge using specific facts or data"  Fed.R. Evid. 702.  *See Sitrick v.*

10   *Dreamworks, LLC*, No. CV 03-4265-SVW(AJWX), 2006 WL 6116641, at *22 n. 9 (C.D. Cal.

11   July 20, 2006), aff'd, 516 F.3d 993 (Fed. Cir. 2008) (holding "[t]he Court agrees with the Special

12   Master that Bloom's opinion testimony is not admissible under Federal Rule of Evidence 701…

13   as the Special Master noted, this would allow Defendants to do an end-run around the expert

14   witness requirements of Rule 26(a).")

15        Regardless, Mr. Kopel's testimony as to what is represented by CSB's records

16   CSB002154 (XND accounts), CSB002155 (CDR accounts) and CSB002156 (DNC accounts)

17   lacks any foundation.

18        Plaintiff's new "wrong number" call analysis likely resulted from their last-minute

19   revision of their class definition.  Thus, there is prejudice to CSB.  *See, e.g., Wixon,* 2009 WL

20   3075649, at *6 (conduct of defendant in withholding information delayed class certification

21   proceedings and caused plaintiffs to incur additional expenses).  Also (as explained below), Mr.

22   Kopel's estimates are erroneous because he made the same erroneous assumptions as his expert

23   Jeff Hansen.

24

25   **5.**   **Legal standard**

26        Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  Under

27   Rule 23, the party seeking certification bears the burden of affirmatively showing that each of the

28

1  four requirements of Rule 23(a) and at least one of the three requirements of Rule 23(b) have

2  been met.  *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

3        The four requirements of Rule 23(a) are commonly referred to as numerosity,

4  commonality, typicality, and adequacy of representation.  *United Steel v. ConocoPhillips Co.*,

5  593 F.3d 802, 806 (9th Cir. 2010).

6        As to Rule 23(b), a plaintiff need only show that any one of the three described scenarios

7  is satisfied.  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), and thus they must

8  demonstrate that (1) "questions of law or fact common to class members predominate over any

9  questions affecting only individual members," and (2) "a class action is superior to other

10  available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).

11        Plaintiffs alternatively seek certification under Rule 23(b)(2), which allows for

12  certification if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act

13  on grounds that apply generally to the class, so that final injunctive relief or corresponding

14  declaratory relief is appropriate respecting the class as a whole."  (Fed. R. Civ. P. 23(b)(2); *see*

15  *also Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 595 (C.D. Cal. 2013).)

16        As held by the Supreme Court, "Rule 23 does not set forth a mere pleading standard.  A

17  party seeking class certification must affirmatively demonstrate his compliance with the Rule --

18  that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common

19  questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

20  Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the

21  prerequisites of Rule 23(a) have been satisfied."  *General Telephone Company of the Southwest*

22  *v. Falcon*, 102 S.Ct. 2364, 2372 (1982).   While the Trial Court has broad discretion and

23  flexibility in determining whether to certify a class, "actual, not presumed, conformance with

24  Rule 23(a) remains . . . indispensable."  *Id*

25  **6.  <u>Plaintiffs fail to show numerosity</u>**

26        **a.  CSB calls phone numbers provided to medical providers**

27        Plaintiffs fail to show numerosity as they rely solely on the inadmissible speculation of

28  their lawyer Yitzchak Kopel.  Rule 23(a)(1) requires that the class be so numerous that joinder of

all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  This is not a mere pleading standard.  The burden is on Plaintiffs to prove actual, not presumed, conformance with all requirements for class certification.  *Dukes* at 2551; *Falcon* at 2372.  "Although plaintiff[s] need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient."  *Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008).

CSB collects upon medical debt.  (Amyot Decl., ¶¶ 8, 10)  Plaintiff West's 6314 number, and Plaintiff Membreno's 6213 number were both provided to medical providers.   (Amyot Decl., ¶ 12-18.)   Patients provide their phone numbers in connection with medical treatment.  (Amyot Decl. ¶¶ 23-30 & Exhs. 5-6)  CSB asserts in Opposition to Plaintiffs' Motion examples of consent from John Muir Health, the creditor for M.R.'s account (Amyot Decl., ¶ 23 & Ex. 5)  These documents reflect the name and phone number of patients on a signed intake form.  (Amyot Decl., ¶ 24 & Ex. 5)  These names and phone numbers match the phone numbers and names in CSB's collection system.  (Amyot Decl., ¶ 24 & Ex. 5)  Collection on these accounts resulted in contact with the patients who became debtors.  (Amyot Decl., ¶ 25) Therefore there was consent to call these individuals.   CSB also submits similar examples from Fresno Community Medical Center that show that the patient provided their phone number and that CSB reached the correct individual (Amyot Decl., ¶¶ 26-27 & Ex. 6)  Such consent is also provided orally to medical providers during intake.  Amyot Decl., ¶ 30)

In *Shields v. Sonora Quest Laboratories, LLC*, Case No. 2:15-cv-00723-SPL (D. Ariz. Mar. 29, 2017) (Ex. 2 to Defendant's Request for Judicial Notice), the District of Arizona denied certification of TCPA class action based on calls to collect medical debt, stating in pertinent part:

> "But that is not the only reason the class action must fail. It is unlikely that patients go see a doctor at his or her office, has lab work ordered by their doctor, and have their blood taken by an IOP without ever providing their phone number. The fact that some of those phone numbers may be cell phone numbers is immaterial because the patients have then given their prior express consent. **The rare patient that could allege facts to survive would be so few as to fall far short of the numerosity requirement of Fed. R. Civ. P. 23(a)(1).")**

1    *Id.* at 18-19 (emphasis added).

2         Plaintiffs argue that the numerosity requirement is satisfied because CSB made more

3    than 32 million calls though Global Connect during the Class period and "general knowledge and

4    common sense indicate that it is very large," and that "CSB's corporate representative agreed

5    that it was 'very common' for CSB to place calls to wrong numbers."  However, Plaintiffs have

6    no admissible evidence which supports their argument about wrong numbers.

7          "[W]here a putative class is some subset of a larger pool, the trial court may not infer

8    numerosity from the number in the larger pool alone." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d

9    349, 358 (3d Cir. 2013); *see also Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir.

10   1986) (affirming district court's denial of class certification where plaintiff's "only evidence of

11   numerosity was that 31,000 employees covered by the plan lost their jobs" but provided "no

12   evidence regarding how many of these employees did not receive a pension, how many worked

13   ten years in covered employment, or how many did not work a year in covered employment after

14   1976"); *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *5 (N.D. Cal.

15   May 3, 2013) (concluding plaintiff failed to meet numerosity requirement based on the fact that

16   there were 649,576 subscribers where plaintiff did not offer evidence regarding the number of

17   those subscribers who were allegedly misled by defendant).

18        Plaintiffs rely heavily upon this Court's decision in *McMillion v. Rash Curtis & Assocs.*,

19   No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) certifying a TCPA class,

20   but every sub-class which the Court certified in *McMillion* was based on cell-phone-numbers

21   which the defendant obtained through skip-tracing.  *Id.* at *6.  CSB does not call skip trace

22   numbers using Global Connect, and CSB obtained the Plaintiffs' telephone numbers from the

23   medical providers (who obtained them from the patients).  (Amyot Decl., ¶¶ 9, 12-17)

24   Therefore, it is highly unlikely (and speculative to assume) that CSB's calls to phone numbers

25   provided by patients to medical providers result in a sufficient number of "wrong number" calls

26   to prove numerosity.

27        Plaintiffs claim they have evidence of calls to unintended recipients in via DNC and CDR

28   notations in CSB records.  As shown below, those notations only reflect calls that were never

made, and Mr. Kopel's declaration on this point is based on the same erroneous assumptions that explain why the Plaintiffs served a voluntary Notice of Withdrawal of their expert Jeff Hansen's numerical estimates.

**b.     The DNC and CDR notations in CUBS do not reflect actual calls made.**

CSB uses the notation "CDR" and "DNC" (do not call) to code phone numbers in its CUBS collection system.  (Amyot Decl. ¶ 31) Plaintiffs' counsel Yitzchak Kopel testifies in his declaration that there are 69,380 CDR and DNC notations in the CUBS system based on files produced from its CUBS system, CSB002154 (XND accounts), CSB002155 (CDR accounts) and CSB002156 (DNC accounts) and these likely represent "wrong number calls via Global Connect.   CSB asserts that number is off by 2,379 accounts.   (Amyot Decl., ¶¶ 32-33) Regardless, these accounts were not dialed for the reasons below.   (Amyot Decl., ¶ 33)

- The CSB002154 (65,848 XND accounts) are calls that did not go through because the phone numbers did not work and Global Connect then noted those accounts in CSB's collection system. Amyot Decl. ¶¶ 34-35)

- The   CSB002155 (942 CDR accounts) are calls that were blocked from being uploaded to Global Connect as a result of the cease and desist code ("CDR"). Amyot Decl. ¶¶ 34, 36-37)

- The CSB002156 (211 DNC accounts) are calls that were blocked from being uploaded to Global Connect as a result of the do not call code ("DNC") Amyot Decl. ¶¶ 34, 42-45)

**c.     Plaintiff cannot rely on DNC and CDR notations as evidence of a prior Global Connect call**

If a debtor informs a CSB collector ""stop calling me," or "wrong number," or some variation thereof, the phone number will be removed from the CUBS system with a CDR or DNC notation and be blocked.   (Amyot Decl., ¶ 38.)   This would result in no subsequent calls by Global Connect.  (Amyot Decl., ¶ 38.)   An inbound call, an outbound call outside of Global Connect or a letter being received could also all result in a DNC or CDR status code being placed on an account.  (Amyot Decl., ¶ 38.)   Global Connect also makes calls manually.

1  (Amyot Decl., ¶ 19.)   Therefore, the CDR/DNC notations those notations do not necessarily

2  reflect an initial call via Global Connect to a wrong number prior to CDR/DNC notation.

3  (Amyot Decl., ¶ 39)

4        Plaintiffs err when they rely on the CDR or DNC notations in CUBS to calculate the

5  number of "wrong number" calls which were dialed.  (Amyot Decl., ¶¶ 40-41.)   Contrary to the

6  Plaintiffs' erroneous assumption, DNC and CDR notations in CUBS designate telephone

7  numbers which were not uploaded to Global Connect, and do not necessarily correspond to a

8  prior contact with a person via Global Connect whereby the person stated "wrong number."

9  (Amyot Decl., ¶ 41.)

10        The  total  amount  of  Global  Connect  calls  represented  by  the  69,380  accounts

11  CSB002154 (XND accounts) CSB002155 (CDR accounts), and CSB002156 (DNC accounts), is

12  zero. (Amyot Decl., ¶ 45.)

13        **d.**     **"Wrong Number" Call list of 800-900 numbers**

14        Plaintiffs assert that CSB kept a small "wrong-number" database stored in Global

15  Connect, with approximately 800-900 accounts identified as wrong numbers.  Motion at 11:11-

16  14.  Unlike the 69,380 CDR and DNC notations referred to by Plaintiffs, these 800-900 accounts

17  reflect circumstances whereby CSB was told "wrong number" on a live call.  (Amyot Decl., ¶

18  52.)   These numbers are currently being blocked.  (Amyot Decl., ¶ 53.)    However, there is no

19  confirmation that these persons truly are not associated with the account or otherwise did not

20  consent to calls.  (Amyot Decl., ¶¶ 54-55.)    "[N]o class may be certified that contains members

21  lacking Article III standing.  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)

22  (citations omitted).    As prior express consent is a defense to the TCPA (47 U.S.C. §

23  227(b)(1)(A)), persons who consented to calls cannot be part of Plaintiffs' class.

24        **e.**     **Any DNC notation in Global Connect records does not reflect a wrong**

25  **number call**

26        The DNC notations in CSB's system (CSB002156) represent numbers blocked from

27  upload into Global Connect.  (Amyot Decl., ¶ 48.)  Global Connect data may have examples of

28  phone numbers having a DNC disposition on them, but these are not codes from CSB that were

1    uploaded to Global Connect.  These are examples of numbers which did not have a "DNC"

2    status code in CUBS, and where other dialing restrictions (time, for example) placed a

3    temporary DNC designation on a number when it was "uploaded" into Global Connect's

4    records. (Amyot Decl., ¶¶ 48-49)  DNC dispositions in Global Connect's system do not relate to

5    any person who claimed that CSB called a wrong number. (Amyot Decl., ¶50)

6    **f.       Disposition of Plaintiffs West and Membreno**

7         The comment by Mr. Kopel that Plaintiff West and Plaintiff Membreno's information is

8    not on any of these lists is correct.  (Amyot Decl., ¶ 56.)   Once notification of a lawsuit is

9    received on an account the status of the account is updated.  (Amyot Decl., ¶ 56.)  Therefore the

10   accounts would no longer be in a "DNC" or "CDR" status.  (Amyot Decl., ¶ 57.)    The 6314

11   and 6213 numbers are blocked from being called with a code in CSB's collection system.

12   (Amyot Decl., ¶ 57)

13        Plaintiffs' possible only evidence of "wrong number" calls are the 800-900 accounts

14   stored in Global Connect.  They have not met their burden to demonstrate the 69,380 CDR and

15   DNC notations reflect calls made via Global Connect.  With respect to the 800-900 "wrong

16   number" accounts stored in Global Connect, Plaintiffs have not indicated if these individuals

17   were called more than once (per Plaintiffs' class definition), nor have they identified if these

18   persons did not consent to calls.  Moreover, these numbers are not confirmed as true "wrong

19   numbers".  (Amyot Decl., ¶¶ 54-55)

20        Plaintiffs have not met their burden to show numerosity.

21

22   **7.    Plaintiffs cannot demonstrate commonality**

23        Plaintiffs cannot show commonality of their new phantom class of wrong numbers.

24   Commonality requires Plaintiff to demonstrate that the class members have suffered the same

25   injury, and this "does not mean merely that they have all suffered a violation of the same

26   provision of law."  *Dukes* at 2551.  All of the putative class members' claims must depend on a

27   common contention "of such a nature that it is capable of classwide resolution -- which means

28

that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiff asserts there is commonality based on the following "common" questions:

- Whether Defendant placed the calls in question using an automatic telephone dialing system as contemplated by the TCPA;
- Whether Defendant called Class members using an artificial or prerecorded voice as contemplated by the TCPA;
- Whether Defendant will be able to assert, and ultimately satisfy its burden of proving, any attempted affirmative defense of consent;
- Whether Defendant's conduct violates the TCPA;
- Whether the Class is entitled to statutory damages;
- Whether Defendant's conduct was willful;
- Whether Plaintiffs and the Class are entitled to treble damages based on the
- willfulness of Defendant's conduct;
- Whether Plaintiffs and the Class are entitled to equitable relief.

Motion at 14:6-15.

This Court held there was sufficient commonality "where the classes are limited to those whose phone numbers defendant obtained through skip tracing rather than from a third-party debt owner or the individuals themselves." *McMillion*, 2017 WL 3895764, at *5. However, CSB does not call skip traced numbers using Global Connect and did not skip trace the phone numbers of the two plaintiffs. (Amyot Decl. ¶¶ 9, 18) Therefore, *McMillion* is not applicable. Plaintiffs' citation to *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 307 (S.D. Cal. 2015) as an example of a certified "wrong number" class is misplaced. In that case, there was no real dispute that there were records of "wrong number" calls in the defendant's possession. In this case, CSB denies that records of "wrong number" calls exist in either its CUBS system or that of Global Connect (Amyot Decl. ¶¶ 31-55). (There is a list of about 900 accounts in which call recipients claimed to be someone other than the patient. But persons who owe money often deny being the debtor recipients (Amyot Decl. ¶¶ 51-55). Thus individual

1    inquiries into each such patient's medical and telephone records would be necessary to identify

2    such "wrong number."

3          The Southern District of California in *Davis v. AT&T Corp.,* No. 15CV2342-DMS

4    (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) denied certification of a class nearly

5    identical to Plaintiffs' class on the grounds it lacked predominance.  Although somewhat redolent

6    of the commonality requirement of Rule 23(a), the predominance inquiry is far more demanding,

7    because it focuses on "the relationship between the common and individual issues" and "tests

8    whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

9    *Vinole v. Countrywide*, 571 F.3d 935, 944 (9th Cir. 2009); *Connelly v. Hilton Grand Vacations*

10   *Co.*, 294 F.R.D. 574, 577 (S.D. Cal. 2013).  The class at issue in *Davis* was as follows:

11
12        All persons within the United States who had or have a number assigned to a
          cellular telephone service and received at **least two telephone calls from**
13        **Defendant or** its agents through the use of any ATDS and/or with an artificial or
          pre-recorded voice, without their prior express consent, within the four years
14        prior to the filing of the Complaint in this action who were not customers of
          Defendant at the time of the calls, where Defendant's records indicate that prior
15        to the second and/or any subsequent call*, the call recipient indicated that*
          *Defendant had reached a "wrong number" or similar notation in Defendant's*
16        *customer account records*.

17
18   *Id.* at *3 (emphasis added).

19         In this case, Plaintiffs' class definition asserts "where such person was not listed in

20   Defendant's records as the intended recipient of the calls" rather than "Defendant's records

21   indicate…the call recipient indicated that Defendant had reached a "wrong number" or similar

22   notation in Defendant's customer account records" as in *Davis*.  This is a distinction without a

23   difference.  Plaintiffs assert CSB's records show a person was not the intended recipient of the

24   call by virtue of a CDR, DNC, XND code for "wrong numbers."  CSB maintains that these

25   records do not generally instances where a live person stated he or she was not the intended

26   recipient, and only reflect numbers not loaded to Global Connect (Amyot Decl. ¶¶ 31-50)  Even

27   if these records reflected instances where a live person claimed he or she was a "wrong

28

number," a class of "wrong numbers" lacks commonality and predominance, given the individualized inquiries presented as to whether the called party consented to be called.

In denying certification, the court in *Davis* held that "[t]he parties would still have to go through the "wrong number" notations to determine whether those call recipients were, in fact, customers of Defendant at or before the time of the calls." *Id.* As in *Davis*, CSB "has come forward with evidence that a call with a "wrong number" notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a "procrastination tool" to avoid speaking on the phone. (Amyot Decl. ¶55)   *Davis*, 2017 WL 1155350, at *6.   "[I]t is a very common experience for the customers to say you have the wrong number, and it's not the wrong number," "it happens every day," and "[e]very outbound organization in the world knows that."   *Id.*

Plaintiffs assert the identities of "wrong number" calls can be determined via reverse lookup.   This approach represents too many individual inquiries to establish commonality.   *See Balschmiter v. TD Auto Fin. LLC,* 303 F.R.D. 508, 524 (E.D. Wis. 2014) (noting  the plaintiff's expert's concession that "reverse-lookup services can be inaccurate and the accuracy goes down in the debt-servicing population—because, presumably, those individuals often switch numbers to avoid debt-collectors, just as the named plaintiff did here.").

The Southern District in *Davis* held that the various individualized inquiries as whether there was consent to call the alleged "wrong number" showed lack of predominance.   It recognized that if "[d]efendant's customer provided a number belonging to another person, such as a spouse or other family member, an inquiry into that customer's authority to provide consent to call that number would be required." *Id.* (citing *Gutierrez v. Barclays Group*, No. 10cv1012-DMS (BGS), 2011 WL 579238 at *8-9 (S.D. Cal. Feb. 9, 2011) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)) (husband can provide consent for subscriber wife, if he "'possessed common authority over or other sufficient relationship to the'" phone).

Moreover, as the FCC has made clear, federal common law principles of agency apply under the TCPA, including "not only formal agency, but also principles of apparent authority and ratification." *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States*

1   *of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling*

2   *Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6584 (2013)

3        Plaintiff West's son provided her number to the medical provider, presenting an

4   individual inquiry as to whether her son had authority to provide the 6314 number.  "In sum, a

5   complete analysis of the customer status issue would require an inquiry into each call recipient's

6   individual circumstances. Plaintiff fails to explain how these individualized inquiries could be

7   performed via class-wide proof, and thus fails to show that common issues would predominate

8   over individualized inquiries."  *Davis*, 2017 WL 1155350, at *6.  In *Warnick v. DISH Network*

9   *LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014), the court refused to certify a class of persons called

10  by DISH "who were either not a DISH customer or who previously asked DISH to cease making

11  such calls through a suppression request," as reflected in DISH's records. As the court noted, the

12  "phone numbers [DISH] called were provided by its customers," and "there are many different

13  scenarios in which the numbers provided to it may have been associated with someone other

14  than the named account holder," such as households that subscribe to video service "under one

15  named account holder for a family, friends or roommates, all of whom may have provided

16  consent to be called." *Id.* at 558-59.

17       Plaintiff West's case is not the only example of potential family member complication

18  with regard to determining prior express consent.  CSB debtor S.J. shows the -0402 number as

19  both her number but it is also listed as her husband's phone number.  See Ex. 5 to Amyot Decl.,

20  at pg. 00005.

21       In denying certification in part in *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR,

22  2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016), this Court held that "that the varied scripts

23  and instructions provided to different stores at different times as demonstrated by bebe's evidence

24  renders the question of consent not one that can be answered on a classwide basis because it

25  would require an individual assessment of what each customer was told." *Id.* (citing *Connelly v.*

26  *Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013).  Similarly, Plaintiffs'

27  claims cannot be resolved "in one stroke," because the issue of consent will depend on

28

individualized proof as to each putative class member, even if at first blush the phone number is associated with an alleged "unintended recipient."

In *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2017 WL 2833997, at *3 (N.D. Cal. June 30, 2017), Judge Tigar denied reconsideration of his prior decision denying class certification, making clear the Court's holdings regarding commonality did not conflict with the Ninth Circuit's ruling in *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017) regarding ascertainability. The Court in *Todd* held that individualized showings of reliance would be necessary only after it concluded that Plaintiffs had failed to demonstrate class-wide exposure. Thus "[t]he Court's holding [did] not impose a freestanding administrative feasibility requirement; it simply follows naturally from Plaintiffs' failure to provide sufficient evidence of a widespread and extensive advertising campaign to obtain a presumption of class-wide reliance." *Id.* at *3 (citing *Mazza v. American Honda Motor Co*., 666 F.3d 581, 596 (9th Cir. 2012).

Similar to *Todd*, Plaintiffs have failed to demonstrate consent (or lack of consent) can be established through class-wide proof, and therefore their class lacks commonality and predominance. *See Katz v. Am. Honda Motor Co*., No. 15-CV-4410-CBM-RAOX, 2017 WL 3084272, at *4 (C.D. Cal. June 29, 2017) (denying TCPA class certification, and citing *Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318 (5th Cir. 2008) (district court abused its discretion in certifying the class in a TCPA action where plaintiff failed to advance any "sensible method of establishing consent or the lack thereof via class-wide proof")).

In rejecting additional class discovery regarding such a wrong number class, the Northern District of Ohio confirmed there is no uniform manner to determine these individuals:

 Plaintiff purports to narrow her request to wrong number calls made to cell phones but still seeks to obtain detailed information related to each call. Defendant, however, has no mechanism for culling the information that plaintiff seeks, even for this narrower subset of calls. As it notes, "[t]here is no single database that records information regarding why the number is characterized as bad, nor is there a database that records information on the number of calls made to that number, the time period in which those calls were made, the purpose of the calls made, the equipment used to make the calls, or whether any voicemail message was left." Defendant has met its burden of showing that it would be unduly burdensome to require it to comb through 278,000 accounts to find

responsive information. See Schauf v. Mortg. Bankers Serv. Corp., No. 01–4442, 2001 WL 1654711, at *1 (N.D. Ill. Dec. 20, 2001) (finding discovery request that would require individual review of over 300 loan files and involve approximately 80 hours of work to be overly broad and unduly burdensome and granting motion for a protective order to preclude "fishing through...files for class members").

*Meredith v. United Collection Bureau, Inc*., No. 1:16 CV 1102, 2016 WL 6649279, at *3 (N.D. Ohio Nov. 10, 2016).

Moreover, affirmative defenses such as good faith consent to calls would have to be litigated.  *See Chyba v. First Financial Asset Mgmt*., 2014 WL 1744136 *12 (S.D.Ca. April 30, 2014) ("Even if Plaintiff is correct in stating that she never gave Defendant or Enterprise consent to call, and there was no actual prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it."); *Danehy v. Time Warner Cable Enter. LLC*, No. 5:14-CV-133-FL, 2015 WL 5534285, at *3 (E.D.N.C. Sept. 18, 2015) (adopting magistrate's grant of summary judgment based on good faith defense). *Miller v. Directv LLC*, No. CV 14-07579 DMG (EX), 2015 WL 12656912, at *2 (C.D. Cal. Jan. 8, 2015) (noting "the Ninth Circuit has not determined the meaning of "called party").

Plaintiffs' class lacks commonality given their lack of common proof regarding consent. Their motion should be denied.

## 8.   <u>Plaintiff West cannot demonstrate typicality</u>

Plaintiffs' unique circumstances do not establish typicality.  The typicality requirement looks to whether the claim of the class representative is typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).  Moreover, Plaintiffs' class action claims must be based on conduct which is not unique to them.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In *McMillion*, this Court held that one of the plaintiffs lacked typicality because she fell into the class definition's exclusion of persons who provided their cellular telephone number in an application for credit to a creditor that has opened an account with defendant.  2017 WL

3895764, at *6. Similarly, Plaintiff West lacks typicality as it is possible she authorized her son to use her 6314 number and therefore consented to phone calls to that number. *See Gutierrez, supra*. *See also Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242, 1253 (11th Cir. 2014) (prior express consent can be established via agency law); *Davis,* 2017 WL 1155350, at *6 (denying TCPA class certification and holding "[I]f Defendant's customer provided a number belonging to another person, such as a spouse or other family member, an inquiry into that customer's authority to provide consent to call that number would be required.").

Moreover, if Plaintiff West's son did not have authority to provide the 6314 number, this also constitutes a unique defense. Where a third party not before the Court causes the injury, there is no Article III standing. *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001). Plaintiff West lacks typicality.

## 9. <u>Plaintiffs are inadequate</u>

A plaintiff seeking to maintain a class action must be a member of each class and subclass he or she claims to represent. *Falcon* at 2370; *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Such circumstances may impact both "adequacy" and "typicality." *In Re American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996). As Plaintiff West is possibly someone called with consent, or otherwise lacks Article III standing, it is possible she may not be a member of the class. She therefore lacks adequacy.

## 10. <u>Plaintiffs cannot establish predominance</u>

Plaintiffs seek certification pursuant to Rule 23(b)(3), and must thus show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Predominance requires common questions to "present a significant aspect of the case" such that "there is clear justification" -- in terms of efficiency and judicial economy -- for

1   resolving those questions in a single adjudication.  *Hanlon*, 150 F.3d 1011, 1022 (9th Cir. 1998).

2   This inquiry is "far more demanding" than that for commonality.  *Vinole*, *supra*.

3   Plaintiffs assert predominance is satisfied because "because the Class consists of

4   individuals who were not listed as the intended recipients of Defendant's calls to begin with, any

5   issues regarding consent are eliminated entirely."  As shown in CSB's commonality analysis,

6   Plaintiffs' argument is based on an unsupported notion that "DNC" or "CDR" in CSB's CUBS

7   system or in Global Connect records reflects a call to a number that resulted in a live person

8   informing CSB "wrong number" this number.  This is not the case. (Amyot Decl. ¶¶ 31-50)

9   Plaintiffs are at best limited to the 800-900 "wrong number" accounts in Global Connect.

10  However, relying on a "wrong number" notation to establish a wrong number class was rejected

11  in *Davis*, 2017 WL 1155350, at *6 as lacking predominance.  The Court in *Davis* also held that

12  the providing of consent by a family member presents individualized inquires that argue against

13  predominance.  2017 WL 1155350, at *6.  Plaintiff West's case presents that very individualized

14  inquiry.  As another example, CSB debtor S.J. lists her -0402 number as both her number and her

15  husband's.  See Ex. 5 to Amyot Decl., at pg. 00005.  *See Gutierrez, supra* (spouse may have

16  common authority over cell phone number).

17  Plaintiffs have not shown a class-wide way of determining lack of prior express consent,

18  and therefore their class lacks predominance.  *See True Health Chiropractic Inc. v. McKesson*

19  *Corp.,* No. 13-CV-02219-HSG, 2016 WL 8925144, at *3 (N.D. Cal. Aug. 22, 2016) (finding

20  predominance requirement not satisfied where plaintiffs failed to "offer[ ] their own satisfactory

21  method of establishing a lack of 'express permission' via class-wide proof.")  *See also Katz* and

22  *Gene & Gene*, *supra*.

23  The Southern District of California in *Selby v. LVNV Funding, LLC*, No. 13-CV-01383-

24  BAS(BLM), 2016 WL 6677928, at *10 (S.D. Cal. June 22, 2016) similarly denied class

25  certification due to lack of predominance given the varying manner which consent was provided,

26  including via application and orally--the same methods the patient-debtors of CSB in this case

27  provide consent.  (Amyot Decl. ¶¶ 23-30 & Exhs. 5-6).  *See also Meyer*, 2016 WL 8933624, at

28

1 | *7 (question of consent could not be answered on classwide basis and therefore lacked

2 | predominance).

3 |       Plaintiffs' Motion relies on an improper attorney affidavit to provide speculative analysis

4 | to establish their class.  The correct analysis of CSB records shows only calls not made by

5 | Global Connect.  Regardless, any of "wrong numbers" class lacks predominance.

6 |

7 | **11.**    <u>**Plaintiffs' class lacks superiority**</u>

8 |       Plaintiffs summarily assert their class possesses superiority without addressing the

9 | significant manageability problems.  A party seeking class certification must demonstrate that the

10 | class action device is "superior" to individual lawsuits.  *Amchem Products v. Windsor*, 521 U.S.

11 | 591, 615 (1997.).  There are four "nonexhaustive" factors relevant to the decision whether a class

12 | action is superior:  (a) the class members' interests in individually controlling the prosecution or

13 | defense of separate actions; (b) the extent and nature of any litigation concerning the controversy

14 | already begun by or against class members; (c) the desirability or undesirability of concentrating

15 | the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a

16 | class action.  *Id.*; see also Fed. R. Civ. P. 23(b)(3).

17 |       Plaintiffs assert their class action is superior because small recoveries do not provide the

18 | incentive for an individual to bring a solo action.  Motion at 20:1-3.  However, Plaintiffs do not

19 | address the manageability problems presented by their "wrong number" class.  As shown below,

20 | these manageability concerns overwhelm this litigation and therefore Plaintiffs' class lacks

21 | superiority.

22 |     **a.**    **Plaintiff's claims lack superiority due to difficulty in identifying subscriber**

23 |       The Ninth Circuit recently clarified that concerns regarding administrative feasibility are

24 | not "freestanding" but must be tethered to the Rule 23 requirements, particularly manageability

25 | and superiority.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).  This

26 | Court in *Meyer*, 2017 WL 558017, at *4, noted that the issue of determining who received the

27 | text messages at issue "do present manageability concerns."  In that case, the Court declined to

28 | decertify the subclass, in part due to analysis provided by an expert that would at the very least

produce a list of "telephone numbers that would have been sent a text message by Air2Web on behalf of [defendant]," even if not a list of text messages received. *Id.*

In contrast, Plaintiffs have no such list of unintended recipients called, just speculation that CSB must have called "unintended recipients" within CSB002154 (XND accounts) CSB002155 (CDR accounts), and CSB002156 (DNC accounts). But those accounts represent numbers not uploaded to Global Connect. Therefore, Plaintiffs' class lacks manageability, given the individualized inquiries involved in identifying those "wrong numbers" and then determining with if those persons consented. Even if Plaintiffs are limited to the 800-900 list of alleged wrong numbers, the same manageability problems persist.

Plaintiffs claim that there are unlikely to be serious difficulties identifying class members. Motion at 6:19-20. Plaintiffs assert they can readily identify class members from Global Connect call records. Motion at 6:13-20. However, the frequency of cell phone turnover has been held to establish lack of manageability. *Balschmiter,* 303 F.R.D. at 523. In that case, the plaintiff proposed a method by which the putative class members would be identified by using a reverse-lookup provider to ascertain them from a list of telephone numbers. Similarly, Plaintiffs propose reverse look-up. Motion at 7:15-27. However, the Court in *Balschmiter* held that there is no reverse-lookup provider that can reliably provide subscriber information at a specified date in the past. And, reverse-lookup services can be inaccurate, particularly in the debt-servicing population, "since those individuals often switch numbers to avoid debt-collectors." *Id.* at 524.

The foregoing will inevitably lead to over-inclusion and under-inclusion of putative class members, as "new persons who do not belong in the class might now own numbers encompassed by the class, and persons who should be in the class may no longer own the number." *Id.*

The Southern District of California in *Smith v. Microsoft Corp*., 297 F.R.D. 464, 473 (S.D. Cal. 2014) noted that "in light of the record retention policies of some of the major cellular service providers, it is likely that even subpoenaing the cellular service providers will not yield the necessary identification and contact information." *See also Sherman v. Yahoo! Inc*., No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *7 (S.D. Cal. Sept. 23, 2015) (same). Indeed,

1    Courts have rejected this sort of proposal.  *Brown v. Wells Fargo & Co.*, 2013 WL 6851068, *5

2    (D. Minn. Dec. 30, 2013).

3          Even if Plaintiffs argue that they can obtain subscriber information by issuing subpoenas

4    to the telephone carriers, however, as illustrated by the *Smith* and *Brown* cases, the success of

5    such a process is speculative and would be completely unworkable.  In *Sherman*, the Southern

6    District of California denied a TCPA class certification in part based on the following:

7

8          "Plaintiff's last resort is to issue a subpoena to AT & T for subscriber records. As
           an initial matter, Plaintiff has not demonstrated that she has any likelihood of
9          success via this route. ***In several other cases, cellular carriers have refused to***
           ***turn over similar records pertaining to California customers in TCPA cases***
10         ***based on the right to privacy established by California Public Utilities Code***
           ***section 2891(a)(4)10** and Plaintiff offers no explanation as to why AT & T will
11         turn over subscriber records here."

12

13   2015 WL 5604400, at *6 (emphasis added).  The Court also held that "more than 40% of AT &

14   T subscribers are on group plans," and that the cell phone turnover, such as that between parent

15   and child or from employer to employee would render ascertaining the subscriber or user at the

16   time of the call impossible.  *Id.*

17         In *Ades v. Omni Hotels Mgmt. Corp.,* No. 2:13–CV–2468 (C.D. Cal. May 18, 2015)

18   (Ex. 1 to RJN) after certifying an IPA class, the Central District of California held that California

19   *Public Utilities Code* section 2891(a) requires third-party wireless carriers to obtain express

20   customer consent before disclosing California class member information to class counsel.

21   Ultimately, the parties modified the class definition whereby "the new class definition may avoid

22   the need to obtain potential class members contact information from telephone service

23   providers."  *Ades*, No. 2:13–CV–2468 (C.D. Cal. Sept. 21, 2015) (ECF 147).  Plaintiff would

24   have to seek contact information from the very service providers that the courts in *Sherman* and

25   *Ades* held would likely be unproductive.

26         As confirmed by the Courts in *Smith, Balschmiter,* and *Ades,* the difficulties in

27   identifying class members are numerous.  The Court in *Smith* held the inability to ascertain the

28   class presented manageability concerns under Fed. R. Civ. P. 23(b)(3).  *Smith v. Microsoft*

     *Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014).  The Court in *Smith* denied class certification in

1  part on that basis.  *Id.*  Similarly, the inability to identify the regular user or subscriber of the

2  phone via subpoenas to the service providers demonstrates that Plaintiffs' class is unmanageable.

3         **b.**       **Plaintiffs' class lacks manageability due to difficulty in determining consent**

4         As shown by Plaintiff West's case, even if the called party's name is not reflected in

5  CSB's records, that does not mean the alleged "unintended recipient" did not consent to calls,

6  given that a family member (her son) provided her 6314 number.  CSB debtor S.J. also lists her

7  0402 number as both her number and her husbands.  See Ex. 5 to Amyot Decl., at pg. 00005.

8  *See Warnick*, 301 F.R.D. at 557 (holding TCPA class lacked manageability in part because

9  noncustomer family members may have consented to calls).

10         If the Court will be required to "hold mini-trials" to determine if an unintended recipient

11  in fact consented to be called, then a class action is not superior to other methods for fairly and

12  efficiently adjudicating the controversy.  *Gannon v. Network Telephone Services*, 2013 WL

13  2450199 at *4 (C.D. Cal. June 5, 2013), *aff'd*, 628 F. App'x 551 (9th Cir. 2016).  *See also Meyer*,

14  2016 WL 8933624, at *7 (individualized inquiries surrounding consent argued against

15  commonality).  The significant inquiries required to identify each individual putative class

16  member, and determine whether he/she consented to be called, would render this matter

17  unmanageable.  Whether or not a family member authorized another family member to provide

18  his or her number (as with Plaintiff West and her son) is a legal issue.  "Therefore, the Court

19  itself—not claims administrators—must rule on them.  There is nothing administrative about the

20  findings of ownership required here."  *In re SFPP Right-of-Way Claims*, No.

21  CV1507492JVSDFMX, 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017) (denying class in

22  part due to lack of manageability).  Any determination as to whether a "good faith" defense (see

23  *Chyba*, *supra*) applies to each class member would similarly require the Court's determination,

24  rather than an administrator.

25         Plaintiffs' class lacks manageability.

26  **12.**    **Plaintiffs cannot establish an injunctive relief class**

27         There are no circumstances justifying an injunctive relief class.  In the Ninth Circuit, a

28  class may not be certified under Rule 23(b)(2) unless the primary claim asserted by the plaintiff

1   is for injunctive or declaratory relief.  *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003);

2   *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 729 (9th Cir. 2007) (affirming denial of

3   certification under 23(b)(2) where plaintiff seeking primarily money damages).   Plaintiffs'

4   primary claim is for money, not for injunctive or declaratory relief, so they cannot satisfy Rule

5   23(b)(2).  *See Wal-Mart*, 131 S. Ct. at 2557 (claims for monetary relief may not be certified

6   under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory

7   relief.").

8          The burden of proof is on Plaintiffs to demonstrate compliance with all requirements of

9   Rule 23.  *Narouz v. Charter Communications*, 591 F.3d 1261, 1266 (9th Cir. 2010); *Zulewski v.*

10  *Hershey Co.*, 2013 WL 1748054 at *1 (N.D. Cal. 2013).

11         Plaintiffs' sole argument in favor of their injunctive relief class is that "Defendant's use of

12  an autodialers and prerecorded messages to call Class members is a uniform debt collection

13  practice that "appl[ies] generally to the class."  However, Plaintiffs have made no showing that in

14  the future they will likely be subject to an outbound call to their cell phones.  All future calls to

15  Plaintiffs are blocked.  (Amyot Decl. ¶ 57) Plaintiffs lack standing to assert a 23(b)(2) class.  *See*

16  *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *13 (N.D. Cal. June

17  13, 2014) (no 23(b)(2) class in part because plaintiff did not show he would buy offending

18  product in the future).  Plaintiffs cannot assert a class of which they are not a member.  *See*

19  *Berger*, s*upra.*  "Given that each plaintiff is independently entitled to statutory damages under

20  the TCPA, and that Plaintiffs expressly seek "actual monetary loss from such violations or the

21  sum of five hundred dollars ($500.00) for each violation,"… the Court finds certification under

22  Rule 23(b)(2) impermissible." *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-

23  02219-HSG, 2016 WL 8925144, at *3 (N.D. Cal. Aug. 22, 2016).  *See also Knutson v. Schwan's*

24  *Home Serv., Inc.*, No. 12-CV-0964, 2013 WL 4774763, at *9 (S.D. Cal. Sept. 5, 2013) (finding

25  certification under Rule 23(b)(2) inappropriate where it was "undisputed that [d]efendants [had]

26  ceased calling ... customers" in a TCPA action).

27

28

**13.**   **Conclusion**

For the reasons stated above, Defendant CSB respectfully submits that Plaintiffs' Motion should be denied.

Dated:  October 27, 2017                    **CARLSON & MESSER LLP**


By:   /s/ Charles R. Messer
           Charles R. Messer
           David J. Kaminski
           Stephen A. Watkins
           Attorneys for Defendant,
           *CALIFORNIA SERVICE BUREAU, INC.*