# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SANDRA WEST, ET AL.,** | CASE NO. 16-cv-3124-YGR |
| Plaintiffs**,** | |
| vs. | **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| **CALIFORNIA SERVICES BUREAU, INC.,** | Re: Dkt. Nos. 50, 51, 55 |
| Defendant**.** | |

Plaintiffs Sandra West and Hector Membreno bring this putative class action against defendant California Services Bureau, Inc. ("CSB") alleging that defendant called plaintiffs without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. sections 227, *et seq.* (the "TCPA").

Plaintiffs now seek to certify the following class as both an injunctive relief class pursuant to Rule 23(b)(2) and damages class pursuant to Rule 23(b)(3):[1]

> **Cell Phone Wrong Number Class:** All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone through the use of any automatic telephone dialing system or an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the calls.[2]

---

[1] Plaintiffs also filed administrative sealing motions in connection with plaintiffs' motion for class certification. (Dkt. Nos. 50, 55.) The material in question is subject to an earlier Stipulated Protective Order, allowing the parties to designate certain documents produced in discovery as confidential. (Dkt. No. 33.) The Court finds the request is sufficiently justified under the applicable "good cause" standard. Accordingly, the Court **GRANTS** the motions to seal the designated excerpts and documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

[2] Relevant to the class plaintiff seeks to certify, the TCPA prohibits: (i) "any call (other

(Dkt. No. 51, Motion for Class Certification ("Motion") at 2.)

Having carefully considered the pleadings, the papers and exhibits submitted, and for the reasons set forth more fully below, the Court **GRANTS** plaintiffs' motion for class certification.[3]

## I. BACKGROUND

Plaintiffs bring the instant action against defendant in connection with its allegedly unlawful debt collection practices. Defendant is an account receivable management company which "is in the business of collecting debts on behalf of health-care providers, governmental agencies, and credit bureaus." (Dkt. No. 51-1, Declaration of Yitzchak Kopel ("Kopel Decl."), Ex. 1, Deposition of Brandon Amyot ("Amyot Dep.") at 16:5-6. ) In other words, "CBA is a debt collection agency." (Declaration of Brandon Amyot ("Amyot Decl.") ¶ 3.) Plaintiffs allege that defendant "has engaged in illegally calling consumers' cellular telephone numbers using an [ATDS] and/or artificial or prerecorded voice" in violation of the TCPA. (Dkt. No. 25, Amended Complaint ("AC") ¶¶ 4-5.)

Plaintiffs allege that defendant "repeatedly" called them on their cellular telephones using an autodialer and/or an artificial or prerecorded voice. (*Id.* ¶¶ 25-26, 29-30.) Plaintiffs further allege that they did not provide defendant with prior express written consent, and they specifically asked defendant to stop calling. (*Id.*) Defendant allegedly called plaintiffs West and Membreno approximately twenty times each. (*Id.* ¶¶ 18, 20.)

---

than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [(an "ATDS")] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" and (ii) "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," other than certain enumerated exceptions. 47 U.S.C. §§ 227(b)(1)(A)(iii) & 227(b)(1)(B).

[3] Defendant has also submitted a request for judicial notice under Fed. R. Evid. 201 of a court's order regarding class notice in *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-2468 (C.D. Cal. May 18, 2015) and another court's order denying class certification in *Shields v. Sonora Quest Laboratories, LLC,* No. 2:15-cv-00723-SPL (D. Ariz. Mar. 29, 2017). (Dkt. No. 53.) In light of plaintiffs' non-opposition, the Court **GRANTS** the request for judicial notice, but does not accept the truth of any matters asserted in the documents. The Court gives such documents their proper evidentiary weight.

To make these calls, plaintiffs offer evidence indicating that defendant utilizes an autodialer system known as the Global Connect GH1 Peak Dialer ("Global Connect dialer"). (*See* Ayman Dep. at 66:18-22.) The Global Connect dialer can dial thousands of phone numbers in a short period of time. (*Id.* at 75:8-10.) Plaintiffs allege thus regarding defendant's business practices related to these calls:

Defendant receives debt-accounts from creditors. (*Id.* at 16:5-23.) CSB utilizes the Global Connect dialer for two types of calling campaigns, namely "automated calls where an agent was preset" and "agentless calls." (*Id.* at 66:25-67:4.) With regard to agentless calls, CSB would program the Global Connect dialer to call phone numbers and play a pre-recoded message.[4] CSB placed approximately 32.7 million calls using the Global Connect dialer during the class period, and CSB's 30(b)(6) witness agreed that it was "very common" for CSB to call "someone who indicates that we have a wrong number." (*Id.* at 25:13-19, 143:7-16.)

Notably, defendant maintains two call log database which plaintiffs have provided. First, CSB's internal "CUBS" system contains all phone numbers dialed by defendant. Within the CUBS system, approximately 69,380 phone numbers are notated as DNC ("do not call") or WN ("wrong number"). (*See* Kopel Decl., Exs. 8-10.) Second, CSB maintains a smaller "wrong number" calls database of 800-900 accounts which CSB has identified as wrong numbers. (Amyot Dep. at 16:7-21.) CSB denies that either of these call log databases reflects actual calls to wrong numbers.

## II. LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements as

---

[4] Defendant claims that agentless calls were only placed to landline numbers, but plaintiffs offer evidence suggesting that at least West's and Membreno's cell phone numbers were called pursuant to agentless campaigns. (*Id.* at 102:1-3 (West), 126:3-11 (Membreno).)

3

"numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).

Rule 23(b)(2) requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citation omitted).

Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Ellis*, 657 F.3d at 982. "A party seeking class certification must affirmatively demonstrate [its]

4

compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

**III. DISCUSSION**

Plaintiffs seek to certify the proposed class under both Rule 23(b)(2) and 23(b)(3). For the sake of clarity, the Court first addresses certification as damages classes under Rule 23(b)(3), and then addresses plaintiffs' arguments for certification as injunctive relief classes under Rule 23(b)(2).

### A. Rule 23(b)(3) Damages Class

Defendant challenges all elements for certification of a Rule 23(b)(3) class, except for typicality and adequacy as to plaintiff Hector Membreno. The Court will first address commonality under Rule 23(a) together with predominance under Rule 23(b)(3). *See, e.g.*, *Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-1395, 2013 WL 6925827, at *3 (S.D. Cal. July 30, 2013) (addressing commonality and predominance together) (citing *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")). The Court will then address the remaining factors under Rules 23(a) and 23(b)(3)—Numerosity, Typicality, Adequacy, and Superiority—in turn.

#### 1. *Commonality and Predominance*

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The existence of common questions itself will not satisfy the requirement. Instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original). The predominance inquiry under Rule 23(b)(3) is "far more demanding." *See Amchem Prods.*, 521 U.S. at 623–24.

5

Defendant argues that the following two issues require individualized inquiries and therefore defeat class certification, namely whether each WN or DNC notation in CSB's call log databases reflects (i) the phone number of an intended recipient debtor who provided consent but later indicated that CSB had dialed a wrong number as a "procrastination tool" to avoid speaking with a debt collector or (ii) a number which was provided by the recipient's family member who may have had authority to provide consent.[5]

With regard to the first issue which concerns the potential for phone numbers marked as WN or DNC to reflect the actual correct phone number of an intended recipient who provided consent, defendant offers the testimony of Mr. Amyot who states that it is "common in the debt collection industry, and in CSB's experience, for a collector to reach a debtor who claims that [he] or she is not the debtor, or disguise his or her voice, or otherwise claim that CSB has reached the wrong person." (Amyot Decl. ¶ 55.) Accordingly, defendant argues that determining whether a putative class member is entitled to relief demands an individual inquiry into whether each putative class member whose number is marked as WN or DNC in CSB's databases was in fact listed in defendant's records as the intended recipients of the calls.

Defendant relies on *Davis* in arguing that this issue presents an individualized inquiry which cannot be resolved on a classwide basis. *Davis v. AT&T Corp.*, 2017 WL 1155350 (S.D. Cal. 2017). There, the court considered whether to certify a TCPA class based on notations in defendant's call records which "indicated that prior to the second and/or an subsequent call, the call recipient indicated that Defendant had reached a 'wrong number.'" *Id.* at *3. The *Davis* court found a lack of predominance partly because the "parties [would] still have to go through the 'wrong number' notations to determine whether those call recipients were, in fact, customers of

---

[5] CSB relies on *Chyba v. First Financial Asset Mgmt.*, 2014 WL 1744136 (S.D. Cal. 2014), in arguing that the issue of whether "affirmative defenses such as good faith" apply to the calls at issue presents an individualized inquiry. (Dkt. No. 52, Opposition to Motion for Class Certification ("Opposition") at 16.) However, defendant makes no showing that the issue of CSB's "good faith [reliance] on the information provided to it" cannot be resolved on a classwide basis. *Id.* at *12. To the contrary, the record suggests that good faith reliance presents a classwide issue.

6

Defendant at or before the time of the calls." *Id. at* *5. In denying class certification, the court noted that "many customers tell callers they have reached the wrong number, though the customer's number was dialed." *Id*.

Defendant does not persuade. As an initial matter, several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as "wrong number" in defendant's call log databases "may not have actually been a wrong number." *Johnson v. Navient Solutions, Inc.,* 315 F.R.D. 501, 503 (S.D. Ind. 2016); *see also Abdeljalil v. Gen. Elec. Capital Corp*, 306 F.R.D. 303 (S.D. Cal. 2015).[6]

Further, *Davis* is distinguishable. There, the court's holding as to predominance was based largely on plaintiffs' failure to articulate how a reverse number lookup service could be utilized to resolve "consent or lack thereof" on a classwide basis. *See Davis*, 2017 WL 1155350, at * 6. By contrast, in this case plaintiffs' TCPA expert, namely Jeffery A. Hanson, explains precisely how a reverse number lookup service could be used to resolve consent issues on a classwide basis. First, the reverse number lookup service would "be used to identify the users for each of [the] numbers [appearing in defendant's records] at the times of the calls."[7] (Hanson Decl. ¶ 56.) Second, "users identified from the reverse lookup service will then be compared with the account holders listed in [CSB's] records." (*Id*.) Finally, a discrepancy between CSB's record and the reverse lookup service records "will indicate that a wrong number was called." (*Id*.) Accordingly, the Court finds

---

[6] Defendant argues that *Abdeljalil* is distinguishable because in that case "there was no real dispute that there were records of 'wrong number' calls." (Opposition at 11.) However, CSB somehow overlooks the fact that the defendant in *Abdeljalil* argued that "the term 'wrong number' could appear in an account holder record where an account holder has changed phone numbers or is trying to evade a debt collection by falsely stating defendant's associate had reached a wrong number." *Abdeljalil,* 306 F.R.D. at 307.

[7] Defendant takes issue with the accuracy of reverse lookup services given the high rate of cell phone turnover amongst recipients of debt collection calls. However, this criticism fails in light of the fact that plaintiffs' expert opined that the reverse lookup service would be used to identify the users of each phone number "at the time of the calls" and testified to the same during his deposition. (Hanson Rpt. ¶ 56; Hanson Dep. at 41:21-25; *see also* Verkhovskaya Rpt. ¶¶ 14-15.) Therefore, plaintiffs' proposed methodology controls for cell phone turnover by comparing defendant's records to the reverse lookup service data at a specific point in time.

plaintiffs' proposed methodology for resolving "consent or lack thereof" on a classwide basis sufficient. *Davis*, 2017 WL 1155350, at * 6.

The second issue, namely whether a number marked as WN or DNC reflects a recipient's number which was provided by the recipient's family member who may have had authority to provide consent, similarly does not defeat class certification. In *Davis*, the Court noted that if "[d]efendant's customer provided a number belonging to another person, such as a spouse or other family member, an inquiry into that customer's authority to provide consent to call that number would be required." *Id*. (citing *Gutierrez v. Barclays Group*, 2011 WL 579238 at *8-9 (S.D. Cal. Feb. 9, 2011). Here, the possibility that a recipient's phone number was provided by a family member is more than theoretical. Specifically, the record reflects that the cell phone number of Sandra West was provided to CSB client Mississippi Physician by West's son. (Dkt. No. 52, Declaration of Stephen A. Watkins ("Watkins Decl.") ¶ 3, Ex. 1.)

Nonetheless, defendant does not persuade as this inquiry can be resolved on a classwide basis through a reverse lookup service. According to plaintiffs' expert, the reverse lookup service will identify the *users* for each of the phone numbers which appear in defendant's call log databases, not merely the account holder. (Hanson Rpt. ¶ 56; Hanson Decl. at 38:18-10.) Stated differently, a reverse lookup will generate a list of all individuals who customarily use each phone number. (*Id.*) This list would necessarily include family members who use the cell phone number and arguably have authority to consent to be called at that number. As noted, this list can be compared to defendant's call log databases to determine on a classwide basis whether consent was given with respect to each class member.

Therefore, the Court finds that plaintiffs satisfy the requirement that questions common to the class "predominate over" other questions under Rule 23(b)(3).[8]

---

[8] Defendant's reliance on *Meyer v. Bebe Stores, Inc.,* No. 14-CV-00267-YGR (N.D. Cal. 2016), is misplaced. There, this Court denied in part plaintiffs' motion for class certification based on individualized issues of consent arising from "the varied scripts and instructions provided to different [retail] stores at difference times as demonstrated by [defendant's] evidence." *Id*. at * 7. By contrast, defendant here proffers no evidence of variable call scripts or instructions. Further, as discussed above, issues of consent can be resolved on a classwide basis through plaintiffs' proposed reverse lookup methodology. Similarly, defendant's reference to *Todd v. Tempur-Sealy Int'l, Inc.,* 2017 WL 2833993, does not persuade for these same reasons.

8

### *2. Numerosity*

Rule 23(a) requires that each proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014); *see, e.g.*, *Patrick v. Marshall*, 460 F. Supp. 23, 29 (N.D. Cal. 1978) (certifying class with at least thirty-nine potential members). A class or subclass with more than 40 members "raises a presumption of impracticability [of joinder] based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015). In analyzing numerosity "a court may make common-sense assumptions and reasonable inferences." *The Civil Rights Educ. & Enforcement Ctr. V. RLJ Lodging Trust*, 2013 WL 314400, at *6 (N.D. Cal. 2016).

Defendant asserts that plaintiffs fail to show numerosity because plaintiffs "rely solely on the inadmissible speculation of their lawyer Yitzchak Kopel." (Dkt. No. 52, Opposition to Motion for Class Certification ("Opposition") at 5.) According to defendant, the declaration of Mr. Kopel contains "wrong number" call data analysis which was not properly disclosed in the report of plaintiffs' TCPA expert. Defendant argues that such analysis should be excluded pursuant to Fed. R. Civ. Pro. 37(c)(1) which provides that "[i]f a party fails to disclose information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to support evidence on a motion . . . unless the failure was substantially justified or is harmless."[9]

---

[9] Courts have noted that the "purpose of the rule is to prevent the practice of 'sandbagging' an adversary with new evidence." *Lee Valley Tools Ltd. v. Industrial Blade Co.*, 288 F.R.D. 254, 260 (W.D.N.Y. 2013). It is the burden of the party which has failed to disclosure information to prove that the failure to disclose the required information was substantially justified or harmless. *R&R Sails, Inc. v Insurance Co. of Pennsylvania* 673 F.3d 1240, 1246 (9th Cir. 2012); *Torres v City of Los Angeles* 548 F3d. 1197, 1213(9th Cir. 2008). To determine whether or not to preclude introduction of evidence, courts consider the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."

Defendant's arguments in support of exclusion do not persuade. As an initial matter, CSB fails to specify which portion of Mr. Kopel's declaration should be excluded under Rule 37(c)(1). Second, the Court has reviewed Mr. Kopel's declaration and finds that the declaration does not present any new analysis or testimony. Rather, Mr. Kopel simply attaches to his declaration (i) deposition transcripts; (ii) documents previously produced by CSB; (iii) the firm resume for Bursor & Fisher, P.A.; and (iv) a declaration filed by plaintiffs' counsel in a separate TCPA case before this Court, namely *McMillion, et al. v. Rash Curtis & Associates,* 4:16-cv-03396-YGR. Therefore, defendant's request for exclusion is **DENIED**.[10]

In any event, the Court finds that plaintiffs need not rely on the declaration of Mr. Kopel to establish numerosity. The record reflects that CSB made 32 million calls through Global Connect during the class period. (Amyot Dep. at 23:13–19.) Plaintiffs' call records expert Anya Verkhovskaya analyzed these calls in defendant's call log databases and determined that CSB placed two or more calls to 635,096 unique phone numbers during the class period. (Dkt. No. 56-2, Data Analysis Report of Anya Verkhovskaya ("Verkhovskaya Rpt.") ¶¶ 7–8.)[11] Ms.

---

*San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (quoting *Dey, L.P v. Ivax Pharm., Inc.,* 233 F.R.D. 567, 571 (C.D. Cal. 2005); *see also S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592 (4th Cir.2003)).

[10] Defendant argues in passing that Mr. Kopel's statements "as to what is represented by [certain] CSB[] records . . . lacks any foundation." (Opposition at 4:15-17.) However, defendant ignores the fact that Mr. Kopel's statements merely reflect the testimony of defendant's 30(b)(6) witness. (Amyot Dep. at 83:12-24, 122:3-15 (discussing codes used to mark wrong numbers in CSB call log databases).)

[11] Defendant moves to exclude Ms. Verkhovskaya's testimony pursuant to Fed. R. Civ. P. 37(c)(1) on the ground that (i) defendant had no notice that plaintiffs intended to rely on Ms. Verkhovskaya as an expert witness and thus had no opportunity to depose her or otherwise test the veracity of her statements and opinions, and (ii) Ms. Verkhovskaya's report is untimely under this Court's scheduling order which set September 29, 2017, as the close of expert discovery. (Dkt. No. 58.) CSB argues that it was prejudiced by the late disclosure because "CSB cannot address Plaintiffs' new analysis without modifying the current scheduling order." *See Allen v. Similasan Corp*., 306 F.R.D. 635, 641 (S.D. Cal. 2015). Defendant further argues that an order allowing for defendant to depose Ms. Verkhovskaya cannot alleviate the prejudice because class certification has already been briefed and is set for hearing.

Defendant does not persuade. Regarding the first argument, the Court finds that defendant had notice that plaintiffs intended to rely on the methodology employed by Ms. Verkhovskaya. Specifically, plaintiffs' TCPA expert Jeffrey Hansen submitted a timely expert declaration which described the methodology and tasks which could be used to identify class members in this case. (Kopel Reply Decl. Ex. 17 ¶¶ 58, 59.) Defendant took Mr. Hansen's deposition and examined him

Verkhovskaya then uploaded a random sample of 9,461 such phone numbers to LexisNexis' reverse lookup service and calculated that 968 telephone numbers (*i.e.*, greater than 10% of the sample) did not match the intended recipients listed in CSB's databases. (*Id*. ¶¶ 11–12.)[12] The Court notes that if the 10% wrong number rate identified by Ms. Verkhovskaya is representative of CSB's call log database as a whole then the punitive class would contain more than 63,500

---

regarding this methodology. Ms. Verkhovskaya then implemented the exact same methodology set forth in Mr. Hanson's report. (Verkhovskaya Rpt. ¶ 7 (compiling list of calls and excluding "records that did not receive at least two calls"); ¶ 11 (identifying cellular numbers during the relevant time period); ¶ 10 (uploading files to reverse lookup service to determine "customary users for the given timeframe"); and ¶ 11 (comparing users identified from the reverse lookup service with account holders listed in Defendant's records).

Defendant's second argument based on plaintiffs' failure to file Ms. Verkhovskaya's report before the close of expert discovery fails because expert testimony is not necessary to perform the type of tabulation which Ms. Verkhovskaya conducted. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583, at *5 (N.D. Cal. 2017) (expert testimony not required for spreadsheet deduplication and aggregation); *Villanueva v. Liberty Acquisitions Svc., LLC*, 2017 WL 1021523, at *4 (D. Or. 2017) (relying on data analysis conducted by attorney and attorney's staff to establish numerosity and noting that "[d]istrict courts in the Ninth Circuit have relied on similar evidence as adequate"); *Kristensen v. Credit Payment Svcs.*, 12 F. Supp. 1292, 1304 (D. Nev. 2014). Defendant's attempt to distinguish these cases does not persuade.

Further, defendant's assertion that Ms. Verkhovskaya's report constitutes expert testimony because (i) she "frequently provides expert reports in TCPA class actions" and (ii) this Court characterized Ms. Verkhovskaya's report in *Abante Rooter & Plumbing, Inc., v. Alarm.com*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *5 (N.D. Cal. 20017), as expert testimony fails as well. The mere fact that Ms. Verkhovskaya has provided expert reports in other TCPA class actions including *Abante* does not establish that her analysis here constitutes expert testimony.

Next, defendant argues that Ms. Verkhovskaya's report constitutes expert testimony because she used LexisNesis to perform a reverse lookup analysis. However, defendant offers no support for the proposition that use of LexisNesis's reverse lookup analysis requires expert testimony.

Finally, defendant's reliance on *Allen v. Similasan Corp.*, 206 F.R.D. 635 (S.D. Cal. 2015), fails because *Allen* is distinguishable. There, the Court found prejudice and struck plaintiffs' expert declaration based on plaintiffs' failure to disclose a "novel damages model" which led defendants to "reasonably surmise that Plaintiffs chose not to proceed on such a theory." *Id*. at 641. By contrast, as noted the methodological model which Verkhovskaya's employed here was disclosed by plaintiffs through the expert report of Mr. Hansen. Accordingly, it cannot be said that defendant "reasonably surmise[d] that Plaintiffs chose not to proceed on" a numerosity theory based on the methodology described by Mr. Hansen and employed Ms. Verkhovskaya. With respect to the limited prejudice identified, the Court's scheduling order will address it.

[12] The 10% wrong number rate which Ms. Verkhovskaya identified is further supported by the testimony of CSB's 30(b)(6) witness who agreed that it was "very common" for CSB to call "someone who indicates that we have a wrong number." (Amyot Dep. at 25:13-19, 143:7-16.)

11

members. Even if Ms. Verkhovskaya's calculations overstate the actual wrong number rate by a factor of one thousand, the punitive class would still contain more than sixty members which gives rise to a "presumption of impracticability [of joinder] based on numbers alone."[13] *Hernandez*, 305 F.R.D. at 152–53. Accordingly, applying "common sense" assumptions[14] and reasonable inferences, the Court finds that plaintiffs have satisfied the numerosity requirement. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004).

### 3. *Typicality*

To satisfy typicality, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted).

Defendant challenges typicality only as to West.[15] CSB's argument hinges on the fact that West's claim is not typical of the proposed class because it is possible she "authorized her son to

---

[13] (635,096 unique phone numbers) * (.01% wrong number rate) = 63 punitive class members.

[14] Plaintiffs further argue that circumstantial evidence supports numerosity, namely (i) cell phone number turnover rates in the debt collection field, and (ii) defendant's lack of precautions to avoid calling wrong numbers. With regard to the turnover rate for cell phone numbers, defendant agrees that cell phone turnover is high in the debt collection space because individuals often switch numbers to avoid debt collectors. (Opposition at 20.) The Court finds that it is reasonable to assume that higher rates of cell phone turnover result in higher rates of wrong number calls.
Second, CSB's 30(b)(6) witnesses conceded that CSB has no procedures for determining whether the phone numbers which CSB calls are "truly associated" with the intended recipient." (Amyot Dep. at 59:12-24.) The Court finds that defendant's lack of procedures for determining whether a call is made to an intended recipient gives rise to a reasonable assumption that the wrong number rate is greater than the .01% necessary to establish a "presumption of impracticability [of joinder] based on numbers alone." *Hernandez*, 305 F.R.D. at 152–53.

[15] CSB does not challenge adequacy as to Membreno, and the Court finds that plaintiffs have made a showing for purposes of Rule 23(a) that Membreno is a typical representative.

12

use her [cell phone] number and therefore consented to the phone calls to that number." (Opposition at 17.) However, defendant overlooks the fact that West testified during her deposition that that (i) the cell phone number in question was never the number for her son, and (ii) she never authorized her son to use or provide that number as an emergency contact. (Dkt. No. 56, Reply Declaration of Yitzhak Kopel ("Kopel Reply Decl."), Ex. 3, Deposition of Sandra West ("West Dep.) at 11:4-22.)[16] Therefore, the Court finds defendant's argument "speculative" and insufficient to defeat typicality. *Erickson v. Elliot Bay Adjustment Co., Inc.,* 2017 WL 1179435, at *9 (W.D. Wash. 2017). Accordingly, the Court finds that plaintiffs have satisfied the adequacy requirement under Rule 23(a)(4) with regard to West and Membreno.

### *4. Adequacy*

Rule 23(a)'s adequacy requirement considers "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).

Defendant challenges adequacy only as to West.[17] Plaintiffs have made a sufficient showing for purposes of Rule 23(a) that West and her counsel are adequate representatives.[18]

---

[16] Defendant argues that paragraph 16 of Mr. Kopel's reply declaration should be excluded because he "misstates the difficulty of analyzing the call data produced in this case." (Dkt. No. 58 at 6.) Specifically, Mr. Kopel states that "[a]nyone with a cursory knowledge of Microsoft Excel can visit the referenced cell numbers and see records of the calls Defendant made." (Kopel Reply Decl. ¶ 16.) According to CSB, the reply declaration is either "improper expert opinion" or "lay opinion that should be excluded under Fed. R. Evid. 701 because it requires specialized knowledge." (*Id*.) Defendant does not persuade, as the Court finds that no specialized knowledge is necessary to testify regarding the general contents of defendants' call records which defendants produced in discovery. *See Kristensen*, 12 F. Supp. 3d at 1304; *Villanueva v. Liberty Acquisitions Servicing, LLC*, 2017 WL 1021523, at *4 (D. Or. 2017) (relying on data analysis conducted by attorney and attorney's staff to establish numerosity).

[17] Defendant does not challenge adequacy as to Membreno, and the Court finds that plaintiffs have made a showing for purposes of Rule 23(a) that Membreno is a adequate representative.

[18] CSB argues that West is not an adequate representative because "West is possibly someone called with consent, or otherwise lacks Article III standing" and thus "it is possible she may not be a member of the class." Defendants' argument is more aptly addressed as one of typicality, not adequacy.

13

Specifically: The record before the Court indicates that plaintiff West has been an active participant in the litigation. Additionally, plaintiffs' counsel, Bursor & Fisher, P.A., have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously. Defendant raises no arguments to the contrary.

Accordingly, the Court finds that plaintiffs have satisfied the adequacy requirement under Rule 23(a)(4) with regard to West and her counsel.

### 5. *Superiority*

Lastly, the Court may certify a class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996).

Defendant argues that plaintiffs' claims lack superiority due to the difficulties in managing the class action. Specifically, defendant asserts that plaintiffs lack a comprehensive list of call recipients who did not consent and that putative class members cannot be identified using the Global Connect call records due to the "frequency of cell phone turnover."[19] (Opposition at 20.) Such manageability concerns are alone insufficient to defeat superiority of the proposed classes here. The Ninth Circuit has specifically noted that it was not clear why "requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect [defendant's] due process rights." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132

---

[19] Defendant's argument with regard to cell phone turnover does not persuade in light of plaintiffs' proposed reverse lookup methodology. *See* Section III.A.1, *supra*.

14

(9th Cir. 2017). The *Briseno* Court further explained that defendants can "challenge the claims of absent class members if and when they file claims for damages" explaining that parties have "long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims." *Id.* at 1131 (citation omitted).

Defendant's reliance on *Smith v Microsoft Crop.,* 297 F.R.D. 464, 473 (S.D. Cal. 2014), does not persuade. Contrary to the court's finding in *Smith*, this Court finds that the statutory damages provided by the TCPA are not in fact "sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wa. 2012) (citing cases); *see also Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145, 2014 WL 5454398, at *7 (S.D. Cal. 2014) (finding that given the damages allowed under the TCPA, "requiring the putative class members to adjudicate their claims independently would be too economically burdensome and would deprive many of a chance to recover under the law"). In light of these considerations, the Court finds that a class action is superior to individual adjudication.[20]

### B. Rule 23(b)(2) Injunctive Relief Class

Rule 23(b)(2) allows a Court to certify a class when the requirements of Rule 23(a) are satisfied and the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting that class as a whole." Fed. R. Civ. P. 23(b)(2). District courts may certify both a 23(b)(2) class for the portion of the case concerning injunctive and declaratory relief and a 23(b)(3) class for the portion of the case requesting monetary damages. *See* Newberg on Class Actions § 4:38 (5th ed. 2017); *see, e.g.*, *Barrett v. Wesley Fin. Grp., LLC*, No. No. 13-CV-554-LAB, 2015 WL 12910740, at *6–7 (S.D. Cal. Mar. 30, 2015) (certifying both classes in the context of the TCPA); *Kavu*, 246 F.R.D. at 649 (same). However, "[c]lass certification under Rule 23(b)(2) is appropriate only where the

---

[20] Defendants further argue that subpoenaing cell phone service providers is not a viable mechanism for identifying class members. However, it does not appear that plaintiffs ever proposed such a mechanism.

15

primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986 (citation omitted). "Although the Ninth Circuit previously held that, in Rule 23(b)(2) cases, monetary damage requests were generally allowable if they were incidental to the litigation, the Supreme Court has called this standard into doubt." *Barrett*, 2015 WL 12910740, at *6 (citing *Wal-Mart*, 131 S. Ct. at 2560).

Here, the large amount of potential liability undermines the proposition that declaratory or injunctive relief is primary to plaintiffs' action. However, in cases "where a plaintiff seeks both declaratory and monetary relief, [courts] may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." *Barrett*, 2015 WL 12910740, at *7 (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)). The Court finds that certifying the classes here as both damages-seeking classes under Rule 23(b)(3) and injunctive relief only classes under Rule 23(b)(2) is appropriate and promotes judicial efficiency. In the event that plaintiffs are able to demonstrate liability under the TCPA, but ultimately fail to establish classwide damages, the Court may still enter an injunction against defendant.

Accordingly, the Court finds that plaintiffs have satisfied the requirements for certification under Rule 23(b)(2).

**IV. CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification under both Rule 23(b)(2) and Rule 23(b)(3) is **GRANTED**. The Court, therefore, **CERTIFIES** the following class with West and Membreno as the class representative, both for injunctive relief pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3):

> **Cell Phone Class:** All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone through the use of any automatic telephone dialing system or an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the calls.[21]

---

[21] Excluded from the classes are certain entities related to defendant, defendant's agents and employees, and any judge or magistrate judge to whom this action is assigned, their staff, and immediate families.

16

The Court further **APPOINTS** plaintiffs' counsel, Bursor & Fisher, P.A., and Martin & Bontrager, APC, as class counsel. A schedule will issue under a separate order.

This Order terminates Docket Numbers 50, 51, and 55.

**IT IS SO ORDERED.**

Dated: December 11, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**