**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
          ykopel@bursor.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960
Los Angeles, California 90028
Telephone: (323) 940-1700
Facsimile: (323) 238-8095
E-Mail: tom@mblawapc.com
          nick@mblawapc.com

*Class Counsel*

*[additional counsel for Class listed on signature page]*

**CARLSON & MESSER LLP**
Charles R. Messer (SBN 101094)
messerc@cmtlaw.com
David J. Kaminski (SBN 128509)
kaminskid@cmtlaw.com
Stephen A. Watkins (SBN 205175)
watkinss@cmtlaw.com
5901 W. Century Boulevard, Suite 1200
Los Angeles, California 90045
Telephone: (310) 242-2200
Facsimile: (310) 242-2222
Attorneys for Defendant,
CALIFORNIA SERVICE BUREAU, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WEST and HECTOR MEMBRENO, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA SERVICE BUREAU, INC.<br><br>Defendant. | Case No. 4:16-cv-03124-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**JOINT FINAL PRETRIAL CONFERENCE STATEMENT**<br><br>Date: April 4, 2018<br>Time: 2:00 p.m.<br>Courtroom: 1 |

1

## I.   THE ACTION

### A.   SUBSTANCE OF THE ACTION

#### 1.   <u>Agreed Statement</u>

This is a class action in which Plaintiffs allege that Defendant California Service Bureau, Inc. ("CSB" or "Defendant") called consumers using an automatic telephone dialing system without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. sections 227 et seq. (the "TCPA").  The Plaintiff class representatives are Sandra West and Hector Membreno. The class is defined as follows:

> **Cell Phone Wrong Number Class:** All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone through the use of any automatic telephone dialing system or an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the calls.

Order Granting Pls.' Mot. For Class Certification (Dec. 11, 2017) (ECF No. 68).

#### 2.   <u>Plaintiffs' Statement Of Elements Of Proof</u>

Plaintiffs assert a single claim against CSB for violation of the TCPA.  "The elements for a TCPA claim are that (1) a 'call' was made; (2) using an ATDS; (3) the number called was assigned to a cellular telephone service; and (4) the 'call' was not made with the 'prior express consent' of the receiving party." *Pimental v. Google, Inc.* 2012 WL 1458179, at *2 n.2 (N.D. Cal. Apr. 26, 2012) (Gonzalez Rogers, J.) (citing 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)). Notably however, although "prior express consent" is often referred to as an "element" of a TCPA claim, "express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *3 n.3 (N.D. Cal. Feb. 2, 2015) (Gonzalez Rogers, J.) (quoting *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011)).  Plaintiffs will use the following evidence to prove each of these claims:

**A call was made:**  CSB produced logs of the 32.7 million calls it made using the Global Connect GC-1 Peak dialer (the "Global Connect dialer") during the class period (the "Call Logs"). Plaintiffs will introduce summaries of these call logs into evidence with their telecommunications expert witness, Jeffrey Hansen, and their Fed. R. Civ. P. 1006 summary witness, Anya Verkhovskaya, as the supporting witnesses.  Plaintiffs will also introduce logs of calls CSB made to Ms. West and Mr. Membreno using the Global Connect dialer during the class period, with CSB's corporate representative, Brandon Amyot, as the supporting witness.  Ms. West and Mr. Membreno will also testify as to their personal experiences receiving autodialed calls from CSB.

**Using an ATDS:**  Plaintiffs will present testimony from CSB's corporate representative, Brandon Amyot, proving that CSB used the Global Connect dialer to call class members during the class period.  Mr. Amyot will testify that the Global Connect dialer is a predictive dialer that allowed CSB to dial thousands of numbers in a short period of time.  On February 2, 2018, this Court held that the Global Connect dialer, the same dialer used by CSB to call class members, "constitute[d] [an] ATDS[] within the meaning of the TCPA."  *McMillion v. Rash Curtis & Assocs.*, 2018 WL 692105, at *5 (N.D. Cal. Feb. 2, 2018).  Plaintiffs will also present testimony from Mr. Hansen, who will opine that the Global Connect dialer has the capacity to store or produce numbers to be called, using a random or sequential number generator and to dial such numbers.

**The number called was assigned to a cellular telephone service:**  Plaintiffs' summary witness, Ms. Verkhovskaya, will testify that her searches using the LexisNexis database confirmed that class members' phone numbers were assigned to cellular telephone services at the times the calls were made.

**The call was made without the prior express consent of the receiving party:**  Although consent is an affirmative defense for which CSB bears the burden of proof, Plaintiffs will still present evidence proving that the calls CSB made to class members were wrong-number calls in that CSB intended to call parties other than class members.  It is axiomatic that consent is lacking for such calls, given that the called parties had no preexisting relationship with CSB and obviously did not give consent to be called in connection with other people's debts.  *See, e.g. Manno v.*

*Healthcare Revenue Recovery Corp.*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("Obviously, if the putative class members did not communicate with [the defendant] before [the defendant] called them, there is no way those class members could have provided consent to [the defendant].").
Indeed, even if by some unlikely coincidence, a class member gave consent to be called in connection with a different debt, that would still not qualify as consent to be called for another debt they did not owe. *See Meyer*, 707 F.3d at 1040 ("[P]rior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call is placed.").

Here, Plaintiffs will present testimony from Mr. Hansen that the correct and reliable method for identifying wrong-number calls is to use a reverse lookup service to identify the users for each of the phone numbers from the Call Logs at the times of the calls.  The users identified from the reverse lookup service then must be compared with the account holders listed in the Call Logs.
Discrepancies then indicate that a wrong number was called.

Next, Plaintiffs will present testimony from Ms. Verkhovskaya, who performed this tabulation, to report the results she observed.  Specifically, Ms. Verkhovskaya will testify that her tabulation indicated that CSB called 85,976 unique cellular "wrong numbers" at least two times each.  Finally, Mr. Membreno and Ms. West will testify that they never consented to being called by CSB.[1]

### 3.    Defendant's statement of the elements of proof.

Defendant California Service Bureau, Inc. ("CSB") collects medical debts by contacting persons who are identified in medical records which are provided by CSB's clients.  CSB used a Global Connect telephone system to predictively dial most calls.

Under the TCPA, the Global Connect system is not an ATDS because it does not dial phone numbers which are randomly or sequentially generated.  Today's decision in *ACA International v. Federal Communications Commission* (Document  #1722605, D.C. Cir. 03/16/2018) means that

---

[1] Although CSB below discusses the presentation of evidence to support a purported "good faith" defense, Plaintiffs have submitted a motion *in limine* to preclude this evidence because such a defense is unavailable under the TCPA.  This is discussed in further detail below in the Disputed Legal Issues portion of this statement, in § III.B.

the FCC's 2003, 2008, and 2015 ATDS-Rules, which expanded the definition of an ATDS to include predictive dialers, have been *vacated*.  Based on the July 2017 report by the plaintiffs' expert Jeff Hansen, and without the FCC's ATDS-Rules, the plaintiffs will be unable to sustain their burden of proving that the defendant dialed any calls by using an ATDS.  For that reason, defendant CSB submits that the result of the trial will be a judgment against the class, and in favor of the defendant.

Defendant CSB objects to the opinion of the Plaintiffs' expert Jeff Hansen, that the Global Connect dialer has the capacity to store or produce numbers to be called, using a random or sequential number generator and to dial such numbers.  Those opinions lack foundation and are speculative, and they are the topic of a Motion *in Limine*.  Additionally, Global Connect's Darrin Bird may testify that the Global Connect system lacks the capacity claimed by Mr. Hansen.

Defendant CSB is well-aware that in *McMillion,* this court ruled, on a motion for summary judgment, that the Global Connect system *is* an ATDS within the meaning of the TCPA. *McMillion v. Rash Curtis & Associates, 2018 WL 692105 at *4-5.*  But defendant CSB contends that the FCC's ATDS-Rules which underlie the *McMillion* (and other) ATDS rulings, were vacated in *ACA International v. Federal Communications Commission* (Document #1722605, D.C. Cir. 03/16/2018), pages 23-29.

Defendant CSB contends that the Jury Instruction which defines an ATDS should be the exact language of the TCPA, and that under that legal standard, the Global Connect system is not an ATDS.  *ACA International v. Federal Communications Commission* (Document  #1722605, D.C. Cir. 03/16/2018).

There are also triable issues about whether defendant CSB had consent to call the two telephone numbers in question, and about whether defendant CSB's good-faith-beliefs that it was calling patients who were identified in medical records constitutes a defense under the TCPA.  The witnesses who may testify on these issues are the plaintiffs Sandra West and Hector Membreno, and a patient Maricela R. who provided Mr. Membreno's phone number to her health care provider.  Brandon Amyot, Executive Director of Patient Services for CSB may testify as to CSB's reliance on the information provided from the creditor.

Based on medical records from a health care provider in Mississippi, CSB called a patient, Eddie H., at a -6314 telephone number which he provided as his home telephone number. Plaintiff Sandra West is Eddie H.'s mother, and she testified that the -6314 telephone number belongs to her. She never answered any of the 34 calls which CSB made to -6314, and she testified that she never authorized her son to provide her -6314 number to anyone. When asked whether her son provided the -6314 number so his family would know if something happened to him, she said, "I don't know." Defendant CSB was not notified that -6314 was not Eddie H.'s phone number, until this lawsuit was served.

Based on medical records from a health care provider in northern California, CSB called a patient Maricela R. at a -6203 number which she provided as one of her telephone numbers. Plaintiff Hector Membreno testified that the -6203 number is his, and that he never knew Maricela R. Mr. Membreno never answered any of CSB's 23 calls to -6203, and so CSB was not notified that -6203 was not Maricela R.'s phone number, until this lawsuit was served.

**B.      RELIEF PRAYED**

**1.      Relief Prayed by Plaintiffs**

Plaintiffs seek the following relief:

1.      On account on CSB's violations of the TCPA, Plaintiffs and class members seek "statutory damages in the amount of $500 per violation." *See Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) (Gonzalez Rogers, J.). Here, Plaintiffs will present testimony from Ms. Verkhovskaya who has reported that her analysis of CSB's Call Logs revealed 1,721,176 calls to class members using the Global Connect dialer during the class period. At the statutory floor of $500 per violation under the TCPA, damages total $860,588,000.

2.      Plaintiffs also seek an injunction precluding CSB from calling class members using an ATDS and/or artificial or prerecorded voice. CSB argues below that injunctive relief is inappropriate because it made an unenforceable promise to not call Plaintiffs in the future (though it has said nothing about other class members). That is wrong. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) (citations and quotation marks omitted).

## 2.   Relief Prayed by Defendants

Defendant CSB contends that the Plaintiffs cannot sustain their burden of proving that any calls were made using an ATDS.  For that reason, defendant contends that judgment should be entered against the class, which should bar future TCPA claims against the defendant by operation of law (*res judicata*).

As set forth in Defendant CSB's Motion to Decertify Class, CSB contends that the class should be decertified because, among other reasons, there is no assurance that every class member did not consent to being called and the assertion by Plaintiffs' experts that reverse lookup would identify users, subscribers, and family members associated with the cell phone numbers was wholly inaccurate based on CSB's review of the Plaintiffs' class list.  CSB's review of 2,507 accounts in the class list resulted in a 16 % rate for possible consent.  Indicia of consent included calls successfully made to the debtor during the times Plaintiffs claimed the wrong number was contacted, alias names for the debtors identified as wrong number individuals, and guarantors and family members identified as wrong numbers.  Assuming Plaintiffs' class list of 85,976 names, this extrapolates to 13,649 persons for whom there is initial indicia of possible consent.

CSB's review also identified 22,585 phone numbers on the Class List that were associated with MetroPCS during at least part of the putative class period.  MetroPCS is a prepaid wireless provider such that the subscriber's name will not appear associated with the phone.

Brandon Amyot, Executive Director of Patient Services for CSB may testify as CSB's review of the class list.  Aaron Woolfson, Teleswitch, may testify to how he combined the Global Connect call records and Plaintiffs' class list to aid CSB's review of the class list, and identification of MetroPCS phone numbers.

Awarding TCPA damages to class members who should not prevail deprives defendant CSB of due process.

## II.      THE FACTUAL BASIS OF THE ACTION

### A.      Undisputed Facts

1.      Plaintiffs filed their First Amended Consolidated Class Action Complaint against CSB on December 13, 2016.

2.      CSB is a California corporation with its principal place of business located at 100 Wood Hollow Drive, Suite 200, Novato, CA 94945.

3.      Defendant is an account receivable management company which is in the business of collecting debts on behalf of health-care providers, governmental agencies, and credit bureaus. In other words, CSB is a debt collection agency.

4.      CSB makes it revenue from collecting a percentage of any debt recovered, typically between 10-40 percent of the collected amount.

### CSB's Use of the Global Connect Dialer:

5.      In the course of collecting debts, CSB regularly called consumers using a dialing solution called the Global Connect Peak GC-1 Peak Dialer (the "Global Connect dialer") during the Class Period.

6.      The Global Connect dialer can dial thousands of phone numbers in a short period of time.

7.      The Global Connect dialer can be used to make predictive dialed calls along with delivering pre-recorded messages by automatically calling a list of numbers and playing an audio file.

8.      The Global Connect dialer is a predictive dialer that calls lists of numbers organized as "campaigns" or "pools."

9.      The Global Connect dialer then can automatically dial those numbers and deliver predictive dialed calls or agent-less calls delivering pre-recorded messages.

10.      For predictive dialed calls, the Global Connect dialer will call using multiple telephone lines per agent, and it will use all available telephone lines when making agent-less calls.

11.      During the Class Period, CSB utilized the Global Connect dialer for two types of calling campaigns, namely automated calls where an agent was present and agentless calls.

12.     For the automated calls where an agent was present, CSB agents, or "collection specialists," accessed the Global Connect dialer using the Internet Explorer application on a windows computer.  In these calls, the Global Connect dialer would automatically call the numbers listed in the campaign and transferred these calls to CSB's collection specialists after the called party answered the phone.

13.     When carrying out this type of calling campaign, CSB was able to call thousands of consumers using only three collection specialists in a matter of hours.

14.     With regard to agentless calls, CSB would program the Global Connect dialer to call phone numbers and play a pre-recorded message.

15.     The Global Connect dialer automatically retains logs of all the calls that are made (the "Call Logs").

16.     For each call dialed, the Call Logs show the name of the intended call recipient, the time the account was called the phone number that was called, the length of the call, and the date of the call.

17.     CSB placed 32,809,425 million calls using the Global Connect dialer during the Class period.  The Call Logs include relevant call information for each of these calls.

18.     CSB's corporate representative agreed that it was "very common" for CSB to call "someone who indicates that we have a wrong number."

**CSB's Calls to the Class Representatives:**

19.     Plaintiff Hector Membreno is a resident of California.

20.     Between May 2015 and May 2016, Mr. Membreno received 23 calls on his cell phone from CSB, utilizing the Global Connect dialer:

| Date Call was placed | Time Call Was Placed | Out Come Of The Call |
|---|---|---|
| 5/14/2015 | 9:01 | Message left on machine |
| 6/15/2015 | 14:21 | Message left on machine |
| 6/23/2015 | 13:29 | Called and no answer |
| 6/24/2015 | 13:49 | Called and no answer |
| 6/26/2016 | 14:07 | Called and no answer |
| 8/24/2015 | 10:20 | Message left on machine |
| 8/25/2015 | 10:11 | Answer Live message left |
| 9/16/2015 | 13:30 | Message left on machine |
| 9/30/2015 | 14:36 | Answer Live message left |

| | | |
|---|---|---|
| 10/5/2015 | 11:00 | Answer Live message left |
| 10/15/2015 | 14:27 | Answer Live message left |
| 10/22/2015 | 11:31 | Answer Live message left |
| 11/11/2015 | 13:25 | Answer Live message left |
| 12/16/2015 | 11:14 | Answer Live message left |
| 12/20/2015 | 16:16 | Answer Live message left |
| 12/28/2015 | 14:21 | Answer Live message left |
| 1/18/2016 | 10:17 | Answer Live message left |
| 1/28/2016 | 19:09 | Answer Live message left |
| 2/16/2016 | 8:53 | Answer Live message left |
| 2/18/2016 | 14:43 | Answer Live message left |
| 2/20/2016 | 9:28 | Answer Live message left |
| 3/10/2016 | 13:26 | Answer live message left |
| 3/14/2016 | 10:44 | Answer Live message left |

21.     Several of these calls utilized a prerecorded voice, and all of them were placed using predictive dialing.

22.     CSB's records indicate that it was attempting to reach an individual named Maricela R. when it placed these calls to a phone number ending with the digits "6213."

23.     Plaintiff Sandra West is a resident of Mississippi.

24.     Between September 2015 and February 2016, Ms. West received 34 calls on her cell phone from CSB, utilizing the Global Connect Dialer:

| Date | Result |
|---|---|
| 9/18/2015 10:34 | busy |
| 9/24/2015 13:50 | busy |
| 9/26/2015 9:45 | busy |
| 9/29/2015 7:07 | busy |
| 9/29/2015 8:21 | busy |
| 9/29/2015 8:55 | busy |
| 10/13/2015 8:42 | answered |
| 10/15/2015 8:25 | machine |
| 10/21/2015 9:59 | machine |
| 10/26/2015 9:27 | machine |
| 10/26/2015 10:00 | answered |
| 10/29/2015 11:08 | answered |
| 11/3/2015 7:45 | answered |
| 11/5/2015 9:08 | answered |
| 11/10/2015 14:38 | machine |
| 11/20/2015 14:34 | answered |
| 11/29/2015 10:12 | machine |
| 11/29/2015 10:55 | machine |
| 11/29/2015 13:27 | machine |
| 12/9/2015 14:00 | busy |
| 12/11/2015 12:03 | machine |
| 12/17/2015 12:50 | machine |

| | |
|---|---|
| 12/17/2015 15:24 | machine |
| 12/20/2015 15:57 | machine |
| 12/24/2015 6:46 | machine |
| 12/30/2015 10:40 | machine |
| 1/9/2016 10:43 | machine |
| 1/11/2016 12:44 | machine |
| 1/14/2016 17:56 | machine |
| 1/21/2016 8:36 | answered |
| 1/26/2016 13:48 | answered |
| 1/30/2016 9:40 | answered |
| 2/10/2016 12:04 | answered |
| 2/20/2016 8:36 | answered |

25.     Several of these calls utilized a prerecorded voice, and all of them were placed using predictive dialing.

26.     Ms. West received these calls on her cell phone bearing a phone number ending with the digits "6314."

27.     CSB's records indicate that it was attempting to reach an individual named Eddie R. H. when it placed these calls to Ms. West's phone.

**B.     Disputed Factual Issues**

      **1.     <u>Plaintiffs' List of Disputed Factual Issues</u>**

1.     Whether CSB called 635,096 unique telephone numbers at least two times each using the Global Connect dialer during the class period.

2.     Whether CSB called 132,895 wrong numbers at least two times each using the Global Connect dialer during the class period.

3.     Whether CSB called 85,976 cellular wrong numbers at least two times each using the Global Connect dialer during the class period.

4.     Whether CSB made 1,721,176 calls to cellular wrong numbers which were called at least two times using the Global Connect dialer during the class period (an average of 20 calls per class member).

5.     Whether Mr. Membreno received calls from CSB on his cell phone bearing a phone number ending with the digits "6213."

6.     Whether Mr. Membreno told CSB to stop calling him, but the calls persisted.

7.     Whether Mr. Membreno provided his phone number to CSB.

8.      Whether Mr. Membreno provided CSB with consent to call him.

9.      Whether Mr. Membreno was the sole subscriber and user of this cell phone and telephone number during the period of May 2015 to May 2016, and whether he had exclusive control of the cell phone during this time period.

10.      Whether Ms. West was the sole subscriber and user of this cell phone and telephone number during the period of September 2015 to February 2016, and whether she had exclusive control of the cell phone during this time period.

11.      Whether Ms. West provided her phone number to CSB.

12.      Whether Ms. West provided CSB with consent to call her.

13.      Whether Ms. West told CSB to stop calling her, and if so, when.

### 2.      CSB's List of Additional Disputed Factual Issues:

14.      Whether the Global Connect system is an ATDS.

15.      Whether statements by Ms. West's son, Eddie H., to his health-care-provider that -6314 was his home phone number, provided consent for CSB to call -6314, or is otherwise a defense to Ms. West's TCPA claims.

16.      Whether Mr. Membreno knew Maricela R., or authorized her to consent to calls on his behalf.

17.      Whether Ms. West's son Eddie H. provided consent to call -6213.

18.      Whether there is any foundation for the opinion of Plaintiffs' expert that, "the (Global Connect dialer used by defendant CSB) has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers." Hansen report, ECF no. 51 at para. 25.

### C.      Agreed Statement

The parties agree that the above Undisputed Facts may be presented to the jury in order to streamline the presentation of evidence at trial.

### D.      Stipulations

1.      The parties stipulate to the authenticity of any document produced by a party in this case.  This stipulation shall not be deemed or interpreted to be a stipulation that any document is

1    admissible in evidence.

2        2.    The parties stipulate that copies of documents may be used at trial in lieu of

3    originals and shall not be deemed inadmissible solely on the basis that they are copies.

4        3.    The parties stipulate that venue is proper in this Court.

5        4.    The parties stipulate that this Court has personal jurisdiction over the parties for

6    purposes of this action.

7        5.    The parties stipulate that neither will object to the presence of their respective expert

8    and summary witnesses' presence in the courtroom during trial.

9        6.    The parties stipulate that they may call witnesses out of order (including Plaintiffs

10   calling witnesses during CSB's direct case and vice versa) if necessary to accommodate third-party

11   witness's schedules.

12       7.    The parties stipulate that CSB will not examine Plaintiffs' expert witness, Jeffrey

13   Hansen, on withdrawn portions of his expert report.

14   **III.    DISPUTED LEGAL ISSUES**

15       **A.    Definition of Autodialer**

16   **Plaintiffs' Portion:**

17       Below, CSB argues that Plaintiffs cannot show that the Global Connect dialer is an ATDS

18   as a result of the D.C. Circuit's recent decision in *ACA Int'l*.  That is wrong.  As the Ninth Circuit

19   has instructed:

20             When evaluating the issue of whether equipment is an ATDS, the
21             statute's clear language mandates that the focus must be on whether
             the equipment has the *capacity* "to store or produce telephone
22             numbers to be called, using a random or sequential number
             generator." Accordingly, a system need not actually store, produce,
23             or call randomly or sequentially generated telephone numbers, it
             need only have the capacity to do it.
24

25   *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original).

26   Here, Plaintiffs' expert, Jeffrey Hansen, has testified in no uncertain terms that the Global Connect

27   "dialer has the capacity to store or produce numbers to be called, using a random or sequential

28   number generator, and the capacity to call such numbers."  Hansen Report ¶ 25.  It is also obvious

that the equipment used by CSB had the requisite *capacity* to store, produce, or call randomly or sequentially generated telephone numbers, given that it was accessed via a windows computer. Mr. Hansen has testified that "all computers can generate random or sequential numbers" and explained that a one-line command on Windows computers will instantly generate a list. *Id.* ¶ 35 ("Typing 'for /L I in (248000,1,248999) do @echo 619%i >> sequential_numbers_to_call.txt' generates the same list on a Windows computer.").

Moreover, although the D.C. Circuit vacated the FCC's interpretations regarding the definition of an ADTS, that does not mean that predictive dialers, like the Global Connect dialer, are exempt. To the contrary – "the statutory definition is explicit that the autodialing equipment may have the capacity to store *or* to produce the randomly or sequentially generated numbers to be dialed." *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x 369, 372 n.1 (3d Cir. 2015) (emphasis in original). Thus, inasmuch as a predictive dialer has the capacity to *store* random or sequentially generated numbers, it need not even have the ability to make calls in that manner. *See id.* at 372 ("[W]e agree with the District Court's definition of 'random or sequential' number generation (*i.e.* the phrase refers to the numbers themselves rather than the manner in which they are dialed"); *See, e.g., Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Penn. 2014) (finding that a predictive dialer was an ATDS as a matter of law where "Defendant's system cannot in its current state randomly or sequentially generate telephone numbers. But, the system has the capacity to store and dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically designed to receive such a list."); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1140 (S.D. Cal. 2014) ("Ultimately, it is unnecessary to rely on the FCC guidance on predictive dialers to reach the result arrived at in this case.").

Finally, CSB below argues that the FCC's definition of an autodialer is being challenged in *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (9th Cir. 2016). But as the Court noted in *McMillion*, "the mere deferral of a case does not displace the existing law on the issue of whether predictive dialers constitute ATDSs." 2018 WL 692105, at *5.

1    **CSB's Portion:**

2         Defendant CSB contends that under today's decision in *ACA International v. Federal*

3    *Communications Commission* (Document #1722605, D.C. Cir. 03/16/2018), the Plaintiffs cannot

4    sustain their burden of proving that the Global Connect system was an ATDS at any relevant time.

5         The cases cited by the Plaintiffs (*Satterfield, Dominguez, Sherman, and Morse*) are

6    inapposite because, among other reasons, they failed to consider the court's insight in *ACA*

7    *International*:  "It is untenable to construe the term `capacity' in the statutory definition of an

8    ATDS in a manner that brings within the definition's fold the most ubiquitous type of phone

9    equipment known, used countless times each day for routine communications by the vast majority

10   of people in the country.  It cannot be the case that every uninvited communication from a

11   smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if

12   not a violator-in-fact."  *ACA International, supra,* at 17.

13        The expansion of TCPA liability to any device that uses a computer was rejected in *Marks*

14   *v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014).  The comments of the

15   Court in *Marks* prior to *ACA International* seem prescient now.  It based its analysis on the

16   statutory language of an ATDS, per *Satterfield.  Id.* at 1288.  More importantly, the Court agreed

17   with the Court in *Gragg v. Orange Cab Co.*, 995 F.Supp.2d 1189, 1193 (W.D.Wash.2014), that

18   focusing on potential capacity would encompass many modern devices and ***potentially subject all***

19   ***smartphone and computer users to the TCPA, which would be an*** *"**absurd result**.*"  *Id.* (emphasis

20   added).  "Because these modern-day devices are easily programmable, anyone who uses a

21   computer or smartphone would be subject to the TCPA."  *Id.*  (*citing Gragg, supra*).  Refusing to

22   apply such a broad construction of an ATDS, the Court in *Marks* held, "It seems unlikely that

23   Congress intended to subject such a wide swath of the population to a law designed to combat

24   unwanted and excessive telemarketing." *Id.*

25        *Marks* is currently on appeal, and "[t]he Ninth Circuit has found the D.C. Circuit's ruling in

26   ACA International to be of sufficient significance to warrant a stay in a case presently pending

27   before the Ninth Circuit [*Marks v. San Diego Crunch, LLC*, Appellate Case No. 14-56834]."

28

1  *Bowden v. Contract Callers, Inc.*, No. 16-CV-06171-MMC, 2017 WL 1732017 at *2 n.4 (N.D.

2  Cal. Apr. 5, 2017).

3  Finally, CSB asserts that to "make any call" under the TCPA means "that the equipment

4  must, in fact, be used as an autodialer to make the calls" before a TCPA violation can be found.

5  Comm'r O'Rielly Dissent to 2015 Declaratory Ruling, 2015 WL 3819270, at *11.

6  For those reasons, the Jury Instruction which defines an ATDS should be based on the exact

7  statutory language of the TCPA, and not on the FCC's invalid ATDS-rules.

8  **B.    Availability of "Good Faith" Defense**

9  **Plaintiffs' Statement:**

10  As noted in Plaintiffs' motion *in limine*, the TCPA is a strict liability statute, and there is no

11  such thing as a "good faith" defense.  *See Alea London, Ltd. v. American Home Servs., Inc.*, 638

12  F.3d 768, 766 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute"); *Universal*

13  *Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n. 3 (8th Cir. 2005)

14  ("The [TCPA] ... makes no exception for senders who mistakenly believe that recipients'

15  permission or invitation existed.").  In *Arbantes v. Northland Grp., Inc.*, 2015 WL 1738255, at *1,

16  *3 (N.D. Cal. Apr. 13, 2015) (Gonzalez Rogers, J.), this Court expressly declined to recognize "a

17  good faith exception from TCPA for autodialed … calls to telephone numbers that have been

18  reassigned," where "consent was given by the 'intended recipient' of the call" because:

19  > While the Ninth Circuit has not directly addressed the definition of
20  > "called party" under section 227(b)(1)(A), district courts in this
21  > circuit have generally rejected the "intended recipient" definition.
22  > *See Olney v. Progressive Cas. Ins. Co.,* No. 13–cv–02058, 2014 WL
23  > 294498, at *3 (S.D. Cal. Jan. 24, 2014); *Jordan v. Nationstar
24  > Mortgage LLC,* No. 14–CV–00787–WHO, 2014 WL 5359000, at
25  > *12 (N.D. Cal. Oct. 20, 2014) (describing a brief history of how the
26  > federal courts have interpreted the term "called party" to conclude
27  > that continuing a stay would unnecessarily delay the case).  Likewise,
28  > the Courts of Appeal in the Seventh and Eleventh Circuits have held
   > that "called party" means current subscriber, not "intended
   > recipient."  *See Soppet v. Enhanced Recovery Company., LLC,* 679
   > F.3d 637, 643 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.,*
   > No. 13–cv–10951, 2014 WL 1258023, at *7 (11th Cir. 2014).

1   *See also McMillion*, 2018 WL 692105, at *5 (same).  Although the *ACA Int'l* case recently vacated

2   an FCC Order on this point based on the ambiguity of the FCC's positions, that is immaterial.  This

3   Court has never relied on the FCC's interpretation of the term called party, but rather on case law

4   and the text of the TCPA.  *See id.* ("Nothing about the interpretation of this statutory term appears

5   to require any special expertise.  The fact that numerous courts have interpreted the term 'called

6   party' weighs against a stay.").

7   **CSB's Portion:**

8         Defendant asserts that many of the calls at issue, including the calls to the Plaintiffs, were

9   made with a good faith belief, based on medical records, and other information provided by the

10   creditor, that it had consent to call those phone numbers.  *See Chyba v. First Financial Asset*

11   *Mgmt.*, 2014 WL 1744136 *12 (S.D.Ca. April 30, 2014) ("Even if Plaintiff is correct in stating that

12   she never gave Defendant or Enterprise consent to call, and there was no actual prior consent from

13   Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it.");

14   *Danehy v. Time Warner Cable Enter. LLC*, No. 5:14-CV-133-FL, 2015 WL 5534285, at *3

15   (E.D.N.C. Sept. 18, 2015) (adopting magistrate's grant of summary judgment based on good faith

16   defense). *Miller v. Directv LLC*, No. CV 14-07579 DMG (EX), 2015 WL 12656912, at *2 (C.D.

17   Cal. Jan. 8, 2015) (noting "the Ninth Circuit has not determined the meaning of "called party").

18         Defendant is well-aware that in *McMillion*, this court was unpersuaded by the defendant's

19   argument that unintended recipients of calls (such as Sandra West and Hector Membreno in this

20   case) are not "called parties" under the TCPA.  *McMillion v. Rash Curtis & Associates, 2018 WL*

21   *692105 at *5.*  But the defendant contends that the question of whether it had a good faith belief

22   that it had consent to call -6213 or -6314 are questions of fact for the jury, and that factual findings

23   of good faith would justify a defense verdict.  *Chyba, supra*, and *Danehy, supra*.

24         Defendant CSB also contends that its contentions about the viability of a TCPA-Good-Faith

25   defense was materially bolstered by today's decision in *ACA International v. Federal*

26   *Communications Commission* (Document #1722605, D.C. Cir. 03/16/2018), at pages 32-35.

27

28

## IV.  FURTHER DISCOVERY OR MOTIONS

All discovery has been completed.  CSB filed a motion for to decertify the class on March 6, 2018.  Pursuant to the Court's pretrial standing order, the parties exchanged motions *in limine* on March 7, 2018.

## V.  ESTIMATE OF TRIAL TIME

Plaintiffs estimate that their direct case will take two trial days.  CSB estimates that its direct case will take one trial day.

## VI.  LIST OF MOTIONS *IN LIMINE*

Plaintiffs have served CSB with a motion *in limine* to preclude CSB from presenting evidence of consent from third parties who are not class members.

CSB has served Plaintiffs with motions *in limine* to preclude to testimony by Jeffrey Hansen and Anya Verkhovskaya.

## VII.  JUROR QUESTIONNAIRE

The parties intend to file proposed additional questions for jury selection in accordance with Item 3.h of the Court's pretrial standing order.

## VIII.  SETTLEMENT DISCUSSIONS

On December 6, 2017, the parties attended a mediation with Jill Sperber at Judicate West in Los Angeles.  The parties have held repeated phone calls regarding settlement since that time.

These repeated attempts have failed.  The parties do not believe a settlement is likely at this time.

## IX.  CONSENT TO TRIAL BEFORE A MAGISTRATE JUDGE

The parties do not consent to trial before a magistrate judge.

## X.  AMENDMENTS, DISMISSALS

The parties do not request any amendments or dismissals at this time.

## XI.  BIFURCATION, SEPARATE TRIAL OF ISSUES

The parties agree that bifurcation is neither feasible nor desirable in this case.

Dated:  March 16, 2018

**BURSOR & FISHER, P.A.**

By:  ___/s/ Scott A. Bursor___
          Scott A. Bursor

Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
       ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:  ltfisher@bursor.com
       ykrivoshey@bursor.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960
Los Angeles, California 90028
Telephone:  (323) 940-1700
Facsimile: (323) 238-8095
E-Mail:  tom@mblawapc.com
       nick@mblawapc.com

*Class Counsel*

Dated: March 16, 2018

**CARLSON & MESSER LLP**

By:___/s/ Charles R. Messer___
Charles R. Messer
David J. Kaminski
Stephen A. Watkins
Attorneys for Defendant,
CALIFORNIA SERVICE BUREAU, INC.