1  Charles R. Messer (SBN 101094)
   messerc@cmtlaw.com
2  David J. Kaminski (SBN 128509)
   kaminskid@cmtlaw.com
3  Stephen A. Watkins (SBN 205175)
   watkinss@cmtlaw.com
4  CARLSON & MESSER LLP
   5901 W. Century Boulevard, Suite 1200
5  Los Angeles, California 90045
   (310) 242-2200 Telephone
6
7  Attorneys for Defendant
   *CALIFORNIA SERVICE BUREAU, INC.*

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  SANDRA WEST and HECTOR            )  Case no. 4:16-cv-03124-YGR
    MEMBRENO, individually and on     )
13  behalf of all others similarly situated, )  **CLASS ACTION**
                                       )
14                    Plaintiffs,      )  **DEFENDANT'S BRIEF RE IMPACT**
                                       )  **OF** *ACA INTERNATIONAL*
15           vs.                       )
                                       )  Judge: Hon. Yvonne Gonzalez Rogers
16                                     )
    CALIFORNIA SERVICE BUREAU,         )
17  INC.,                              )
                                       )
18                    Defendant.       )
                                       )
19  _____)

20

21  TO THE HONORABLE COURT, AND ALL PARTIES OF RECORD:

22          Pursuant to the Court's March 20, 2018, Order, Dkt No. 84, Defendant

23  California Service Bureau, Inc. hereby submits its brief regarding the impact of

24  the D.C. Circuit's ruling in *ACA International v. Federal Communications*

25  *Commission*, 2018 WL 1352922 (D.C. Cir. 2018).

26

27

28

{00086828;1}                          1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     <u>INTRODUCTION</u>

The Court's December 11, 2017 Order certified the following "wrong number" class in this Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") class action:

> Cell Phone Wrong Number Class: All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its ***Global Connect dialer*** to said person's cellular telephone through the use of any ***automatic telephone dialing system or an artificial or prerecorded voice***, where such person was not listed in Defendant's records as the intended recipient of the calls.

Order at 1 (emphasis added).

In the March 16, 2018 Joint Final Pretrial Conference Statement, the Plaintiffs state that use of an automatic telephone dialing system ("ATDS") is an element of proof as to all of their TCPA claims.  On March 6, 2018, CSB filed a Motion to Decertify Plaintiffs' class, primarily on the grounds that it found significant indicia of potential consent for approximately 16 percent of the class, based on an analysis of an initial sample of calls.

On March 16, 2018, the D.C. Circuit decided *ACA International v. FCC*, No. 15-1211, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018).  The Court's Ruling in *ACA International* changed the law governing what constitutes an automatic telephone dialing system ("ATDS") and who is a "called Party" as that term is used in the TCPA.

## II.     <u>BACKGROUND</u>

The TCPA prohibits calls to cell phones "using any automatic telephone dialing system or an artificial or prerecorded voice" without "prior express consent."  47 U.S.C. § 227(a)(1).

In 2015, the FCC confirmed that predictive dialers constituted an ATDS, even though they did not randomly or sequentially generate numbers as required under the statutory definition of an ATDS.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7975 (July 10, 2015) ("2015 FCC Ruling").   Such predictive dialers must only dial a list of numbers without "human intervention."  *Id.*

Prior to *ACA International,* this Court held the GC system used by the defendant constituted an ATDS because it was a predictive dialer.  *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2018 WL 692105, at *4 (N.D. Cal. Feb. 2, 2018).  That ruling was expressly based on the **old FCC ATDS-rules** that held predictive dialers are ATDS's, even in the absence of randomly or sequentially generated numbers.  *McMillion* is inapposite and irrelevant now because the D.C. Circuit has vacated **all** of the FCC's ATDS-Rules, upon which the *McMillion* decision is based.

## III.   IMPACT OF *ACA INTERNATIONAL*

### A.   *ACA International s*trikes down FCC Rulings Regarding Predictive Dialers

Judge Tigar confirmed *ACA International* is binding authority in *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2017 WL 167678, at *3 & n.1 (N.D. Cal. Jan. 17, 2017).  "When agency regulations are challenged in more than one federal court of appeals, and subsequently consolidated and assigned to a single circuit court by the Judicial Panel on Multidistrict Litigation, the resulting decision is **binding outside of that circuit**.") (emphasis added).  Moreover, the Ninth Circuit stayed its review of *Marks v. Crunch San Diego*, 55 F.Supp.3d 1288 (S.D. Cal. 2014), a case concerning the definition of an ATDS, pending the D.C. Circuit's decision in *ACA International*.  Ninth Circuit Dkt No. 14-56834.

1
2
3

The Court in *ACA International* made two important holdings with respect to the FCC's 2015 Ruling, which establish that the GC Dialer at issue in this case is **not** an ATDS.

4
5
6
7
8
9
10
11
12
13

First, it held that software modifications that enabled "capacity" for the purposes of the statute was "arbitrary" and "capricious."  The D.C. Circuit first noted that the FCC's 2015 Ruling concluded that an app added to a device can create autodial capability and is therefore, an autodialer under the statute.  2018 WL 1352922, at *6.  This would bring smartphones *into* the fold of the autodialer ban under the TCPA. The Court in *ACA International* held it was **"untenable"** to construe capacity to include "the most ubiquitous type of phone equipment known, used countless times each day for routine communications by the vast majority of people in the country."  *Id.* at *7.  All of the FCC's Rulings regarding "capacity" are struck.

14
15
16
17
18
19
20
21

Next, the D.C. Circuit struck the FCC's 2015 Rulings regarding the two competing definitions of an ATDS:  (1) equipment that can dial from lists of numbers without human intervention but do not necessarily randomly or sequentially generate numbers (i.e. predictive dialers); and (2) equipment that has the capacity to randomly or sequentially generate numbers.  2018 WL 1352922, at *12 (emphasis added).  Due to the FCC's inconsistent rulings, the Court in *ACA International* struck all the FCC's rulings regarding those types of equipment that the FCC brought into the fold of the TCPA.

22
23
24
25
26

Thus, a predictive dialer must now satisfy the pure TCPA statutory definition of an ATDS in order to qualify as an ATDS under the TCPA.  Global Connect's Darrin Bird will sign a declaration which states that the Global Connect software does not have the capacity to randomly or sequentially generate numbers to be called.

27
28

Despite *ACA International*, the Plaintiffs still argue that the language of the TCPA statute supports their argument that the GC system is an ATDS.  They rely on the Ninth Circuit's decision in *Satterfield*:

> "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original).

Plaintiffs also point out that the expert report by their expert, Jeffrey Hansen, states that the Global Connect "dialer has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers."  Hansen Report, ¶ 25.  Plaintiffs assert that it also obvious that the equipment used by CSB had the requisite *capacity* to store, produce, or call randomly or sequentially generated telephone numbers, given that it was accessed via a windows computer.  Mr. Hansen has testified that "all computers can generate random or sequential numbers" and explained that a one-line command on Windows computers will instantly generate a list.  *Id.* ¶ 35.

The Jeff Hansen vs. Darrin Bird testimony will present two issues:  First, whether the Global Connect Dialer itself "can store, produce, or call randomly or sequentially generated telephone numbers" per *Satterfield*.  Global Connect's Darrin Bird claims that it cannot.  Second, whether or not the fact that there is a Windows Interface with Global Connect means that the "Windows Interface" in combination with "Global Connect" constitutes  "equipment" with the capacity to "store, produce, or call randomly or sequentially generated telephone numbers."  Plaintiffs attempt to expand the definition of ATDS to every computer used by

1  millions ("ubiquitous technology") in this country is contrary to the limitations of

2  *ACA International* which sought to avoid deeming every smartphone in the

3  country an ATDS.  2018 WL 1352922, at *6.  *See also Gragg v. Orange Cab Co*.,

4  995 F.Supp.2d 1189, 1193-1196 (W.D.Wash. 2014) (holding it would be an

5  "absurd result" to subject "almost all sophisticated computers and cell phones to

6  TCPA liability").

7      CSB is preparing a *motion in limine* to exclude Jeff Hansen's opinion-

8  testimony that the GC system is an ATDS and argue during the trial that Hansen's

9  opinions are based on false assumptions and therefore lack foundation.  Plaintiffs'

10  claims that they were called via an ATDS will fail at trial as a matter of law and

11  pursuant to the *ACA International* decision.

12      **B.   Plaintiffs' wrong number class will be defensed in light of *ACA***

13          ***International***

14      In light of *ACA International*, CSB's defense for calls to numbers from

15  records from its medical provider clients where the number was ultimately

16  reassigned is strengthened.  The TCPA imposes liability for calls made without

17  the prior express consent of the "called party."  The definition of that phrase is

18  now open season per *ACA International's* striking of the FCC's definition of

19  "called party" whereby the FCC excluded the "intended recipient," as well as

20  striking the FCC's one free call rule.

21      Although the D.C. Circuit in *ACA International* found the Seventh

22  Circuit's holding that "called party" means the subscriber at the time the call is

23  made in *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012) to be

24  reasonable (2018 WL 1352922, at *16), it also expressed "substantial doubts" that

25  the FCC intended a "pure, strict-liability regime" with respect to calls to

26  reassigned numbers and therefore set aside the Commission's entire treatment of

27  reassigned numbers.  *Id.* at *17.

28

1
2
3
4
5
6
7
8

This Court has noted that "the Ninth Circuit has not addressed the definition of 'called party,'" *McMillion*, 2018 WL 692105, at *5. Prior to *ACA International*, this Court in *McMillion* denied summary judgment where the defendant had consent to call the intended recipient, but not current subscriber of the phone number. *Id.* at *7-8. It held that "prior express consent is consent to call a particular number in connection with a particular debt that is given before the call in question is placed." *Id.* at *8 (citing *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1042 (9th Cir. 2012)).

9
10
11
12
13
14
15
16
17
18
19
20
21
22

However, *ACA International*'s "reasonableness" standard with regard to calls to reassigned numbers was not addressed in *McMillion*. *Meyer* did not expressly address consent to call the intended recipient and subsequent reassignment of the phone number. Therefore *McMillion* is now inapposite. CSB called the phone numbers of the lead Plaintiffs based on medical records identifying their numbers as relating to debtors Eddie H. and Maricela R. CSB does not skip trace and the calls to the class were made to numbers from similar medical records. Post-*ACA International*, CSB is free to argue that "called party" means "intended recipient" and therefore it had consent to call the Plaintiffs. Moreover, there cannot be a finding of strict liability for the calls to the lead Plaintiffs or the putative class, as purported reassigned number call recipients. *See e.g., Chyba v. First Financial Asset Mgmt.*, 2014 WL 1744136 (S.D. Cal. 2014 (granting summary judgment on a TCPA claim based on a "good faith" reliance on records that there was consent to call the intended recipient).

23
24
25
26
27
28

This Court held that *"good faith reliance presents a classwide issue"* that does not present an individualized inquiry. December 11, 2017 Order at 6. CSB asserts that post-*ACA International*, this is now an individualized inquiry. Plaintiffs' claims and that of the class are subject to defenses of consent to call the intended recipient and good faith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.     Resolution of prerecorded message class

In *McMillion*, 2018 WL 692105, at *5, this Court held that "even if the FCC's Orders are overturned," there could still be potential liability for prerecorded messages.  However, Plaintiffs' class analysis did not identify class members called on cell phones via prerecorded voice.  CSB likely had consent to call the intended recipient of these prerecorded message calls and they are subject to a "good faith" defense post-*ACA International*.


**CARLSON & MESSER LLP**

Dated:  March 26, 2018            s/ Charles R. Messer_____
                                  Charles R. Messer
                                  David J. Kaminski
                                  Stephen A. Watkins
                                  Attorneys for Defendant,
                                  *CALIFORNIA SERVICE BUREAU, INC.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on this **26th** day of **March 2018**, a true and accurate copy of the foregoing **DEFENDANT'S BRIEF RE IMPACT OF ACA INTERNATIONAL** was served via the U.S. District Court ECF system on the following e-mail(s):

> ltfisher@bursor.com
> ykrivoshey@bursor.com
> tom@mblawapc.com
> Nick@mblawapc.com

                              s/ Charles R. Messer
                              Charles R. Messer