**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
　　　　ykopel@bursor.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960
Los Angeles, California 90028
Telephone: (323) 940-1700
Facsimile: (323) 238-8095
E-Mail: tom@mblawapc.com
　　　　nick@mblawapc.com

*Class Counsel*

*[additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WEST and HECTOR MEMBRENO, individually and on behalf of all other similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CALIFORNIA SERVICE BUREAU, INC.<br><br>　　　　　Defendant. | Case No. 3:16-cv-03124-YGR<br><br>**PLAINTIFFS' BRIEF RE IMPACT OF *ACA INT'L V. FCC*, 2018 WL 1352922, ON THIS CASE**<br><br>Date: April 16, 2018<br>Time: 9:30 a.m.<br>Courtroom: 1<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

Plaintiffs hereby submit the following Response to this Court's March 19, 2018 order requiring briefs on the impact of *ACA International v. Federal Communications Commission*, 2018 WL 1352922 (D.C. Cir. 2018) ("*ACA*"), on the above-captioned matter.

## I.  *ACA* DID NOT ALTER THE DEFINITION OF "CALLED PARTY"

In the parties' pre-trial conference statement, Defendant California Service Bureau, Inc. ("CSB") argued that its "contentions about the viability of a TCPA-Good-Faith defense was materially bolstered by … *ACA*."  Pre-Trial Conference Statement ("PTCS") § III.B (ECF No. 83). That is incorrect.  Even before the FCC's now-vacated 2015 Order which addressed the topic of reassigned telephone numbers, this Court made clear that there is no such thing as "a good faith exception from TCPA liability for autodialed … calls to telephone numbers that have been reassigned," where "consent was given by the 'intended recipient' of the call" because:

> While the Ninth Circuit has not directly addressed the definition of "called party" under section 227(b)(1)(A), district courts in this circuit have generally rejected the "intended recipient" definition. *See Olney v. Progressive Cas. Ins. Co.,* No. 13–cv–02058, 2014 WL 294498, at *3 (S.D. Cal. Jan. 24, 2014); *Jordan v. Nationstar Mortgage LLC,* No. 14–CV–00787–WHO, 2014 WL 5359000, at *12 (N.D. Cal. Oct. 20, 2014) (describing a brief history of how the federal courts have interpreted the term "called party" to conclude that continuing a stay would unnecessarily delay the case).  Likewise, the Courts of Appeal in the Seventh and Eleventh Circuits have held that "called party" means current subscriber, not "intended recipient."  *See Soppet v. Enhanced Recovery Company., LLC,* 679 F.3d 637, 643 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.*, No. 13–cv–10951, 2014 WL 1258023, at *7 (11th Cir. 2014).

*Abrantes v. Northland Grp., Inc.*, 2015 WL 1738255, at *1, *3 (N.D. Cal. Apr. 13, 2015) (Gonzalez Rogers, J.); *see also McMillion v. Rash Curtis & Assocs.*, 2018 WL 692105, at *5 (N.D. Cal. Feb. 2, 2018) (same).  In reaching this conclusion, the Court relied not on the FCC's interpretation of the term called party, but rather on case law and the text of the TCPA.  *See Abrantes*, 2015 WL 1738255, at *3 ("Nothing about the interpretation of this statutory term appears to require any special expertise.  The fact that numerous courts have interpreted the term 'called party' weighs against a stay."); *see also King v. Time Warner Cable*, 113 F. Supp. 3d 718,

724 (S.D.N.Y. 2015) ("The text is clear and unambiguous on its face: called party means the party that was called. If Congress intended to refer to the party that the caller wanted to reach when it dialed the number, it would have used different language.").

In *ACA*, the D.C. Circuit found "the Seventh Circuit's analysis persuasive insofar as it supports concluding that the Commission was not compelled to interpret "called party" in § 227(b)(1)(A) to mean the "intended recipient" rather than the current subscriber." *Id.* at 35. Nothing in the *ACA* decision can therefore be read to cast doubt on the Court's well-reasoned decision on this point in *Abante* and *McMillion*.

There is one aspect, however, in which the *ACA* decision affects this case. Plaintiffs initially did not seek damages for the first call CSB made to each class member because of the FCC's so-called "one free call rule." *See In re Rules & Regs. Implementing the Tel. Cons. Prot. Act of* 1991, 30 FCC Rcd. 7965 ¶ 2 (permitting "a limited, one-call exception for cases in which the caller does not have actual or constructive knowledge of the reassignment."). In *ACA*, the court vacated this rule, finding that it was arbitrary. *See* 2018 WL 1352922, at *15. Plaintiffs therefore now seek damages for all calls made to class members, including first calls. *See* PTCS § I.B.1.1.[1]

## II. CSB'S EQUIPMENT MEETS THE STATUTORY DEFINITION OF AN ATDS

The *ACA* decision also vacated FCC holdings stating the predictive dialers, which can store and call lists of numbers without human intervention, are necessarily autodialers under the TCPA. 2018 WL 1352922, at *12. More specifically, the court vacated the FCC holdings because the FCC had given mixed signals regarding certain models of "predictive dialers [that] have no capacity to generate random or sequential numbers." *Id.* ("So which is it; does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity?"). Critically, the court took no position on whether such models of predictive dialers constitute ATDS, but nonetheless vacated the FCC's guidance on the issue. *Id.*

This decision changes nothing in this case for three reasons: (1) CSB's dialer has the capacity to store and call random or sequential numbers; (2) CSB's dialer can and did operate

---

[1] Due to the late stage of the litigation, Plaintiffs have not proposed changing the class definition, which is limited to persons who received "at least 2 telephone calls" from CSB. *See* Order Granting Plaintiffs' Motion For Class Certification (ECF No. 68) at 1.

without any human intervention; and (3) the equipment used by CSB also had the capacity to generate random or sequential numbers.

### A. CSB's Equipment Has The Capacity To Store And Call Random Or Sequential Numbers

The text of the TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity— (A) to store **_or_** produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1) (emphasis added). As other courts have explained, the use of the word "or" in the statute indicates that the equipment used need not actually produce random or sequential numbers, as long as it has the capacity to store and call such numbers. *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1136 (S.D. Cal. 2014) ("As stated by the Ninth Circuit, the focus of the inquiry in evaluating whether a technology is considered an ATDS is whether the equipment has the capacity to store and dial phone numbers."). As the Third Circuit has noted, "the statutory definition is explicit that the autodialing equipment may have the capacity to store *or* to produce the randomly or sequentially generated numbers to be dialed." *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x 369, 372 n.1 (3d Cir. 2015) (emphasis in original). Thus, inasmuch as a predictive dialer has the capacity to *store* random or sequentially generated numbers, it need not have the ability to make calls in that manner. *See id.* at 372 ("[W]e agree with the District Court's definition of 'random or sequential' number generation (*i.e.* the phrase refers to the numbers themselves rather than the manner in which they are dialed"); *see also Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Penn. 2014) (finding otherwise would lead to "an unintended result"); *Sherman*, 997 F. Supp. 2d at 1140 ("Ultimately, it is unnecessary to rely on the FCC guidance on predictive dialers to reach the result arrived at in this case"). Here, it is undisputed that the equipment used by CSB was "a predictive dialer that calls lists of numbers organized as 'campaigns' or 'pools,'" which can also be comprised of random or sequential numbers. *See* PTCS § II.A, ¶ 8.

### B. CSB's Dialer Operates Without Human Intervention

The text of the TCPA requires that an ATDS "store or produce telephone numbers to be called ... and ... **_dial such numbers_**." 47 U.S.C. 227(a)(1) (emphasis added). Courts interpreting

this provision have read-in the implied requirement that dialers "dial such numbers" without "human intervention" to be considered ATDS. *See, e.g., Daubert v. NRA Group, LLC*, 189 F. Supp. 3d 442, 461 n. 8 (M.D. Penn. May 27, 2016) ("The parties attempt to bifurcate the ATDS definition by suggesting that there are two (2) different tests for determining whether a system constitutes an ATDS: the 'human intervention' test and the 'capacity' test. However, **pursuant to the statute itself** and the FCC Orders clarifying the statutory language, there must be a lack of human intervention element as well as an examination into whether the equipment has the capacity to store **or** produce and dial random numbers.") (emphasis added); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 820 (N.D. Ill. 2014) ("The court also notes that even if the FCC rulings were not controlling in this case, this court agrees with the reasoning set forth in such rulings [with regard to the human intervention test]."). In vacating the 2015 FCC Order, the D.C. Circuit was concerned that the FCC had provided a lack of clarity as to whether human intervention is required or not to be considered ATDS. *ACA*, 2018 WL 1352922, at *12 ("According to the Commission, then, the 'basic function' of an autodialer is to dial numbers without human intervention, but a device might still qualify as an autodialer even if it cannot dial numbers without human intervention."). With the 2015 FCC Order vacated, the more reasonable textual reading of the TCPA is that, to be ATDS, a device must be able to "dial such numbers" without human intervention. *See Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 n. 2 (N.D. Ill. 2011) ("CPS's collectors do not dial the numbers, the dialer does. This is 'automatic dialing' under any reasonable interpretation of that phrase."). Here, CSB's Global Connect dialer unquestionably dials numbers from stored lists without human intervention. *See* PTCS § II.A, ¶ 9.

### C. CSB's Equipment Had The Capacity To Generate Random Or Sequential Numbers To Be Dialed

Moreover, it is clear that the equipment used by CSB also had the capacity to generate random or sequential numbers because its agents used a predictive dialer connected to a computer running Microsoft Windows. As the Ninth Circuit has instructed:

> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone

> numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original). Here, Plaintiffs' expert, Jeffrey Hansen, has explained that "all computers can generate random or sequential numbers. A computer system simply cannot operate without the ability to do so. A 'pseudo random number generator' is a key element in allowing a computer to 'compute.'" Hansen Report ¶ 36. Mr. Hansen explained that a one-line command on Windows computers will instantly generate a list of ten-digit phone numbers – no additional software needs to be installed on the computer to complete this command. *Id.* ("Typing 'for /L I in (248000,1,248999) do @echo 619%i >> sequential_numbers_to_call.txt' generates the same list on a Windows computer."). If the word "capacity" does not operate to include this scenario, then what would fall within its ambit? Apparently nothing, according to CSB.[2]

CSB has noted that the *ACA* decision rejected "an expansive interpretation of 'capacity'" because doing so would have "the apparent effect of embracing any and all smartphones" given that "[i]t is undisputed that essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer." 2018 WL 1352922, at *6. But in this case, per Mr. Hansen's testimony, unlike a smartphone, no additional software would have been required in order to generate random or sequential numbers with the equipment used by CSB. Nor would a finding that CSB's equipment is an ATDS necessitate a finding that all computer users are violators of the TCPA since (1) the human intervention test must still be met and (2) computers are not routinely connected to automatic (or predictive) dialing hardware, as they were in this case.

Finally, CSB argued in the parties' pre-trial conference statement that *Satterfield* is no longer applicable because of *ACA*. *See* PTCS § III.A. That is completely wrong. *Satterfield* did not rely on the FCC in its decision, and unlike *ACA*, its holding is binding on this Court.

---

[2] CSB's nonbinding cases holding that dialers need to have the present, rather than potential, capacity to generate random or sequential numbers are inapposite because CSB's equipment has the present capacity to do so. *See Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189 (W.D. Wash. Feb. 28, 2014); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014).

| | |
|---|---|
| Dated: March 26, 2018 | Respectfully submitted, |
| | **BURSOR & FISHER, P.A.** |
| | By:   */s/ Yitzchak Kopel*   <br>         Yitzchak Kopel |
| | Scott A. Bursor (State Bar No. 276006)<br>Yitzchak Kopel (admitted *pro hac vice*)<br>888 Seventh Avenue<br>New York, NY  10019<br>Telephone: (212) 989-9113<br>Facsimile:  (212) 989-9163<br>E-Mail: scott@bursor.com |
| | **BURSOR & FISHER, P.A.**<br>L. Timothy Fisher (State Bar No. 191626)<br>Yeremey Krivoshey (State Bar No.295032)<br>1990 North California Blvd., Suite 940<br>Walnut Creek, CA  94596<br>Telephone: (925) 300-4455<br>Email:  ltfisher@bursor.com<br>          ykrivoshey@bursor.com |
| | **MARTIN & BONTRAGER, APC**<br>G. Thomas Martin, III (SBN 218456)<br>Nicholas J. Bontrager (SBN 252114)<br>6464 W. Sunset Boulevard, Suite 960<br>Los Angeles, California 90028<br>Telephone:  (323) 940-1700<br>Facsimile: (323) 238-8095<br>E-Mail:  tom@mblawapc.com<br>          nick@mblawapc.com |
| | *Class Counsel* |