**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail:  scott@bursor.com
          ykopel@bursor.com

*Class Counsel*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WEST and HECTOR MEMBRENO, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA SERVICE BUREAU, INC.<br><br>Defendant. | Case No. 4:16-cv-03124-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: September 11, 2018<br>Time: 2:00 p.m.<br>Courtroom 1<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on September 11, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, 4th Floor in the Courtroom of Judge Yvonne Gonzalez Rogers, Plaintiffs will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to:  (i) grant preliminary approval of the proposed Settlement Agreement, (ii) approve a slight modification to the verbiage of the previously-certified class definition (which has no effect on the parameters of class membership whatsoever); (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Yitzchak Kopel, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

### CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should preliminarily approve the proposed class action settlement pursuant to Fed. R. Civ. P. 23(e).

Dated:  August 3, 2018

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Yitzchak Kopel*
       Yitzchak Kopel

Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
        ykopel@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email: ltfisher@bursor.com
        ykrivoshey@bursor.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960
Los Angeles, California 90028
Telephone: (323) 940-1700
Facsimile: (323) 238-8095
E-Mail: tom@mblawapc.com
         nick@mblawapc.com

*Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND.......................................................................... 2

     A.     Pleadings And Motions............................................................................. 2

     B.     Discovery ................................................................................................. 4

     C.     Settlement ................................................................................................ 4

III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL........................... 4

IV.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND
     REASONABLE ................................................................................................... 6

     A.     Strength Of Plaintiffs' Case ...................................................................... 7

     B.     Risk Of Continuing Litigation ................................................................. 8

     C.     Risk Of Maintaining Class Action Status ................................................. 9

     D.     The Amount Offered In Settlement .......................................................... 9

     E.     The Extent Of Discovery And Status Of Proceedings............................. 11

     F.     Experience And Views Of Counsel ........................................................ 11

V.      THE SLIGHT CHANGE IN CLASS DEFINITION HAS NO EFFECT ON
     CLASS MEMBERSHIP WHATSOEVER........................................................... 12

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE
     AND SHOULD BE APPROVED ....................................................................... 12

VII.    THE COURT SHOULD APPOINT KCC AS SETTLEMENT
     ADMINISTRATOR .......................................................................................... 15

VIII.   CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ACA International v. Federal Communications Commission,*
2018 WL 1352922 (D.C. Cir. 2018) .................................................................................... 3, 7

*Alaniz v. California Processors, Inc.,*
73 F.R.D. 269 (N.D. Cal. 1976) ............................................................................................. 4

*Barani v. Wells Fargo Bank, N.A.,*
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ......................................................................... 10

*Bayat v. Bank of the W.,*
2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ........................................................................ 9

*Beaver v. Alaniz,*
439 U.S. 837 (1978) ................................................................................................................ 5

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ......................................................................................... 6

*Charvat v. Travel Servs.,*
2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ................................................................................ 10

*Churchill Village, L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) .................................................................................................. 6

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................................................. 10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........................................................................ 8

*Ferrington v. McAfee, Inc.,*
2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .......................................................................... 9

*Fulford v. Logitech, Inc.,*
2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ........................................................ 9

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................................ 7

*Gehrich v. Chase Bank USA, N.A.,*
316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................................. 10

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 5, 6

*Hashw v. Dep't Stores Nat'l Bank,*
182 F. Supp. 3d 935 (D. Minn. 2016) .................................................................................... 10

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................. 8

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ....................................................................... 10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................ 11

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................................................... 9

*In re Omnivision Techns., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 11

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................. 5, 11, 12, 14

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .......................................................................... 4, 5

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 4, 5

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................... 10

*Lo v. Oxnard European Motors, LLC*,
  2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ....................................................... 11

*Malta v. Federal Home Loan Mortg. Corp.*,
  2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........................................................... 10

*McMillion v. Rash Curtis & Assocs.*,
  2018 WL 3023449 (June 18, 2018) ........................................................................ 7

*Munday v. Navy Federal Credit Union*,
  2016 WL 7655807 (C.D. Cal. Sep. 15, 2016) ....................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................... 5, 6, 7

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................................. 6

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................ 7, 8, 11

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ....................................................... 9

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ....................................................... 10

**STATUTES**

47 U.S.C. § 227 ................................................................................................................ 2

**RULES**

Fed. R. App. P. 5 ............................................................................................................. 3

Fed. R. Civ. P. 23 ..................................................................................................... passim

**OTHER AUTHORITIES**

Newberg on Class Actions § 11.25 (1992) ....................................................................... 5

# I.    INTRODUCTION

Plaintiffs Sandra West and Hector Membreno ("Plaintiffs"), through their counsel Bursor & Fisher, P.A. ("Bursor & Fisher") and Martin & Bontrager APC, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

The Settlement Agreement states that Defendant California Service Bureau, Inc. ("Defendant" or "CSB") will pay $4.1 million into a Settlement Fund for the settlement of all claims in this action.  Kopel Decl. Ex. 1 (Settlement Agreement) at ¶ 4.1.  The Settlement Agreement defines the Settlement Class to include:

> all persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone, where such person was not listed in Defendant's records as the intended recipient of the calls

*Id.* ¶ 1.36.  "Each Settlement Class Member who timely submits a valid Claim Form by the Claims Deadline shall be entitled to a single payment from Defendant in an amount equivalent to his or her *pro rata* share of the Settlement Fund after any approved Fee Award, any approved service awards, and Settlement Administration Costs are deducted."  *Id.* ¶ 4.4.4.  The monetary benefits afforded the Class through the Settlement Agreement fulfills the purpose of this action, is in-line with agreements approved in comparable cases nationwide, and far exceeds what is required for preliminary approval. Accordingly, this Court should preliminarily approve the Settlement.

As in any class action, the proposed Settlement is initially subject to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiffs now request that this Court enter an order in the form of the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement, which will:

> (1)    Grant preliminary approval of the proposed Settlement;
>
> (2)    Establish procedures for giving notice to members of the Settlement Class;
>
> (3)    Approve forms of notice to Settlement Class Members;

(4)    Mandate procedures and deadlines for exclusion requests and objections; and

(5)    Set a date, time and place for a final approval hearing.

The proposed Settlement is fair and reasonable and falls within the range of approval. It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including two full-day, in-person mediations with Jill Sperber Esq. of Judicate West. Additionally, Class Counsel has litigated this case to the brink of trial, including completion of fact and expert discovery, depositions, class certification, Rule 23(f) and Rule 23(c)(1)(C) challenges to the certified class, and even pretrial disclosures. As a result of these efforts, Class Counsel is fully informed of the merits of this action and the proposed settlement.

Finally, as detailed herein, while the parties have proposed a slight modification to the verbiage of the class definition for purposes of clarity, the parameters of class membership remain completely unchanged from the nationwide class previously certified by this Court on December 11, 2017. Thus, the Court has already found that the Settlement Class satisfies all necessary requirements under Fed. R. Civ. P. 23.[1]

## II.    PROCEDURAL BACKGROUND

### A.    Pleadings And Motions

On June 8, 2016, Plaintiff Sandra West commenced an action entitled *West v. California Service Bureau, Inc.*, (United States District Court, Northern District of California. Case No. 4:16-cv-03124-YGR) (the "Action"), as a proposed class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

On July 5, 2016, Plaintiff Hector Membreno commenced a separate class action entitled *Membreno v. California Service Bureau, Inc.*, (United States District Court, Northern District of California. Case No. 43:16-cv-03763) which also asserted claims that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

On October 26, 2016, this Court granted a motion to relate the *West* and *Membreno* Actions.

---

[1] Because of the modified verbiage, and to avoid confusion, Plaintiffs refer to class members as "Settlement Class Members" to reflect the new language used, notwithstanding that they are the same individuals that have always been members of the previously-certified class in this case.

1   And on November 29, 2016, the Court granted a stipulation to consolidate the West and Membreno

2   actions under the case number 4:16-cv-03763-YGR (the "Action")

3       On October 7, 2017, Plaintiffs filed a motion for class certification.  ECF No. 51.  Defendant

4   opposed Plaintiffs' motion.  ECF No. 52.  After Plaintiffs filed their reply in support of the motion

5   for class certification (ECF No. 56), Defendant moved to strike portions of the reply, which

6   Plaintiffs then opposed.  ECF Nos. 58, 60, & 62.  On December 11, 2017, this Court granted

7   Plaintiffs' motion for class certification of a "wrong number class," and appointed Plaintiffs as Class

8   Representatives, and Bursor & Fisher, P.A. and Martin & Bontrager APC as Class Counsel.  ECF

9   No. 68.  The Court's order also denied Defendant's motion to strike.  *Id.*

10      On December 28, 2017, Defendant filed a petition for leave to appeal under Fed. R. Civ. P.

11  23(f) and Fed. R. App. P. 5 before the Ninth Circuit.  ECF No. 72.  On January 8, 2018, Plaintiffs

12  filed an answer to the Rule 23(f) petition.  On January 10, 2018, Defendant filed an *ex parte* motion

13  to stay this action pending resolution of its appellate petition.  ECF No. 74.  On January 11, 2018,

14  Plaintiffs filed their opposition to the *ex parte* application.  On January 16, 2018, the Court denied

15  the *ex parte* application.  ECF No. 76.  And on March 27, 2018, the Ninth Circuit issued an order

16  denying the petition.

17      On March 6, 2018, Defendant moved to decertify the Class.  ECF No. 79.  Plaintiffs opposed

18  this motion on April 20, 2018.  ECF No. 85.  Defendant replied in support of its motion.  ECF No.

19  88.

20      The Parties also completed pretrial disclosures.  On March 16, 2018, the Parties filed their

21  Joint Pretrial Conference Statement.  ECF No. 83.  This was followed shortly by the filing of

22  remaining pre-trial materials including: Plaintiffs' Motion *in Limine* (ECF No. 92); Defendant's

23  Motions *in Limine* (ECF No. 91, 92, and 95); the Joint Witness List (ECF No. 99); Joint Trial

24  Exhibit List (ECF No. 101); the Parties' Jury Instructions (ECF No. 103); oppositions to Motions *in*

25  *limine* (ECF No. 102, 107 and 108); *et cetera*.  Per the Court's order, the parties also submitted

26  briefing regarding the impact of *ACA International v. Federal Communications Commission*, 2018

27  WL 1352922 (D.C. Cir. 2018) on March 26, 2018.  ECF Nos. 86-87.

28

The parties essentially completed all work required to select a jury and proceed with trial prior to completing this settlement.  Trial was initially scheduled to begin on April 16, 2018, however, the Court ordered a continuance of that date to determine whether to stay the trial until after the Ninth Circuit decided *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir.).

**B.   Discovery**

Plaintiffs served CSB with their first round of interrogatories, requests for admission, and requests for production of documents on December 15, 2016.  CSB served the same on both Plaintiffs on January 23, 2017.  CSB served its responses on February 14, 2017, and Plaintiffs served theirs on March 10, 2017.  Defendant served supplemental responses on May 9, 2017.  Plaintiffs served CSB with a second set of discovery requests on June 16, 2017, to which CSB responded on July 24, 2017.  The parties also engaged in discovery with third parties.  On June 1, 2017, Plaintiffs issued a subpoena to Global Connect, the manufacturer of the phone dialer used by CSB, and on August 9, 2017, CSB issued a subpoena on MetroPCS, the phone carrier for Plaintiff Membreno's cell phone.  Plaintiffs, CSB, and Global Connect all made document productions in discovery.

Class Counsel took two depositions of CSB's corporate representative on June 15, 2017 and September 1, 2017.  Plaintiffs sat for their depositions on July 21, 2017 and August 31, 2017.  CSB also took the deposition of Plaintiffs' expert witness, Jeffrey Hansen on September 21, 2017.

**C.   Settlement**

The parties attended two in-person mediations with Jill Sperber Esq. of Judicate West on December 6, 2017 and March 23, 2018.  While the parties were unable to reach an agreement at the mediations, discussions continued with the assistance of Ms. Sperber.  On June 15, 2018, the parties executed a Class Action Settlement Term Sheet agreeing to all material terms.  On August 2, 2018, the Parties executed a formal Stipulation of Settlement.  Kopel Decl. Ex. A.

**III.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California*

1    *Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439

2    U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final

3    approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual*

4    *for Complex Litigation, 3d Edition*, § 30.41 at 236-38 (hereafter, the "Manual").

5         The purpose of preliminary approval is for the Court to determine whether the parties should

6    notify the class members of the proposed settlement and proceed with a fairness hearing.  *See In re*

7    *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated

8    where "the proposed settlement appears to be the product of serious, informed, non-collusive

9    negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

10   representatives or segments of the class, and falls within the range of possible approval."  *Id.*

11   (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992).

12        Additionally, a review of the standards applied in determining whether a settlement should be

13   given *final* approval is helpful to the determination of preliminary approval.  One such standard is

14   the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re*

15   *Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.

16   1982), *cert. denied*, 459 U.S. 1217 (1983)).

17
18              Beginning with the first [pretrial] conference, and from time to time
                throughout the litigation, the court should encourage the settlement
                process.  The judge should raise the issue of settlement at the first
19              opportunity, inquiring whether any discussions have taken place or
                might be scheduled.  As the case progresses, and the judge and counsel
20              become better informed, the judge should continue to urge the parties
                to consider and reconsider their positions on settlement in light of
21              current and anticipated developments.

22   *Manual*, § 23.11 at 166.

23        While the district court has discretion regarding the approval of a proposed settlement, it

24   should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler*

25   *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length

26   by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters.*

27   *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is to ensure that

28   the settlement is fundamentally fair, reasonable, and adequate.  *See In re Syncor* 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement. "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations. Here, the negotiations were conducted by experienced class action counsel and included the involvement of Jill Sperber of Judicate West, a highly skilled and experienced mediator. Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622–23 (N.D. Cal. 1979).

## IV.    THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026;[2] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the balance of these factors readily establishes that the proposed settlement should be preliminarily approved.

---

[2] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval, and will be addressed at the appropriate time.

### A.     Strength Of Plaintiffs' Case

In determining the likelihood of plaintiffs' success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Class Counsel engaged in an arms-length negotiation with CSB's counsel, and were thoroughly familiar with the applicable facts, legal theories, and defenses.  Although Plaintiffs and their counsel believe that Plaintiffs' claims have merit, they also recognize that they will face risks moving forward and at trial and beyond.  CSB would no doubt present a vigorous defense at trial, and there is no assurance that the class would prevail.  At the class certification stage, CSB challenged all elements for certification of a Rule 23(b)(3) class, except for typicality and adequacy as to plaintiff Hector Membreno.  Even after this Court granted class certification, CSB moved to decertify the class, and Plaintiffs were not necessarily certain to prevail on this motion, which was pending at the time of settlement.  In addition, Plaintiffs were and continue to be confronted with the ruling and interpretation of *ACA International v. Federal Communications Commission*, 885 F.3d. 687 (D.C. Cir. Mar 16, 2018), and in particular, the forthcoming decision of the Ninth Circuit in the *Marks* case which will "constitute controlling law and will likely clarify the Ninth Circuit's position on the type of device or system that qualifies as an ATDS within the meaning of the TCPA." *See McMillion v. Rash Curtis & Assocs.*, 2018 WL 3023449, at *4 (June 18, 2018).  Indeed, at the time of settlement, the Court was expressly contemplating whether to defer the trial until the Ninth Circuit issued a decision in *Marks*.  This issue could also be further complicated by new guidance issued by the Federal Communications Commission, as it issued a public notice on May 14, 2018 seeking comments regarding how to define an ATDS in light of the *ACA* decision. *See* https://docs.fcc.gov/public/attachments/DA-18-493A1.pdf (last accessed July 1, 2018).  Because CSB contends that its dialing system is not an ATDS under the TCPA, it would have likely filed an

1    appeal after trial, even if this Court decided to not stay the action pending a decision in *Marks*. The

2    uncertainty of the Ninth Circuit's decision in *Marks* and in any forthcoming guidance from the FCC

3    therefore posed a risk to Plaintiffs in this case even if they succeeded at trial. Thus, in the eyes of

4    class counsel, the proposed Settlement provides the Settlement Class with an outstanding

5    opportunity to obtain significant relief at this stage in the litigation. The Settlement Agreement also

6    abrogates the risks that might prevent them from obtaining relief.

7          **B.        Risk Of Continuing Litigation**

8          At the time of settlement, two issues were pending: (1) CSB's motion for decertification,

9    and (2) whether the Court should defer trial until after the *Marks* decision. As previously stated,

10   each of these issues posed considerable risks to Plaintiffs in continuing the litigation. The class

11   could have been decertified, or Plaintiffs' case could have been derailed by the forthcoming *Marks*

12   decision. It was also uncertain whether Plaintiffs would have been able to collect on any judgment

13   in excess of insurance policy limits even if they prevailed at trial. Such considerations have been

14   found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v.*

15   *Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids

16   the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt,

17   certain, and substantial recovery for the Plaintiff class."). The experience of Class Counsel has

18   taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

19         Moreover, even if Plaintiffs were to prevail at trial, the class would face additional risks if

20   CSB appeals or moves for a new trial. For example, in *In re Apple Computer Sec. Litig.*, 1991 WL

21   238298, at *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended

22   trial. Based on the jury's findings, recoverable damages would have exceeded $100 million.

23   However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the

24   verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.

25   *Id.* By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the

26   appellate process.

27

28

---

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                    8
CASE NO. 4:16-CV-03124-YGR

### C. Risk Of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in maintaining class status through trial. In fact, at the time of settlement, CSB's motion for decertification was pending. ECF No. 79; *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement."). Here, the Settlement Agreement eliminates these risks by ensuring class members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### D. The Amount Offered In Settlement

The proposed settlement provides a real and substantial monetary benefit to class members. As detailed in the accompanying Kopel Decl. ¶¶ 3-5, class members are expected to receive payment amounts within an estimated range of $140-$399, depended on the number of claims submitted. Plaintiffs were exceedingly conservative in calculating this estimated range, in that it assumes that (1) the Court will award Plaintiffs' counsel 33.3% of the total $4.1 million in fees, in addition to all expenses incurred to date; (2) the Court will approve payments to the claims administrator in the total amount of incurred and estimated future fees and expenses; and (3) there will be a claims rate of 7% ($399/claim) to 20% ($140/claim) in this case. *See id.* The estimated claims rates used far exceed those typically observed in comparable class settlements. *See, e.g.*, *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent."); *Bayat v. Bank of the W.*, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with "claims rate for the monetary relief portion of the settlement of roughly 1.9%"); *Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012) (ECF No. 249 at 2-3 (approving TCPA settlement with a claims rate of approximately 2%).

And even using these very conservative assumptions, the estimated range of $140-$399 in payouts per class member is extremely high when compared with other TCPA class settlements. *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014)

1 (approving $20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94

2 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each class member); *Hashw v.*

3 *Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement

4 that yielded $33.20 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d

5 781, 790 (N.D. Ill. 2015) ("$34.60 per claimant recovery in this case does not seem so miniscule in

6 light of the fact that class members did not suffer any actual damages beyond a few unpleasant

7 phone calls. . . ."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015)

8 ("Although Class Members are only expected to recover approximately $13.75, the Court finds that

9 in light of the large number of Class Member claimants and high claims rate, the amount of the

10 Settlement Fund weighs in favor of approving the Settlement."); *Kolinek v. Walgreen Co.*, 311

11 F.R.D. 483, 493 (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries"

12 in TCPA class actions") (omitting quotation marks and citations); *Wright v. Nationstar Mortgage*

13 *LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also

14 in line with other TCPA settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228

15 (N.D. Ill. 2016) (recovery of $52.50 "falls well within the range of recoveries in other recent TCPA

16 class actions"); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a

17 "*pro rata* settlement award distribution of $48.37").  Indeed, even in the incredibly unlikely event

18 there were a 100% claims rate in this case, the payout would still be $27.93, which would still be

19 well within range of the amounts finally approved in the above cases.

20      Finally, the proposed method of claims distribution – *pro rata* payouts – has repeatedly been

21 recognized as a proper and just method of claims distribution in other TCPA class settlements.  *See*

22 *Barani v. Wells Fargo Bank, N.A.,* 2014 WL 1389329 at *7 (S.D. Cal. Apr. 9, 2014) ("The Class

23 Members will be paid a pro rata amount for their approved claims, with the amount paid for each

24 claim dependent upon the total dollar amount of all Approved Claims as well as the Settlement Costs

25 deducted from the Settlement Fund equally."); *Malta v. Federal Home Loan Mortg. Corp.*, 2013 WL

26 444619, at *7 (S.D. Cal. Feb. 5, 2013) ("The class members…will be paid a pro rata amount for their

27 approved claims, with the amount paid for each claim dependent upon the total dollar amount of all

28 approved claims as well as the amount of settlement costs deducted from the Settlement

Fund."); *Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at \*8 (C.D. Cal. Sep. 15, 2016) ("The settlement fund, less certain administrative costs, attorney's fees, and incentive payments, will be distributed *pro rata* to each Settlement Class member who submits a valid claim form."); *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at \*1 (S.D. Cal. Dec. 15, 2011) (The balance of the settlement fund is "to be divided among class members on a pro-rata basis.").

### E.    The Extent Of Discovery And Status Of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, this matter was completely ready for trial at the time of settlement, as fact and expert discovery had already ended, deadlines for dispositive motions passed, and pre-trial disclosures already exchanged. Accordingly, as discussed above, Class Counsel has received, examined, and analyzed information, documents, and materials that enabled them to assess the likelihood of success on the merits and make as fully-informed of a decision as was possible for any pre-trial settlement.

### F.    Experience And Views Of Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This is particularly true here, where the Court has already expressly found that "plaintiffs' counsel, Bursor & Fisher, P.A., have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously." Class Certification Order (ECF No. 68) at 14.

Here, based on Class Counsel's experience, they have concluded that the Settlement Agreement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

**V.    THE SLIGHT CHANGE IN CLASS DEFINITION HAS NO EFFECT ON CLASS MEMBERSHIP WHATSOEVER**

In negotiating the terms of the settlement, CSB requested that the class definition be amended slightly.  The change from the class definition already certified by the Court is as follows:

> All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone ~~through the use of any automatic telephone dialing system or an artificial or prerecorded voice~~, where such person was not listed in Defendant's records as the intended recipient of the calls

*Compare* Class Certification Order (ECF No. 68) at 1 *with* Kopel Decl. Ex. 1 (Settlement Agreement) ¶ 1.36.  This change was requested because CSB wanted to ensure that it was not providing any admission of liability in agreeing to the Settlement Class Definition.  Because Plaintiffs and their counsel ascertained that this would not affect class membership in any way, and did not prejudice the interests of the Class, they agreed to this change.  Plaintiffs therefore request that the Court approve this slight modification to the definition of the already-certified Class.

**VI.    THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED**

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed R. Civ. P. 23(e)(1).

When a court is presented with a classwide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice. *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement. *Id.*

The requirements for the content of class notices for (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Each of the proposed forms of notice, including the Long Form and Short Form notices, meet all of these requirements, as detailed in the following table:

| Requirement | Long Form Notice | Postcard Notice |
|---|---|---|
| "The nature of the action."  Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 3 and 6. | ¶ 1 |
| "The definition of the class certified." Fed. R. Civ. P. 23(c)(2)(B)(ii). | Second and third introductory bullets; Q&A no. 5. | ¶ 2 |
| "The class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 3 and 6. | ¶ 1 |
| "That a class member may enter an appearance through an attorney if the member so desires."  Fed. R. Civ. P. 23(c)(2)(B)(iv). | Q&A no. 10 and 11. | ¶ 6 |
| "That the court will exclude from the class any member who requests exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options In This Settlement;" Q&A nos. 14 and 15. | ¶ 5 |
| "The time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(vi). | Q&A no. 15. | ¶ 5 |
| "The binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options In This Settlement"; Fifth introductory bullet; Q&A nos. 13 and 14. | ¶ 5 |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's model forms for notice of pendency of a class action.  FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure.  *See* www.fjc.gov.  The FJC models are designed to illustrate how attorneys and judges might comply with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class

action and how it might affect potential class members' rights.  *See* www.fjc.gov.  FJC explained its

methodology for preparing these models as follows:

> We began this project by studying empirical research and commentary
> on the plain language drafting of legal documents.  We then tested
> several notices from recently closed class actions by presenting them
> to nonlawyers, asking them to point out any unclear terms, and testing
> their comprehension of various subjects. Through this process, we
> identified areas where reader comprehension was low.  We found, for
> example, that nonlawyers were often confused at the outset by use of
> the terms "class" and "class action."  Combining information from the
> pilot test with principles gleaned from psycholinguistic research, we
> drafted preliminary illustrative class action notices and forms. We then
> asked a lawyer-linguist to evaluate them for readability and redrafted
> the notices in light of his suggestions.

*Id.*  FJC then tested the redrafted model notices "before focus groups composed of ordinary citizens

from diverse backgrounds" and also through surveys "[u]sing objective comprehension measures."

*Id.*

　　　　Based on FJC's testing, Plaintiffs and Class Counsel believe that each of the proposed class

notices, which are very closely based on FJC models, with the format and content adopted almost

verbatim in most instances, are accurate, balanced, and comprehensible.  The Notices accurately

inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement

Class definition, the final approval hearing and the rights of all parties, including the rights to file

objections and to opt out of the settlement.  *See* Fed. R. Civ. P. 23(e)(4) ("If the class action was

previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it

affords a new opportunity to request exclusion to individual class members who had an earlier

opportunity to request exclusion but did not do so.").

　　　　The Parties in this case have created and agreed to perform the following forms of notice,

which are identical to the forms of notice previously approved by the Court at the class certification

stage (See ECF No. 73), and which will satisfy both the substantive and manner of distribution

requirements of Rule 23 and due process.  *See* Exs. B and C to the Settlement Agreement, at Kopel

Decl. Ex. 1.

1    **Email Notice:**  Within thirty (30) days after the Court enters the Preliminary Approval

2    Order, the Settlement Administrator shall send direct notice substantially in the form of the Long

3    Form Notice in Exhibit B to the Settlement Agreement, Kopel Decl. Ex. 1, via email to all Class

4    Members for whom email addresses are identified.  As the class certification stage, notice was sent

5    to 27,851 class members via email.  *See* Hack Decl. ¶ 4.

6    **U.S. Mail Notice:**  Within fourteen (14) days after the Court enters the Preliminary Approval

7    Order, the Settlement Administrator shall send direct notice substantially in the form of the Postcard

8    Notice in Exhibit C to the Settlement Agreement, Kopel Decl. Ex. 1, via U.S. Mail to all Class

9    Members for whom email addresses are not identified or whose emails came back undeliverable (at

10   the class certification stage and/or after attempting to email notice of settlement), but postal

11   addresses are identified.  As the class certification stage, notice was sent to 28,565 class members

12   via U.S. Mail.  *See* Hack Decl. ¶ 4.

13   **Settlement Website:**  The parties will post a copy of the Notice (Exs. B and C) on a website

14   that is maintained by the Administrator, which will additionally contain the settlement documents,

15   an online claim form, a list of important dates, and any other information to which the parties may

16   agree.  The website shall also contain a Settlement Email Address and Settlement Telephone

17   Number, where Settlement Class Members can submit questions and receive further information and

18   assistance.

19   **CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials

20   required by the Class Action Fairness Act ("CAFA") in accordance with the provisions of that Act.

21   *See* Settlement Agreement § 7.4.

22   This proposed method of giving notice is appropriate because it provides a fair opportunity

23   for members of the Settlement Class to obtain full disclosure of the conditions of the Settlement

24   Agreement and to make an informed decision regarding the proposed Settlement.  Thus, the notices

25   and the procedures embodied in the notices amply satisfy the requirements of due process.

26   **VII.    THE COURT SHOULD APPOINT KCC AS SETTLEMENT ADMINISTRATOR**

27   Plaintiffs request that the Court appoint Kurtzman Carson Consultants LLC ("KCC") as the

28   Settlement Administrator.  KCC is a well-qualified and experienced claims administrator that has

1 overseen claims administration in countless class actions settlements.  In fact, KCC served as the

2 claims administrator that sent notice following class certification in this case.  *See* Hack Decl. ¶¶ 3-

3 8.  As a result, KCC is familiar with the issues in this case and is uniquely qualified to serve as

4 Settlement Administrator.

5 **VIII.   CONCLUSION**

6         For the foregoing reasons, Plaintiffs respectfully request that the Court approve the

7 Settlement Agreement, approve the non-substantive change to the previously-certified class

8 definition, approve the proposed notice plan, and enter the [Proposed] Order Preliminarily

9 Approving Class Action Settlement, submitted herewith.

10

11 Dated:  August 3, 2018                     **BURSOR & FISHER, P.A.**

12                               By:   */s/ Yitzchak Kopel*
                                   Yitzchak Kopel

13

14                            Scott A. Bursor (State Bar No. 276006)
                           Yitzchak Kopel (admitted *pro hac vice*)

15                            888 Seventh Avenue
                           New York, NY  10019

16                            Telephone: (212) 989-9113
                           Facsimile:  (212) 989-9163

17                            E-Mail: scott@bursor.com
                                   ykopel@bursor.com

18                            **BURSOR & FISHER, P.A.**

19                            L. Timothy Fisher (State Bar No. 191626)
                           Yeremey Krivoshey (State Bar No.295032)

20                            1990 North California Blvd., Suite 940
                           Walnut Creek, CA  94596

21                            Telephone: (925) 300-4455
                           Email:  ltfisher@bursor.com

22                                 ykrivoshey@bursor.com

23                            **MARTIN & BONTRAGER, APC**
                           G. Thomas Martin, III (SBN 218456)

24                            Nicholas J. Bontrager (SBN 252114)
                           6464 W. Sunset Boulevard, Suite 960

25                            Los Angeles, California 90028
                           Telephone:  (323) 940-1700

26                            Facsimile: (323) 238-8095
                           E-Mail:  tom@mblawapc.com

27                                  nick@mblawapc.com

28                            *Class Counsel*