**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:    ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (*Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail:    scott@bursor.com
            ykopel@bursor.com

*Class Counsel*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WEST and HECTOR MEMBRENO, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CALIFORNIA SERVICE BUREAU, INC.<br><br>　　　　　　　Defendant. | Case No. 4:16-cv-03124-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: January 22, 2019<br>Time: 2:00 p.m.<br>Courtroom 1<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 22, 2019 at 2:00 p.m., in the courtroom of the Honorable Judge Yvonne Gonzalez Rogers, United States District Court Judge for the Northern District of California, Courtroom 1, 4th Floor located at 1301 Clay Street, Oakland, California, Plaintiffs Sandra West and Hector Membreno, by and through their undersigned counsel of record, will move and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for entry of the [Proposed] Order Approving Class Action Settlement ("Final Approval Order").

This motion is made on the grounds that final approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on: (1) this Notice of Motion and Motion, (2) the Memorandum of Points and Authorities in support thereof, (3) the Declaration of L. Timothy Fisher in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs and Expenses, and Service Awards filed herewith, (4) the Declaration of H. Jake Hack, filed herewith, (5) the papers and pleadings on file, and (6) the arguments of counsel at the hearing on the Motion.

Dated:  November 20, 2018

**BURSOR & FISHER, P.A**.

By: ___*/s/ L. Timothy Fisher*___
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
ykopel@bursor.com

1

2   **MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)

3   Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960

4   Los Angeles, California 90028
Telephone:  (323) 940-1700

5   Facsimile: (323) 238-8095
E-Mail:  tom@mblawapc.com

6           nick@mblawapc.com

7   *Class Counsel*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ................................................................................1

II. PROCEDURAL BACKGROUND ......................................................3

  A. Pleadings And Motions ...........................................................3

  B. Discovery .................................................................................4

  C. Settlement ................................................................................4

III. THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ...............................................................................5

IV. THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ....................................................................................6

  A. Strength Of Plaintiffs' Case .....................................................6

  B. Risk Of Continuing Litigation .................................................8

  C. Risk Of Maintaining Class Action Status ................................8

  D. The Amount Offered In Settlement ..........................................9

  E. The Extent Of Discovery And Status Of Proceedings .............10

  F. Experience And Views Of Counsel ..........................................11

  G. Presence of a Governmental Participant .................................12

  H. Reactions of Class Members ...................................................12

V. THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE INITIAL CLASS MEMBER RESPONSE HAS BEEN POSITIVE ...........................................................................................13

VI. CONCLUSION ..................................................................................14

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*ACA International v. Federal Communications Commission,*
2018 WL 1352922 (D.C. Cir. 2018) ........................................................ 4, 7

5

*Barani v. Wells Fargo Bank, N.A.,*
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ............................................. 10

6

7

*Boring v. Bed Bath & Beyond of Cal. LLC,*
2014 U.S. Dist. LEXIS 90258 (N.D. Cal. June 30, 2014) .......................... 14

8

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ............................................................ 6

9

10

*Charvat v. Travel Servs.,*
2015 WL 76901 (N.D. Ill. Jan. 5, 2015) .................................................. 10

11

*Chun-Hoon v. McKee Foods Corp.,*
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................... 13

12

13

*Churchill Vill., L.L.C. v. Gen. Elec.,*
Co., 361 F.3d 566 (9th Cir. 2004) ................................................ 5, 6, 12, 13

14

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ................................................................... 5

15

16

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ...................................................... 9

17

*Curtis-Bauer v. Morgan Stanley & Co.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................. 8

18

19

*Fulford v. Logitech, Inc.,*
2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ............................ 9

20

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................. 7

21

22

*Gehrich v. Chase Bank USA, N.A.,*
316 F.R.D. 215 (N.D. Ill. 2016) .............................................................. 10

23

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................... 6

24

25

*Hashw v. Dep't Stores Nat'l Bank,*
182 F. Supp. 3d 935 (D. Minn. 2016) ........................................................ 9

26

*In re Apple Computer Sec. Litig.,*
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................ 8

27

28

---

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 11

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 9

*In re Ferrero Litig.*,
    583 F. App'x 665 (9th Cir. 2014) .......................................................................... 6

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................... 10

*In re Netflix Privacy Litigation*,
    2013 WL 1120801 ................................................................................................. 8

*In re Nucoa Real Margarine Litig.*,
    2012 U.S. Dist. LEXIS 189901 (C.D. Cal. June 12, 2012) ................................. 11

*In re Omnivision Techns., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................... 11, 12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) .......................................................................... 10

*Lo v. Oxnard European Motors, LLC*,
    2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ..................................................... 10

*Low v. Trump Univ., LLC*,
    2017 U.S. Dist. LEXIS 49739 (S.D. Cal. Mar. 31, 2017) ................................... 11

*Malta v. Federal Home Loan Mortg. Corp.*,
    2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ......................................................... 10

*McMillion v. Rash Curtis & Assocs.*,
    2018 WL 3023449 (N.D. Cal. June 18, 2018) ....................................................... 7

*Munday v. Navy Federal Credit Union*,
    2016 WL 7655807 (C.D. Cal. Sep. 15, 2016) ..................................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 13

*Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 5, 6

*Petersen v. CJ Am., Inc.*,
    2016 U.S. Dist. LEXIS 140187 (S.D. Cal. Sept. 30, 2016) ................................. 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 6, 7, 12

*Rose v. Bank of Am. Corp.*,
   2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................................ 9

*Schuchardt v. Law Office of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016) .......................................................................... 12

*Settlement. Jonsson v. USCB, Inc.*,
   2015 U.S. Dist. LEXIS 69934 (C.D. Cal. May 28, 2015) ........................................ 14

*Wright v. Nationstar Mortgage LLC*,
   2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......................................................... 10

*Yahoo Mail Litig.*,
   2016 U.S. Dist. LEXIS 115056 (N.D. Cal. Aug. 25, 2016) ...................................... 11

**STATUTES**

28 U.S.C. § 1715(b) .......................................................................................... 12

47 U.S.C. § 227 ................................................................................................. 3

**RULES**

Fed. R. App. P. 5 ................................................................................................ 3

Fed. R. Civ. P. 23 ...................................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Sandra West and Hector Membreno ("Plaintiffs" or "Class Representatives") respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

## I.   INTRODUCTION

On September 12, 2018, this Court granted preliminary approval to the Parties' Settlement Agreement and ordered that the Settlement Administrator execute the approved Notice Plan.  *See* 09/12/2018 Order Granting Preliminary Approval of Class Action Settlement.  ECF No. 119.  The Settlement Agreement states that Defendant California Service Bureau, Inc. ("Defendant" or "CSB") will pay $4.1 million into a Settlement Fund for the settlement of all claims in this action. Declaration of Yitzchak Kopel in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Kopel Decl."), Ex. 1 (Settlement Agreement) at ¶ 4.1.  The Settlement Agreement defines the Settlement Class to include:

> all persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of class notice (the "Class period"), Defendant or its agent/s or employee/s caused to be made at least 2 telephone calls using its Global Connect dialer to said person's cellular telephone, where such person was not listed in Defendant's records as the intended recipient of the calls.

*Id.* ¶ 1.36.  "Each Settlement Class Member who timely submits a valid Claim Form by the Claims Deadline shall be entitled to a single payment from Defendant in an amount equivalent to his or her *pro rata* share of the Settlement Fund after any approved Fee Award, any approved service awards, and Settlement Administration Costs are deducted."  *Id.* ¶ 4.4.4.  The monetary benefit afforded the Class through the Settlement Agreement fulfills the purpose of this action, is in-line with agreements approved in comparable cases nationwide, and far exceeds what is required for final approval.

The Court has already held that the "Agreement substantially fulfills the purposes and objectives of the class action, and provides beneficial relief to the Settlement Class" and also approved the Notice Plan.  09/12/2018 Order Granting Preliminary Approval (ECF No. 119) at ¶ 6.

It is the product of extended arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including two full-day, in-person mediations with Jill Sperber Esq. of Judicate West.  Declaration of L. Timothy Fisher in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs and Expenses, and Service Awards ("Fisher Decl."), ¶¶ 21-22.

Additionally, Class Counsel has litigated this case to the brink of trial, including completion of fact and expert discovery, depositions, class certification, Rule 23(f) and Rule 23(c)(1)(C) challenges to the certified class, and even pretrial disclosures.  As a result of these efforts, Class Counsel is fully informed of the merits of this action and the proposed settlement.  The success of the Notice Plan and response from Class Members confirms that the Settlement is fair, reasonable, and provides outstanding relief to the Class.

The response of the Class also favors final approval of the Settlement.  In accordance with the notice program approved by the Court, direct mail and/or email notice were delivered to 56,416 prospective Settlement Class Members.  *See* Declaration of H, Jake Hack ("Hack Decl."), ¶ 4.  Of those, a total of 2,725 postcards were returned as undeliverable.  *Id.* ¶ 6.  As of November 19, 2018, Settlement Class Members have submitted 753 valid claim forms, though a "reminder" notice has recently gone out, and Plaintiffs anticipate that this number may be significantly higher by the time of the Final Approval Hearing.  *Id.* ¶ 7.  No Settlement Class Member has submitted an objection, and only 1 has opted out.  *Id.* at ¶¶ 9-10.  Based on the number of claims Plaintiffs' counsel anticipates prior to the close of the deadline, the payout to each settlement class member is likely to be approximately $ 2,401.47.[1]  *See* Fisher Decl. ¶ 24.  As shown below, the Settlement not only satisfies Rule 23's "fair, reasonable, and adequate" standard, but it is an outstanding result for Plaintiffs and the Settlement Class Members.  Accordingly, the Court should grant Final Approval of the Settlement.

---

[1] This number assumes that a total of 1,000 claims will be filed at the deadline.  Should that number rise to 1,500 claims, the payout per class member would be $1,600.98.  Fisher Decl. ¶ 24.

## II.     PROCEDURAL BACKGROUND

### A.     Pleadings And Motions

On June 8, 2016, Plaintiff Sandra West commenced an action entitled *West v. California Service Bureau, Inc.*, (United States District Court, Northern District of California. Case No. 4:16-cv-03124-YGR) (the "*West* Action"), as a proposed class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.  On July 5, 2016, Plaintiff Hector Membreno commenced a separate class action entitled *Membreno v. California Service Bureau, Inc.*, (United States District Court, Northern District of California. Case No. 43:16-cv-03763) (the "*Membreno* Action") which also asserted claims that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.  On October 26, 2016, this Court granted a motion to relate the *West* and *Membreno* Actions.  And on November 29, 2016, the Court granted a stipulation to consolidate the West and Membreno actions under the case number 4:16-cv-03763-YGR (the "Action").

On October 7, 2017, Plaintiffs filed a motion for class certification.  Fisher Decl. ¶ 11. Defendant opposed Plaintiffs' motion.  *Id.*  After Plaintiffs filed their reply in support of the motion for class certification, Defendant moved to strike portions of the reply, which Plaintiffs then opposed.  *Id.*  On December 11, 2017, this Court granted Plaintiffs' motion for class certification of a "wrong number class," and appointed Plaintiffs as Class Representatives, and Bursor & Fisher, P.A. and Martin & Bontrager APC as Class Counsel.  Order Granting Plaintiffs' Motion for Class Certification (ECF No. 68).  The Court's order also denied Defendant's motion to strike.  *Id.* Thereafter, on January 19, 2018, KCC sent notice to Class Members by email and U.S. Mail. Fisher Decl. ¶ 17.

On December 28, 2017, Defendant filed a petition for leave to appeal under Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5 before the Ninth Circuit.  *Id.* ¶ 12.  On January 8, 2018, Plaintiffs filed an answer to the Rule 23(f) petition.  *Id.*  On January 10, 2018, Defendant filed an *ex parte* motion to stay this action pending resolution of its appellate petition.  *Id.* ¶ 13.  On January 11, 2018, Plaintiffs filed their opposition to the *ex parte* application.  *Id.*  On January 16, 2018, the Court denied the *ex parte* application.  *Id.* ¶ 14.  And on March 27, 2018, the Ninth Circuit issued an

order denying the petition. *Id.*  On March 6, 2018, Defendant moved to decertify the Class. *Id.* ¶ 18.  Plaintiffs opposed this motion on April 20, 2018. *Id.*  Defendant replied in support of its motion. *Id.*

The Parties also completed pretrial disclosures.  On March 16, 2018, the Parties filed their Joint Pretrial Conference Statement. *Id.* ¶ 19.  This was followed shortly by the filing of remaining pre-trial materials including: Plaintiffs' Motion *in Limine*; Defendant's Motions *in Limine*; the Joint Witness List; Joint Trial Exhibit List; the Parties' Jury Instructions; oppositions to Motions *in limine*; *et cetera*. *Id.*  Per the Court's order, the parties also submitted briefing regarding the impact of *ACA International v. Federal Communications Commission*, 2018 WL 1352922 (D.C. Cir. 2018) on March 26, 2018. *Id.*

The parties essentially completed all work required to select a jury and proceed with trial prior to completing this settlement.  Trial was initially scheduled to begin on April 16, 2018. However, the Court ordered a continuance of that date to determine whether to stay the trial until after the Ninth Circuit decided *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir.). *Id.*

**B.     Discovery**

Following the consolidation of the *West* and *Membreno* Actions, Plaintiffs propounded interrogatories, requests for admission, and requests for production of documents. Fisher Decl. ¶ 8. After Class Counsel reviewed CSB's document production, they deposed CSB's corporate representative Brandon Amyot twice. *Id.* ¶ 9.  Plaintiffs Sandra West and Hector Membreno each sat for a deposition. *Id.*  CSB also took the deposition of Plaintiffs' expert witness, Jeffrey Hansen. *Id.*

The parties also engaged in discovery with third parties. *Id.* ¶ 10.  On June 1, 2017, Plaintiffs issued a subpoena to Global Connect, the manufacturer of the phone dialer used by CSB, and on August 9, 2017, CSB issued a subpoena on MetroPCS, the phone carrier for Plaintiff Membreno's cell phone.  Plaintiffs, CSB, and Global Connect all made document productions in discovery. *Id.*

**C.     Settlement**

The parties attended two in-person mediations with Jill Sperber Esq. of Judicate West on

December 6, 2017 and March 23, 2018.  Fisher Decl. ¶ 21.  While the parties were unable to reach

an agreement at the mediations, discussions continued with the assistance of Ms. Sperber.  On June

15, 2018, the parties executed a Class Action Settlement Term Sheet agreeing to all material terms.

*Id.* ¶ 22.  On August 2, 2018, the Parties executed a formal Class Action Settlement Agreement.

Kopel Decl. (ECF No. 116-1) Ex. 1.

      After extensive negotiation with Defendants and execution of the Class Action Settlement

Agreement, on August 3, 2018 Plaintiffs filed a Motion for Preliminary Approval of Class Action

Settlement.  Fisher Decl. ¶ 25.  On September 12, 2018, this Court granted preliminary approval of

the Settlement.  *See* ECF No. 119.  Thereafter, on October 12, 2018, KCC sent notice of the

Settlement to Class Members by email and U.S. Mail.  Hack Decl. ¶ 4.  On November 19, 2018, a

"reminder" postcard was also sent to class members who had previously received emails, but not

postcards via U.S. mail.  *Id.* ¶ 7.

## III.   THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

      In evaluating a class action settlement under Rule 23, a district court must determine

whether the settlement is fundamentally fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).

In evaluating the fairness of a class action settlement, courts are mindful that the law favors the

compromise and settlement of class action suits.  *See*, *e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec. Co.*,

361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1992); *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*, 688 F.2d 615, 625

(9th Cir. 1982).  The *Manual for Complex Litigation* states:

> The judge can encourage the settlement process by asking at the first pretrial
> conference whether settlement discussions have occurred or might be
> scheduled.

*Manual*, Fourth § 13.11 at 167.  "Courts have afforded a presumption of fairness and

reasonableness of a settlement agreement where that agreement was the product of non-collusive,

arms' length negotiations by capable and experienced counsel*.*"  *In re Netflix Privacy Litig.*, 2013

WL 112080, at *10-11 (N.D. Cal. Mar. 18, 2013).  In such circumstances, counsel's assessment

and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely

heavily upon counsel's assessment and judgment.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  Moreover, where, as here, the settlement was reached after the class was certified by the court, concerns over potential for collusion are ameliorated and heightened scrutiny of the settlement is not required.  *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014).  Ultimately, however, the decision to approve a settlement is committed to the sound discretion of the trial judge.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## IV.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

In answering the question of whether a settlement is fair, adequate and reasonable as prescribed by Rule 23(e), district courts should balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026; *Churchill*, 361 F.3d at 575.  Here, the balance of the factors weighs heavily in favor of the Settlement being fair, adequate and reasonable.

### A.     Strength Of Plaintiffs' Case

In determining the likelihood of plaintiffs' success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

1     *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

2     (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

3          Here, Class Counsel engaged in an arms-length negotiation with CSB's counsel, and were

4     thoroughly familiar with the applicable facts, legal theories, and defenses.  Although Plaintiffs and

5     their counsel believe that Plaintiffs' claims have merit, they also recognize that they would have

6     faced risks moving forward and at trial and beyond.  CSB would no doubt present a vigorous

7     defense at trial, and there is no assurance that the class would prevail.  At the class certification

8     stage, CSB challenged all elements for certification of a Rule 23(b)(3) class, except for typicality

9     and adequacy as to plaintiff Hector Membreno.  Even after this Court granted class certification,

10    CSB moved to decertify the class, and Plaintiffs were not necessarily certain to prevail on this

11    motion, which was pending at the time of settlement.  In addition, Plaintiffs were confronted with

12    the ruling and interpretation of *ACA International v. Federal Communications Commission*, 885

13    F.3d. 687 (D.C. Cir. Mar 16, 2018), and at the time of settlement, the then-pending decision of the

14    Ninth Circuit in the *Marks* case which the Court had previously held would "constitute controlling

15    law and will likely clarify the Ninth Circuit's position on the type of device or system that qualifies

16    as an ATDS within the meaning of the TCPA."  *See McMillion v. Rash Curtis & Assocs.*, 2018 WL

17    3023449, at *4 (N.D. Cal. June 18, 2018).  Indeed, at the time of settlement, the Court was

18    expressly contemplating whether to defer the trial until the Ninth Circuit issued a decision in

19    *Marks*.  This issue could also be further complicated by new guidance issued by the Federal

20    Communications Commission, as it issued a public notice on May 14, 2018 seeking comments

21    regarding how to define an ATDS in light of the *ACA* decision.  *See*

22    https://docs.fcc.gov/public/attachments/DA-18-493A1.pdf (last accessed July 1, 2018).  Because

23    CSB contends that its dialing system is not an ATDS under the TCPA, it would have likely filed an

24    appeal after trial.  The uncertainty of the Ninth Circuit's decision in *Marks* (at the time of the

25    settlement) and in any forthcoming guidance from the FCC therefore posed a risk to Plaintiffs in

26    this case even if they succeeded at trial.  Thus, in the eyes of Class Counsel, the proposed

27    Settlement provides the Settlement Class with an outstanding opportunity to obtain significant

28

1    relief at this stage in the litigation.  The Settlement Agreement also abrogates the risks that might

2    prevent them from obtaining relief.

3    **B.    Risk Of Continuing Litigation**

4          At the time of Settlement, two issues were pending:  (1) CSB's motion for decertification,

5    and (2) whether the Court should defer trial until after the *Marks* decision.  Fisher Decl. ¶ 20.  As

6    previously stated, each of these issues posed considerable risks to Plaintiffs in continuing the

7    litigation.  The class could have been decertified, or Plaintiffs' case could have been derailed by the

8    *Marks* decision.  It was also uncertain whether Plaintiffs would have been able to collect on any

9    judgment in excess of insurance policy limits even if they prevailed at trial.  Such considerations

10   have been found to weigh heavily in favor of settlement.  *See Curtis-Bauer v. Morgan Stanley &*

11   *Co.,* 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay,

12   risk and expense of continuing with the litigation and will produce a prompt, certain, and

13   substantial recovery for the Plaintiff class.").  The experience of Class Counsel has taught them

14   that these considerations can make the ultimate outcome of a trial highly uncertain.

15         Moreover, even if Plaintiffs were to prevail at trial, the class would face additional risks if

16   CSB appeals or moves for a new trial.  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL

17   238298, at *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended

18   trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million.

19   However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the

20   verdict for the individual defendants, and ordered a new trial with respect to the corporate

21   defendant.  *Id.*  By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks

22   of the appellate process.  Careful consideration of the above risks supports approval of the

23   Settlement as fair, adequate and reasonable.

24   **C.    Risk Of Maintaining Class Action Status**

25         In addition to the risks of continuing the litigation, Plaintiffs would also face risks in

26   maintaining class status through trial.  In fact, at the time of settlement, CSB's motion for

27   decertification was pending.  ECF No. 79; *see also In re Netflix Privacy Litigation*, 2013 WL

28   1120801, at *6 ("The notion that a district court could decertify a class at any time is one that

1    weighs in favor of settlement.").  Here, the Settlement Agreement eliminates these risks by

2    ensuring class members a recovery that is "certain and immediate, eliminating the risk that class

3    members would be left without any recovery . . . at all."  *Fulford v. Logitech, Inc.*, 2010 U.S. Dist.

4    LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

5          **D.      The Amount Offered In Settlement**

6          The proposed settlement provides a real and substantial monetary benefit to class members.

7    As detailed in the accompanying Fisher Decl. ¶¶ 24, class members are expected to receive an

8    estimated payout of $2,401.47, depended on the number of claims submitted before the deadline.

9    Plaintiffs calculated this estimate, by assuming that (1) the Court will award Plaintiffs' counsel

10   33.3% of the total $4.1 million in fees, in addition to all expenses incurred to date; (2) the Court

11   will approve payments to the claims administrator in the total amount of incurred and estimated

12   future fees and expenses; and (3) there will be a total of approximately 1,000 claims in this case.

13   *See id.*[2]

14         And even using these conservative assumptions, the estimated payout per class member is

15   extremely high when compared with other TCPA class settlements.  *See, e.g.*, *Rose v. Bank of Am.*

16   *Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving $20 to $40 per claimant);

17   *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing

18   for a $25 merchandise voucher to each class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F.

19   Supp. 3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that yielded $33.20 per

20   claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill.

21   2015) ("$34.60 per claimant recovery in this case does not seem so miniscule in light of the fact

22   that class members did not suffer any actual damages beyond a few unpleasant phone calls. . . .");

23   *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Although Class

24   Members are only expected to recover approximately $13.75, the Court finds that in light of the

25   large number of Class Member claimants and high claims rate, the amount of the Settlement Fund

26

27   _____
     [2] As noted above, this number assumes that a total of 1,000 claims will be filed at the deadline.
     Should that number rise to 1,500 claims, the payout per class member would be $1,600.98.  Fisher

28   Decl. ¶ 24.

1    weighs in favor of approving the Settlement."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493

2    (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class

3    actions") (omitting quotation marks and citations); *Wright v. Nationstar Mortgage LLC*, 2016 WL

4    4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also in line with

5    other TCPA settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill.

6    2016) (recovery of $52.50 "falls well within the range of recoveries in other recent TCPA class

7    actions"); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a "*pro*

8    *rata* settlement award distribution of $48.37").

9          Finally, the proposed method of claims distribution–*pro rata* payouts–has repeatedly been

10    recognized as a proper and just method of claims distribution in other TCPA class settlements.  *See*

11    *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 at *7 (S.D. Cal. Apr. 9, 2014) ("The Class

12    Members will be paid a pro rata amount for their approved claims, with the amount paid for each

13    claim dependent upon the total dollar amount of all Approved Claims as well as the Settlement

14    Costs deducted from the Settlement Fund equally."); *Malta v. Federal Home Loan Mortg. Corp.*,

15    2013 WL 444619, at *7 (S.D. Cal. Feb. 5, 2013) ("The class members…will be paid

16    a pro rata amount for their approved claims, with the amount paid for each claim dependent upon

17    the total dollar amount of all approved claims as well as the amount of settlement costs deducted

18    from the Settlement Fund."); *Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at *8

19    (C.D. Cal. Sep. 15, 2016) ("The settlement fund, less certain administrative costs, attorney's fees,

20    and incentive payments, will be distributed *pro rata*  to each Settlement Class member who

21    submits a valid claim form."); *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *1

22    (S.D. Cal. Dec. 15, 2011) (The balance of the settlement fund is "to be divided among class

23    members on a pro-rata basis.").

24        **E.**      **The Extent Of Discovery And Status Of Proceedings**

25          Under this factor, courts evaluate whether class counsel had sufficient information to make

26    an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

27    454, 459 (9th Cir. 2000).  Here, this matter was completely ready for trial at the time of settlement,

28    as fact and expert discovery had already ended, deadlines for dispositive motions passed, and pre-

1   trial disclosures already exchanged.  Fisher Decl. ¶¶ 5-20.  Accordingly, Class Counsel has

2   received, examined, and analyzed information, documents, and materials that enabled them to

3   assess the likelihood of success on the merits and make as fully-informed of a decision as was

4   possible for any pre-trial settlement.  S*ee In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016

5   U.S. Dist. LEXIS 115056, at *22-24 (N.D. Cal. Aug. 25, 2016) (granting final approval of class

6   settlement where plaintiffs had engaged in years of extensive briefing and discovery, and therefore

7   "developed an informed perspective on this case's strengths and weaknesses"); *In re Nucoa Real*

8   *Margarine Litig.*, No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901, at *49-50

9   (C.D. Cal. June 12, 2012) ("The greater the amount of discovery that has been completed, the more

10   likely it is that the parties have a clear view of the strengths and weaknesses of their cases.")

11   (internal citations omitted); *Low v. Trump Univ., LLC*, No. 3:10-cv-00940-GPC-WVG, 2017 U.S.

12   Dist. LEXIS 49739, at *15-16 (S.D. Cal. Mar. 31, 2017) (where case is near trial, and the parties

13   have conducted extensive discovery the extent of discovery and the stage of the proceedings weigh

14   in favor of the proposed settlement) (internal citations omitted).  Given the procedural history of

15   this Action, there can be no doubt that Class Counsel had sufficient information to make an

16   informed decision about the merits of this case as compared to the benefit provided by the

17   proposed Settlement.  Additionally, substantial settlement negotiations have taken place between

18   the Parties.  Fisher Decl., ¶¶ 21-22.  Notably, when a settlement is negotiated at arms'-length by

19   experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters.*

20   *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  The Parties also worked closely with Ms. Sperber,

21   who ultimately led the Parties to resolution.  Fisher Decl. ¶¶ 21; *In re Bluetooth Headset Prods.*

22   *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor

23   weighing in favor of a finding of non-collusiveness.").  Thus, this factor weighs strongly in favor

24   of final approval.

25         **F.**     **Experience And Views Of Counsel**

26       "The recommendations of plaintiff's counsel should be given a presumption of

27   reasonableness."  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

28   Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties

represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This is particularly true here, where the Court has already expressly found that "plaintiffs' counsel, Bursor & Fisher, P.A., have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously." Class Certification Order (ECF No. 68) at 14.

Here, based on Class Counsel's experience, they have concluded that the Settlement Agreement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

**G.      Presence of a Governmental Participant**

The government need not be involved with a class action settlement. However, the Class Action Fairness Act ("CAFA") requires that notice of a settlement be delivered to the Attorney General of the United States, and to each attorney general of each state where class members reside. 28 U.S.C. § 1715(b). Said notices have been sent regarding the Settlement, but no objections have been received. ECF No. 116-2 ¶ 3. The lack of government involvement weighs in favor of approving the Settlement as agreed to by the Parties. *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (weighing this factor in favor of approval when "neither state nor federal officials lodged any objection after receiving notice of the Settlement Agreement."); *Petersen v. CJ Am., Inc.*, No. 3:14-cv-02570-DMS-JLB, 2016 U.S. Dist. LEXIS 140187, at *8 (S.D. Cal. Sept. 30, 2016) (granting final approval of a consumer class action settlement and acknowledged that appropriate notice regarding the settlement and that "no such objections or comments were received.").

**H.      Reactions of Class Members**

As of November 20, 2018, no Settlement Class Member has objected to the Settlement.[3] Hack Decl. ¶10; *see also Churchill*, 361 F.3d at 577 (weighing the low number of objectors in

---

[3] The deadline for filing objections or opting out, December 11, 2018, has not yet occurred. After that deadline, Plaintiffs will submit a supplemental declaration attesting to the number of objections and opt-outs.

favor of settlement).  The absence of objections raises a strong presumption that the terms of the

Settlement are favorable to the Class.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed

class action settlement raises a strong presumption that the terms of the proposed class action

settlement are favorable to the class members.").  Furthermore, as of November 19, 2018, of those

who responded to the Class notices, 753 individuals had submitted timely claim forms while only 1

individual has opted out.  Hack Decl. at ¶¶ 8-9; *Churchill*, 361 F.3d at 577 (affirming settlement

approval where only 45 out of approximately 90,000 class members objected); *Chun-Hoon v.

McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (where "[a] total of zero

objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of

roughly three hundred and twenty-nine (329) members," that the reaction of the class "strongly

supports settlement.").  Here, since no one has objected to the Settlement and only 1 Class Member

has opted-out, the Court should find that the "presumption of fairness" applies in this Settlement

and this factor should weigh heavily in favor of Settlement approval.

**V.      THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE INITIAL CLASS MEMBER RESPONSE HAS BEEN POSITIVE**

In its September 12, 2018 Order, after an evaluation of the Settlement's proposed Notice

plan, the Court found "that the Notice complies with the requirements of Fed. R. Civ. P. 23 and due

process and constitutes the best notice practicable under the circumstances."  09/12/2018 Order

(ECF No. 119) ¶ 8.  Accordingly, the Court ordered that the Settlement Administrator provide

Notice for the Class pursuant to the terms of the Settlement Agreement no later than October 12,

2018.  *Id.* ¶ 24.  Each of the Settlement's Notice provisions was implemented as set out in the

Settlement and instructed by the Court.  *See* Hack Decl. at ¶¶ 4-9.  All forms of notice accurately

informed Settlement Class Members of the salient terms of the Settlement, the date of the Final

Approval hearing, and the rights of all parties, including Class Member rights to file objections and

to opt out of the Class.  09/12/2018 Order (ECF No. 119) ¶ 8.  This notice plan (similar if not

identical to the method used in countless other class actions) was appropriate because it fairly and

adequately afforded Settlement Class Members the opportunity to learn about the Settlement and to

1   make an informed decision regarding the proposed Settlement.  *Jonsson v. USCB, Inc*., No. CV 13-

2   8166 FMO (SHx), 2015 U.S. Dist. LEXIS 69934, at *8 (C.D. Cal. May 28, 2015) (granting final

3   approval of settlement and finding that nearly identical notice plan "fairly and adequately informed

4   the class members of the nature of the action" and met the requirements of Rule 23).

5        Pursuant to the Settlement, and after the Court granted preliminary approval of the

6   Settlement, notice of the Settlement was disseminated to the Settlement Class Members through

7   U.S. postal mail and e-mail.  Hack Decl., at ¶¶ 4.  On November 19, 2018, the administrator also

8   sent out a "reminder" postcard to all class members who had previously received email notice, but

9   not notice through U.S. Mail.  *Id.* ¶ 7.  Finally, the Settlement Administrator has established a

10  Settlement Website and Toll-Free Number to provide Class Members with additional information

11  about the Settlement and allow them to submit their Claim online.  ECF No. 116-2 ¶¶ 6-7.  Thus,

12  the notice plan previously approved by the Court and subsequently executed by KCC amply

13  satisfies the requirements of due process.  *Boring v. Bed Bath & Beyond of Cal. LLC*, No. 12-CV-

14  05259-JST, 2014 U.S. Dist. LEXIS 90258, at *3 (N.D. Cal. June 30, 2014) (finding adequate

15  notice where parties implemented the approved notice plan).[4]

16  **VI.    CONCLUSION**

17       For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval

18  to the Settlement Agreement and enter the Final Approval Order in the form submitted herewith.

19  Dated:  November 20, 2018          **BURSOR & FISHER, P.A**.

20                                     By:  */s/ L. Timothy Fisher*

21                                          L. Timothy Fisher

22                                     L. Timothy Fisher (State Bar No. 191626)
                                       1990 North California Blvd., Suite 940
23                                     Walnut Creek, CA  94596
                                       Telephone: (925) 300-4455
24                                     Email:  ltfisher@bursor.com

25

26  _____

27  [4] Plaintiffs also ask the Court to authorize the actual costs and expenses of the Settlement
    Administrator, currently estimated at $73,857, to be paid from the settlement fund.  The Settlement
28  Administrator will submit an updated cost estimate prior to the Final Approval Hearing on January 22, 2019.

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Yitzchak Kopel (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
           ykopel@bursor.com

**MARTIN & BONTRAGER, APC**
G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
6464 W. Sunset Boulevard, Suite 960
Los Angeles, California 90028
Telephone:  (323) 940-1700
Facsimile: (323) 238-8095
E-Mail:  tom@mblawapc.com
           nick@mblawapc.com

*Class Counsel*